IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANNE FLACCUS, on behalf of herself and all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>ADVANCED DISPOSAL SERVICES, INC. f/k/a ADS WASTE HOLDINGS, INC.; ADVANCED DISPOSAL SERVICES EASTERN PA, INC. f/k/a ADVANCED DISPOSAL SERVICES SHIPPENSBURG, LLC; and ADVANCED DISPOSAL SERVICES SOUTH, LLC f/k/a ADVANCED DISPOSAL SERVICES, INC.<br><br>    Defendants. | Civil Action No. 2:17-cv-04808-CDJ<br><br>CLASS ACTION<br><br>JURY TRIAL DEMANDED |

## THIRD AMENDED COMPLAINT – CLASS ACTION

Plaintiff, Anne Flaccus, on behalf of herself and all others similarly situated, alleges, upon her own knowledge and otherwise upon information and belief formed after a reasonable inquiry by counsel:

### NATURE OF CASE

1. In June 2012 Plaintiff entered into a five- year service agreement with Interstate Waste Services ("IWS") pursuant to which Plaintiff's garbage was picked up in exchange for payment of a monthly service fee. In September 2012, Defendants Advanced Disposal Services, Inc. (then known as ADS Waste Holdings, Inc.) and Advanced Disposal Services South, LLC (then known as Advanced Disposal Services, Inc.) assumed managerial and financial control of Interstate Waste Services, notifying Plaintiff and other similarly situated individuals that "Interstate Waste is now Advanced Disposal." Defendants in this matter – Advanced Disposal Services, Inc., Advanced Disposal Services South, LLC, and Advanced Disposal Services Eastern

PA, Inc., both as the successors in interest to IWS and by virtue of their own behavior, are responsible for the wrongful conduct alleged herein.

2. Defendants have entered and continue to enter into written service agreements with customers state-wide, using a standardized form contract that established, among other terms and conditions, a basic price for the service based on the volume and type of waste collected. In violation of these written service agreements, Defendants engaged in the unlawful practice of charging Plaintiff and putative class members excessive and improper "fuel surcharges," "environmental fees," and "administrative fees" (hereinafter known, collectively, as "Cost Recovery Fees"). While Defendants characterize these improper fees as legitimate charges purportedly related to fuel, environmental, and administrative costs, such fees are improper, unrelated to the fuel, environmental, or administrative costs incurred by Defendants, and constitute a breach of Plaintiff and putative class members' service agreements.

3. Defendants' conduct further constitutes unjust enrichment and a breach of Pennsylvania's consumer protection law.

## JURISDICTION

4. The Pennsylvania state court in which this action was originally filed has jurisdiction over this action. Defendants do business in the Commonwealth of Pennsylvania, including Chester County, and have received and continue to receive substantial revenue and profits from the improper fees and charges billed to Plaintiff and the class in the Commonwealth of Pennsylvania.

5. Venue in this case is proper in Chester County, Pennsylvania because a substantial portion of Defendants' conduct which forms the basis for this action occurred in Chester County, Pennsylvania, and Plaintiff owned property in Chester County, Pennsylvania.

## PARTIES

6. Plaintiff, Anne Flaccus, until 2014, owned property at 847 Valley Forge Road, Phoenixville, Pennsylvania, in Schuylkill Township, and personally resided at such residence. In addition, some of the property was rented out to small businesses. Schuylkill Township does not provide trash removal services for its residents and businesses operating within its boundaries. Instead, Phoenixville suggests the names of companies which can provide such services. As a result, Plaintiff contracted with Interstate Waste Services ("IWS") for many years, and in June 2012, renewed her contract for an additional five (5) years with IWS, whose operations were combined with Defendants in September 2012, such that Defendants took over Flaccus' contract.

7. Defendant Advanced Disposal Services, Inc. ("ADSI") is a publicly traded Delaware corporation with its principal executive offices located at 90 Fort Wade Road, Ponte Vedra, Florida 32081. ADSI is a leading integrated provider of non-hazardous solid waste collection, transfer, recycling and disposal services operating primarily in secondary markets or under exclusive arrangements. ADSI has a presence in 16 states across the Midwest, South and East regions of the United States as well as in the Commonwealth of the Bahamas, serving approximately 2.7 million residential customers and over 200,000 commercial and industrial customers through its extensive network of 90 collection operations, 72 transfer stations, 21 owned or operated recycling facilities and 39 owned or operated active landfills. Until January 27, 2016, at which time it changed its name, ADSI was known as ADS Waste Holdings, Inc.

8. Defendant Advanced Disposal Services South, LLC ("ADS South") is a Delaware LLC, a wholly owned subsidiary of ADSI, and has offices located at 90 Fort Wade Road, Ponte Vedra, Florida 32081. Until November 30, 2012, ADS South was known as Advanced Disposal Services, Inc.

9. Defendant Advanced Disposal Services Eastern PA, Inc. ("ADS Eastern PA") is a Pennsylvania corporation, a wholly owned subsidiary of ADSI, and has offices located at 90 Fort Wade Road, Ponte Vedra, Florida 32081. ADS Eastern PA is the successor in interest to Advanced Disposal Services Shippensburg, LLC, Advanced Disposal Services Skippack, Inc., and various other former subsidiaries of ADSI which provided waste collection services to Pennsylvania residents, including Plaintiff and other class members, for the ultimate benefit of ADSI.

10. ADSI and ADS South have made strategic decisions which govern the operations of ADS Eastern PA and the other ADSI subsidiaries, and the operations of ADS Eastern PA and the other ADSI subsidiaries are for the ultimate benefit of ADSI and ADS South.

11. ADSI, ADS South, and ADS Eastern PA are referred to collectively herein as "Defendants" or "Advanced Disposal."

## FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

12. Defendants have provided solid waste disposal services to customers in Pennsylvania, such as Plaintiff, in exchange for an agreed upon service rate. Defendants devised, implemented, and/or carried out a scheme to wrongfully take money from Plaintiff and putative class members by charging fees which were both not contractually authorized and materially misleading. As a result, Defendants have wrongfully acquired money from Plaintiff and the putative class members. This wrongful practice took place over several years, and is still ongoing today. There is a real and immediate threat of ongoing harm from Defendants' conduct.

13. Defendants have entered and continue to enter into written service agreements with customers state-wide, using a standardized form contract that established, among other terms and conditions, a basic price for the service based on the volume and type of waste collected. In violation of these written service agreements, Defendants engaged in the unlawful practice of

charging Plaintiff and putative class members excessive and improper "fuel surcharges," "environmental fees," and "administrative fees" (hereinafter known, collectively, as "Cost Recovery Fees"). While Defendants characterize these improper fees as legitimate charges purportedly related to fuel, environmental, and administrative costs, such fees are improper, unrelated to the fuel, environmental, or administrative costs incurred by Defendants, and constitute a breach of Plaintiff and putative class members' service agreements.

14. Additionally, Defendants' conduct constitutes unjust enrichment and a breach of the UTPCPL.

15. In September 2012, Defendants took over IWS's customer contracts, including Plaintiff's contract with IWS, and began providing waste disposal services to Plaintiff and other prior customers of IWS. Attached hereto as Exhibit A is a copy of Plaintiff's service agreement with IWS (the "Service Agreement"), the servicing of which ADSI and ADS South assumed in September 2012.

16. Pursuant to paragraph 4 of the Service Agreement, Defendants could increase their waste disposal charges only to "account for any increase in disposal, fuel or transportation costs or other increased operating costs arising from uncontrollable circumstances."

17. In March 2012, IWS issued a notice (the "Notice," a copy of which is attached hereto as Exhibit B) announcing that it was unilaterally imposing a purported "fuel surcharge" based on the price of diesel fuel as reported by the United States Department of Energy. The Notice stated:

> To Our Valued Customer:
>
> On behalf of Interstate Waste Services, I would like to thank you for your business.

> Interstate Waste Services works diligently to minimize our expenses. From administrative overhead to trucking and disposal costs, we are continually implementing expense reduction strategies.
>
> Up to this point we have tried our best to absorb these costs and prevent our customers from having to pay a fuel surcharge. As much as we would like to keep rates unchanged, we must initiate this fuel charge in order to provide the quality service our customers have come to expect. As a result, you will see a 4.25% fuel charge effective April 1, 2012.
>
> This surcharge is based on the current U.S. Department of Energy average on-highway diesel price of 44.142 per gallon. The surcharge percentage will be adjusted up or down monthly based on this index price. For every $0.01 change in the average diesel price the surcharge will change .05%. For example if the price lowers to 44.00 per gallon the surcharge will decrease to 3.55%. The index price can be found on the U.S. Department of Energy website http://tonto.ela.doe.gov/oog/info/wohdp/diesel.asp.
>
> Interstate Waste Services embraces an unwavering commitment to becoming the nation's leading independent and fully integrated solid waste management company: employing the best people, providing superior customer service, innovative solutions and the highest standard of excellence with uncompromising respect for the environment.

18. Specifically, the notice stated, "The surcharge percentage will be adjusted up or down monthly based on this index price."

19. At some point in the fall of 2012, after Advanced Disposal took over IWS, without any notice to Plaintiff and the class, Defendants introduced a purported "environmental fee."[1]

20. Specifically, on her November 30, 2012 bill, Plaintiff noticed for the first time an Environmental Fee of $8.76. She received no prior warning or notice from Defendants regarding this fee. In addition to the environmental fee, Plaintiff was also charged, in her November 2012 bill, a Fuel Surcharge of 3.4%, amounting to $4.96.

---

[1] Defendants' webpage describes these fees as necessary to offset its allegedly increasing costs of complying with environmental regulations.

21. The Environmental Fee and the Fuel Surcharge were not tied to "increased operating costs arising from uncontrollable circumstances" and thus constituted a breach of the Service Agreement and Notice.

22. For the months of December 2012, January 2013, and February 2013, the Environmental Fee remained the same at $8.76, but the Fuel Surcharge varied as a percent of the monthly fee, from 3.25% to 4.05%. All such charges were assessed in violation of the Service Agreement and Notice.

23. Subsequently, beginning with the March 2013 bill, the Environmental Fee jumped from $8.76 to $14.60. The Fuel Surcharge continued to fluctuate as a percentage of the monthly fee, in the 3-4% range. All such charges were assessed in violation of the Service Agreement and Notice.

24. Additionally, on Plaintiff's March 2013, April 2013, and May 2013 invoices, under the heading "Important Messages" in the top right hand corner, was a notice that said, "Effective April 1, 2013 we are standardizing our environmental and fuel fees that may impact your future charges. For more information on our fees, visit our website at www.advanceddisposal.com." However, the notice neither informed Plaintiff what those standardized charges might be, nor why they were needed.

25. Beginning with the June 2013 bill, Plaintiff's Fuel Surcharge drastically increased to 15.66% of the monthly fee. There was no notice to Plaintiff or the class regarding this increase, nor was there any corresponding increase in the U.S. Energy weekly listing of diesel fuel prices (the "EIA/DOE Index"). Additionally, on Plaintiff's June 2013 invoice, under the heading "Important Messages" in the top right hand corner, appeared a notice that said "Effective August 1, 2013 we are standardizing our Administrative Fee that may impact your next invoice charges."

However, the notice neither informed Plaintiff what those standardized charges might be, nor why additional fees (on top of the Fuel Surcharge and Environmental Fee already being charged) were needed.

26. In the invoice dated July 31, 2013, Plaintiff was charged an administrative fee of $7.00, as well as an increased Environmental Fee of $15.33 (which was 10% of the monthly fee). Additionally, the monthly fuel surcharge increased to 15.660% (amounting to $24.01). Not only were Plaintiff and the class not notified of these substantial increases to their bill, but the percentage charged for Fuel Surcharge did not correlate to any similar increase in the EIA/DOE Index, nor to Defendants' actual environmental costs incurred at that time.

27. For the remainder of 2013, Defendants continued to charge a monthly administrative fee of $7.00, a monthly environmental fee of $15.33, and an ever-increasing monthly fuel surcharge ranging from 15.76% to 16% of the monthly fee, as set forth in the following chart:

| Company | Date | Monthly fee | % | Fuel Surcharge | Environmental Fee | Admin. Fee |
|---|---|---|---|---|---|---|
| IWS | 4/1/12 | $146.00 | 0.04 | 6.21 | | |
| IWS | 9/30/12 | $146.00 | | | | |
| IWS | 10/1/12 | $146.00 | 0.04 | 6.13 | | |
| Advanced Disposal | 10/31/12 | $146.00 | 4.1 | 5.99 | | |
| Advanced Disposal | 11/30/12 | $146.00 | 3.4 | 4.96 | 8.76 | |
| Advanced Disposal | 12/31/12 | $146.00 | 3.25 | 4.75 | 8.76 | |
| Advanced Disposal | 1/31/13 | $146.00 | 3.25 | 4.75 | 8.76 | |
| Advanced Disposal | 2/28/13 | $146.00 | 4.05 | 5.91 | 8.76 | |
| Advanced Disposal | 3/31/13 | $146.00 | 4.42 | 6.45 | 14.60 | |
| Advanced Disposal | 4/30/13 | $146.00 | 3.25 | 4.75 | 14.60 | |
| Advanced Disposal | 5/21/13 | $146.00 | 3.13 | 4.57 | 14.60 | |
| Advanced Disposal | 6/30/13 | $146.00 | 15.66 | 22.86 | 14.60 | |

| | | | | | | |
|---|---|---|---|---|---|---|
| Advanced Disposal | 7/31/13 | $153.30 | 15.66 | 24.01 | 15.33 | 7.00 |
| Advanced Disposal | 8/31/13 | $153.30 | 15.76 | 24.16 | 15.33 | 7.00 |
| Advanced Disposal | 9/30/13 | $153.30 | 16 | 24.42 | 15.33 | 7.00 |
| Advanced Disposal | 10/31/13 | $153.30 | 16 | 24.99 | 15.33 | 7.00 |
| Advanced Disposal | 11/30/13 | $153.30 | 16 | 24.25 | 15.33 | 7.00 |
| Advanced Disposal | 12/31/13 | $153.30 | 16 | 23.84 | 15.33 | 7.00 |

28. The monthly bills sent to Plaintiff and the class did not contain any explanation and/or notification of these various increasing Cost Recovery Fees. Instead, Defendants' website, under the "For Business" tab or in the FAQs of the residential services portion of the website, described the Environmental and Fuel Charges as follows:

> FUEL CHARGE
>
> Our fuel fee calculation is generally based upon the national weekly average price of diesel fuel – all types as reported by the Energy Information Administration of the U.S. Department of Energy ("EIA/DOE") in its Weekly Retail On-Highway Diesel Prices Index. This index is objective, publicly available and widely recognized in the trucking and transportation industries. Basing our fuel fee upon this index will ensure you, our valued customer, will pay a fuel fee that is currently adjusted, easy to calculate, and equitable.
>
> The fuel fee is generally based on the month's weekly average diesel prices immediately prior to your invoice date. The Fuel Fee Table indicates what the fuel fee is as a percentage of your total invoice charges, not including fees and taxes, generally based on the prior month's weekly diesel pricing average as when on the invoice. The amount of the fuel fee reflected on your invoice is not designed to be specific to the direct costs and expense to service your account, but rather is designed to address changes in Advanced Disposal's overall cost structure and to achieve an operating margin acceptable to Advance Disposal.
>
> ENVIRONMENTAL CHARGE
>
> The environmental fee is a percentage of your total invoice charges, not including fees and taxes, as shown on the invoice, which may change from time-to-time. Please note: Some disposal customers are charged a flat per

load rate or a variation not described herein or have other contract terms. Contact your Advanced Disposal service location for further details.

The environmental fee was implemented to cover the company wide costs and expenses to operate our collection, transfer, landfill materials, recovery facilities, and landfill gas-to-energy operations in a safe and environmentally responsible manner and to achieve an operating margin acceptable to Advanced Disposal.

NOT A GOVERNMENTAL TAX; FUTURE CHANGES

The fuel and environmental charges are not a tax or surcharge imposed by or remitted to any governmental or regulatory agency; it is our charge. The fuel and environmental fees may be changed at the sole discretion of Advanced Disposal. To the extent required by your applicable customer service terms, your consent to the assessment of the fuel and environmental fees, and any changes to such fees, is effective upon your payment.

29. The "Frequently Asked Questions" section of Defendants' website included the following questions and answers:

**Why do you charge a fuel fee component?**

The historical fluctuation in the cost of diesel fuel has made it difficult for Advanced Disposal to recover and administer fuel costs and expenses within operating margins acceptable to Advanced Disposal. In addition to the change in cost and expense attributed to fuel pricing and the fuel consumption of our fleet, there can be a cost impact on other petroleum related products. Our vendors also charge us fees and surcharges when fuel prices increase or we see a general increase in the cost of most goods and services that must be recouped.

**If the price of fuel goes down, will my fuel fee component go down too?**

Yes, because the charge is generally based upon the EIA/DOE index, if the EIA/DOE's national average diesel price falls, your fuel fee component will come down as well. The EIA/DOE index is updated weekly.

**How can I access the Department of Energy Weekly Retail On-Highway Diesel Prices Index?**

Here is the link to the EIA/DOE. This site is updated every Monday evening.

**Did the fuel fee component recently increase?**

Recent fluctuations in the amount of the fuel fee may be tied to changes in the EIA/DOE index.

**What does the environmental fee component cover?**

The environmental fee component is our charge that we attribute to our overall company-wide costs and expenses to operate our business in a safe and environmentally responsible manner and to achieve an operating margin acceptable to Advanced Disposal. This environmental fee is not specifically tied to the environmental compliance or other costs and expenses to service each individual customer account, but to overall environmentally related costs and expenses to service all Advanced Disposal customers and to achieve an operating margin acceptable to Advanced Disposal. Our environmentally related costs and expense include, among other things, landfill cover material, engineering, testing and maintenance in our landfills. In our collection operations, these costs and expenses include such things as the disposal of tires batteries, oils and fluids and the monitoring and management of vehicle emissions.

**Will the environmental fee component change?**

Like most companies, we are constantly looking at various cost and expense components of our business, including our environmentally related costs and expenses, to ensure we continue to operate in a profitable and sustainable manner. Therefore, the environmental fee may be changed from time-to-time. The environmental fee may be changed periodically if there is a business determination that warrants an increase or decrease in the fee charged. Please note: Some disposal customers are charged a flat per load rate. -

30. While the aforementioned information was available on Defendants' website, it was never provided with any of the bills mailed to Plaintiff and the class.

31. Additionally, in the Service Agreement (attached hereto as Exhibit A), under Terms and Conditions, paragraph 4 states:

> CHARGES, PAYMENTS, ADJUSTMENTS. Customer shall pay Company for the services and/or equipment furnished by Company (including all charges for equipment repair and maintenance) in accordance with the charges set forth in this Agreement, as the same may be adjusted as provided herein. Payment shall be made by Customer to Company upon receipt of invoice but no later than 30 days from the date of the invoice. Company may charge, and Customer shall pay, a service charge on all past

due amounts accruing from the date of the invoice at a rate of eighteen percent (18%) per annum, or the maximum rate permitted by law. Company may increase the charges to account for any increase in disposal, fuel or transportation costs or other surcharges, or other governmental charges. Company may also increase the charges to account for increases in the Consumer Price Index (for all Urban Consumers (CPI-U), U.S. City Average, all items, as published by the United States Department of Labor, Bureau of Labor Statistic) and for any increases in the average weight per container of Waste Materials. Increases in charges shall be payable to Customer upon receipt of notification of the same from Company.

32. The form Service Agreement also contains a provision entitled "ENTIRE AGREEMENT," stating:

> This Agreement represents the entire agreement between the parties and supersedes any and all other agreements whether written or oral that may exist between the parties except as otherwise provided herein.

33. Paragraph 9 of the form Service Agreement (the "Penalty Provision") effectively obliged Plaintiff and class members to adhere to Defendants' demand for increased charges by making it cost prohibitive for the customer to object to the charges by moving their business elsewhere. The Penalty Provision states:

> DAMAGES – In the event Customer terminates the Agreement prior to the expiration of any term for any reason other than an uncured default by Company, or in the event that Company terminates this Agreement as a result of Customer's default, it shall be deemed a breach of this Agreement, and Customer shall pay the following liquidated damages. In addition to the Company's attorney's fees and costs for the removal of the equipment (a) if the remaining terms is six or more months, Customer shall pay Customer's most recent monthly charges multiplied by six (6) or (b) the remaining term is less than six months, Customer shall pay Customer's most recent monthly charges multiplied by the number of months remaining in the term.

34. Defendants' environmental and fuel fees represent Defendants' unilateral power to amend material contractual provisions without limitations. Defendants never disclosed this fact, and Plaintiff and the class members had no reason either to suppose the falsity of Defendants' promise to correlate fuel fee increases and decreases with actual costs, or to test the validity of

Defendants' representations regarding such fee increases and decreases. The imposition of fees that did not correspond to fluctuations in the price of fuel is a breach of contract, both explicitly and by the implied covenant of good faith and fair dealing.

35. The "Frequently Asked Questions" section of Defendants' website represented that the increase in fuel surcharges was "necessary for them to recover the significant increased cost of diesel today."

36. Defendants promised and undertook, again, that the fuel recovery percentages "will increase/decrease as the national average diesel price changes." Defendants never disclosed that they would manipulate the relationship between fees and fuel costs to assure that changes to the customer would remain above where they had been when this practice began.

37. Having committed to contracts with Defendants, Plaintiff and the class found themselves in a weakened and adherent position by virtue of the Penalty Provision. Thus, customers who opposed the fees could not terminate their dealings with Defendants without suffering significant penalty.

## CLASS ACTION ALLEGATIONS

38. Plaintiff brings all claims herein pursuant to Pennsylvania Rules of Civil Procedure §§ 1701 *et seq.*, and/or Federal Rule of Civil Procedure 23(b)(3), on behalf of three subclasses:

(a) for the breach of contract count this class is more specifically defined as follows: all persons and entities who reside or are located in Pennsylvania and pay or paid for solid waste disposal services from Defendants (or their predecessors or subsidiaries) who were charged fuel surcharges, environmental fees, and/or administrative fees from October 1, 2012 through the present;