(b) for the unjust enrichment count this class is more specifically defined as follows: all persons and entities who reside or are located in Pennsylvania and pay or paid for solid waste disposal services from Defendants (or their predecessors or subsidiaries) who were charged fuel surcharges, environmental fees, and/or administrative fees from April 23, 2010 through the present; and

(c) for the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") count, the class is more specifically defined as follows: all Pennsylvania residents who paid fuel surcharges, environmental fees, and/or administrative fees to Defendants (or their predecessors or subsidiaries) from April 23, 2008 through the present in connection with solid waste disposal services received from Defendants (or their predecessors or subsidiaries) for personal, family or household purposes.

39. Excluded from the class are: all of Defendants' executives, as well as their legal and immediate family members; any entity in which Defendants have a controlling interest; any of Defendants' parents, subsidiaries, and affiliates; and the heirs, successors, and assigns of any excluded individual or entity.

### Typicality and Numerosity

40. Defendants have numerous customers in Pennsylvania who have paid the improperly charged and increased Cost Recovery Fees. Individual joinder of all class members is impractical.

41. The exact number and identities of class members are unknown at this time, but can be ascertained through appropriate discovery, including discovery of Defendants' own records, and are estimated to be at least numbered in the hundreds or thousands. Defendants use or at times

relevant to this lawsuit have used a TRUX database to bill their customers on a monthly basis and such a database can be used to provide notice to class members.

42. Plaintiff's claims present class-wide legal and factual issues that arise out of Defendants' uniform course of conduct under a standardized service contract. All class members have sustained economic damages similarly arising out of Defendants' alleged common course of conduct.

### Commonality and Predominance

43. Questions of law or fact of common and general interest to the class exist as to all members of the class, and predominate over any questions affecting only individual class members. Common questions of law or fact include, *inter alia*:

(a) Whether Defendants had an actual contractual entitlement to the Cost Recovery Fees and whether or not Defendants collected Cost Recovery Fees in excess of those authorized by the Service Agreement and described in the Notice;

(b) Whether Plaintiff and class members were weak, adhering persons so that the contract became unconscionable;

(c) Whether the terms "Fuel Fee," "Environmental Fee," and "Administrative Fee" (known collectively as "Cost Recovery Fees") are deceptive;

(d) Whether Defendants failed to disclose material facts about the Cost Recovery Fees and the purported costs which Defendants claim justify these fees;

(e) Whether Defendants violated implied covenants of good faith and fair dealing;

(f) Whether Defendants were aware of such improper conduct by virtue of the existence of eight separate actions alleging similar violations by Veolia ES Solid Waste Southeast,

Inc., which company was acquired by Defendants on or about November 20, 2012, just days after a Compromised Stipulation of Class Settlement was reached with the eight lawsuits;

(g) Whether a constructive trust should be imposed on the monies improperly obtained by the Defendants;

(h) Whether (and, if so, what) injunctive relief should be granted;

(i) Whether Defendants' assessment of Cost Recovery Fees constitutes unjust enrichment and/or deceptive conduct; and

(j) Whether Plaintiff and the putative class are entitled to the relief requested.

### Adequate Representation

44. Plaintiff will fairly and adequately protect the interests of the class members and have no interests antagonistic to those of the class members. Plaintiff has retained counsel experienced in the prosecution and successful settlement of nationwide and statewide class actions.

### Superiority

45. The class action is superior to other available methods for the fair and efficient adjudication of this controversy since individual joinder of all members of each class is impracticable. The interests of judicial economy favor adjudicating the claims for the class rather than for the Plaintiff on an individual basis.

### CAUSES OF ACTION

### COUNT I – BREACH OF EXPRESS CONTRACT

46. Plaintiff and the class reallege paragraphs 1 through 45 above, as if fully set forth herein.

47. A written service agreement exists between Plaintiff and Defendants, and putative class members and Defendants.

48. Other putative class members have contracts with language identical or substantively identical to that in Plaintiff's contract.

49. Defendants' improper practices constitute a breach of contract for which Plaintiff and putative class members have been damaged. Defendants' practices caused Plaintiff and the class to pay excessive fees and service rates.

50. Defendants' conduct constitutes repeated breaches of contract.

51. The Cost Recovery Fees were assessed in violation of paragraph 4 of the Service Agreement.

52. Defendants owed Plaintiff and the class an implied duty of good faith and fair dealing with respect to the Service Agreement, including with respect to the manner by which Defendants calculated and assessed the purported Cost Recovery Fees.

53. Defendants breached their implied duty by, *inter alia*:

   (a) calculating purported fuel surcharges using pricing proxies that did not correlate to, or reflect changes in, Defendants' actual fuel costs;

   (b) failing to adjust fuel surcharges to reflect decreases in Defendants' pricing proxies;

   (c) calculating purported environmental fees using a fixed percentage that did not reflect changes in their actual environmental costs;

   (d) assessing the purported Cost Recovery Fees to disguise Defendants' failure to appropriately fluctuate the purported fuel surcharges;

   (e) unilaterally changing the recovery percentages, and disguising the basis for those percentages;

(f) unilaterally adjusting the cost of fuel benchmark in a manner that permitted Defendants to impose fees without regard to falling fuel prices; and

(g) charging a fee purportedly for the increased costs of fuel on a fee purportedly for environmental changes.

54. Defendants' breaches have injured Plaintiff and the class members in amounts to be determined at trial.

## COUNT II – UNJUST ENRICHMENT

55. Plaintiff and the class reallege paragraphs 1 through 54 above, as if fully set forth herein.

56. In the event Plaintiff and the class lack an adequate remedy at law, Defendants have been unjustly enriched, and Plaintiff and the class have been unjustly impoverished, by the payment of purported Cost Recovery Fees in the manner assessed by Defendants, warranting restitution or such other equitable relief as the Court deems just.

57. Because of the wrongful activities described above, including improperly charging Plaintiff and the class the misleading Cost Recovery Fees, Defendants have received moneys belonging to Plaintiff and the class. Defendants have benefited from receipt of these improper and misleading fees and should not be permitted to keep the fees.

58. By reason of the foregoing, Plaintiff and the class have suffered money damages in an amount to be determined at trial.

## COUNT III – VIOLATION OF UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW, 73 P.S. § 201-1, *et seq.*, 73 P.S. § 201-2(4)(xxi)

59. Plaintiff and the class reallege paragraphs 1 through 58 above, as if fully set forth herein.

60. Defendants' provision of waste removal services falls within the gamut of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201-1, *et seq*.

61. Defendants' acts, representations, conduct, omissions, and concealments deceived Plaintiff and the class to believe that the Cost Recovery Fees were fair and concerned recovery by Defendants of actual costs incurred.

62. Defendants knew they were deceiving Plaintiff and the class. Defendants violated 73 P.S. § 201-2(4)(xxi) through their fraudulent and/or deceptive conduct, which created a likelihood of confusion and/or misrepresentation.

63. As a direct and proximate result of Defendants' intentional and reckless conduct, their misrepresentations, acts, omissions, and concealments, Plaintiffs and the class sustained damages.

64. The acts and/or omissions committed by Defendants, jointly and/or severally in violation of the UTPCPL, include but are not limited to:

    (a) failing to comply with the terms of the written contract; and

    (b) knowingly misrepresenting the Cost Recovery Fees.

65. For the reasons set forth above, Defendants have committed unfair and deceptive business practices prohibited by the UTPCPL, for which the Defendants are liable for actual damages, treble damages, and attorneys' fees.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the class, respectfully requests that the court enter judgment in Plaintiff and the class' favor and against Defendants:

A. ruling that this action is properly maintainable as a class action, and appointing Plaintiff as class representative, and the undersigned counsel as class counsel;

B. awarding compensatory damages and all monetary relief authorized by law or referenced in this complaint;

C. requiring disgorgement of all improperly received Cost Recovery Fees into a constructive trust, or common fund, for the benefit of the named Plaintiff and the class;

D. awarding prejudgment and post judgment interest;

E. awarding costs of this action, including reasonable attorneys' fees and reimbursement of expenses, reasonably incurred, including experts' fees;

F. awarding such other and further relief as this court may deem just, equitable, or proper;

G. for actual/ascertainable damages, including interest, attorneys' fees, costs and expenses of suit and such additional amounts to be determined at the time of trial; and

H. for treble damages in accordance with 73 P.S. § 201-9.2(a).

## JURY DEMAND

Plaintiff and the class demand a jury trial of all issues triable of right by jury.

Dated: December 8, 2017                     **KAUFMAN, COREN & RESS, P.C.**

BY: _____
Deborah R. Gross, Esquire (I.D. 44542)
Benjamin M. Mather, Esquire (I.D. 89959)
Andrew J. Belli, Esquire (I.D. 208100)
Two Commerce Square
2001 Market Street, Suite 3900
Philadelphia, PA 19103
Phone: (215) 735-8700
Fax: (215) 735-5170
dgross@kcr-law.com
bmather@kcr-law.com

*Attorneys for Plaintiff*

# Exhibit A

*2014-03659-CT*

IWS of Pennsylvania, LLC – Eastern PA Collection
2040 Lucon Rd, Schwenksville PA 19473-2013
PO Box 1500, Skippack PA 19474
610-584-5293

## Service Agreement
Non-Hazardous Waste


**INTERSTATE WASTE SERVICES**

| New or Existing Account No. | 107090 | | Customer Account No. 107090 Site Number 0001 | | Effective Service Date | 6/1/12 |
|---|---|---|---|---|---|---|
| | | | | | Terr/Rep | 264/D GRANT |

| ☐ New Account | ☐ Increase Service | ☑ Renewal | ☑ Front Load | Reason Code | RENEWAL |
| ☐ Temporary | ☐ Decrease Service | ☐ Cancel | ☐ Rear Load | Lead Source | UPDATE |
| ☐ Seasonal | ☐ Price Change | ☐ COD | ☐ Compactor | Competitor | |

### Customer Service Location Information

| Service Name | Flaccus Anne |
|---|---|
| Address | 847 Valley Forge Rd |
| | Shops of Corner Stores |
| City | Phoenixville    State PA |
| Zip Code | 19460-2623   County  Chester |
| Service Contact | |
| Phone # | 610-935-2723 |
| Email | |

### Customer Billing Information

| Customer Name | Flaccus Anne |
|---|---|
| Customer FEIN# | |
| Address | 847 Valley Forge Rd Ste 102 |
| City | Phoenixville |
| State | PA      Zip  19460-2623 |
| Billing Contact | |
| Phone # | |
| Email | |

| | | Line of Business | Service Type | Qty | Container Size | Frequency or On Call | Service Days M,T,W,R,F,S,Z | Extra P/U or Haul Rate | Disposal Rate | Fuel | Monthly Charge |
|---|---|---|---|---|---|---|---|---|---|---|---|
| N | 1 | | ☐ MSW ☐ REC ☐ Other | | | | | | TN/LD/YD | | |
| E | 2 | | ☐ MSW ☐ REC ☐ Other | | | | | | TN/LD/YD | | |
| W | 3 | | ☐ MSW ☐ REC ☐ Other | | | | | | TN/LD/YD | | |
| O | 1 | FL | ☑ MSW ☐ REC ☐ Other | 1 | 4 yard front load | weekly | W(51790) | ExtraP/U-$48 | TN/LD/YD | Y | $146.00 |
| L | 2 | | ☐ MSW ☐ REC ☐ Other | | | | | | TN/LD/YD | | |
| D | 3 | | ☐ MSW ☐ REC ☐ Other | | | | | | TN/LD/YD | | |

| Other Charges/ PO # / Credit Card # | | Difference Std Charge + - | $ 0.00 |
|---|---|---|---|
| Delivery Date | Delivery Contact | (Temp) Removal Date | |
| Inactivity Fee | Directions / Container Location / Comments | | |

** $25.00 CREDIT DUE (if mailed within 30 days) **

** PLEASE UPDATE ANY CONTACT INFO THAT WE DO NOT HAVE NOTED CORRECTLY ON THIS CONTRACT **

The undersigned individual signing this Agreement on behalf of Customer acknowledges that he or she has read and understands the Terms and Conditions, on page 2 of this document, which are a part of this Agreement and that he or she has the authority to sign this Agreement on behalf of Customer.

| Company Name | Interstate Waste Services of Eastern Pennsylvania | Customer Name | |
|---|---|---|---|
| By (Signature) | SAS | By (Signature) | Anne Flaccus |
| Name & Title (PRINT) | Stacey Smith - Sales Support Specialist | Name & Title (PRINT) | ANNE FLACCUS |
| Date | 6/8/12 | Contract Date | |

Page 1 of 2

*2014-03659-CT*

## TERMS AND CONDITIONS

1. **SERVICES RENDERED.** Customer grants to Company the exclusive right to collect and dispose of and/or recycle all of Customer's Waste Materials (as defined in Paragraph 3) and Customer agrees to make payments when due and comply with all other terms of this Agreement. Company agrees to furnish equipment and services set forth in this Agreement, all in accordance with the terms of this Agreement.

2. **TERM.** The initial term of this Agreement is five (5) years from the Effective Date. Except where prohibited by law, this Agreement shall automatically renew thereafter for additional terms of twelve (12) months each unless either party gives the other party written notice by Certified Mail, Return Receipt Requested, of termination at least sixty (60) days prior to the termination of the then existing term.

3. **WASTE MATERIALS.** The Waste Materials to be collected and disposed of and/or recycled by Company pursuant to this Agreement are all non-hazardous putrescible and non-putrescible solid waste and recyclable materials generated by Customer or generated at Customer's Service Address (collectively "Waste Materials"). Waste Materials specifically excludes and Customer specifically agrees not to deposit or permit the deposit for collection by Company of, any radioactive, volatile, corrosive, flammable, explosive, biomedical, infectious, biohazardous, and regulated or hazardous waste, toxic substance or material as defined by, listed or characterized under applicable federal, state or local laws or regulations (collectively "Excluded Materials"). Title to and liability for Excluded Materials shall remain with Customer at all times. Customer represents and warrants that all materials to be collected under this Agreement shall be and conform to the definition of Waste Materials herein.

4. **CHARGES, PAYMENTS, ADJUSTMENTS.** Customer shall pay Company for the services and/or equipment furnished by Company (including all charges for equipment repair and maintenance) in accordance with the charges set forth in this Agreement, as the same may be adjusted as provided herein. Payment shall be made by Customer to Company upon receipt of invoice but no later than 30 days from the date of an invoice. Company may charge, and Customer shall pay, a service charge on all past due amounts accruing from the date of the invoice at a rate of eighteen percent (18%) per annum, or the maximum rate permitted by law. Company may increase the charges to account for any increase in disposal, fuel or transportation costs or other increased operating costs arising from uncontrollable circumstances including, without limitation, changes in federal, state or local laws, rules, regulations or ordinances, imposition of taxes, fees, surcharges, or other governmental charges. Company may also increase the charges to account for increases in the Consumer Price Index (for all Urban Consumers (CPI-U), U.S. City Average, all items, as published by the United States Department of Labor, Bureau of Labor Statistic) and for any increases in the average weight per container of Waste Materials. Increases in charges shall be payable by Customer upon receipt of notification of the same from Company.

5. **CHANGES.** Changes in the frequency of collection service, schedule, number, capacity and/or type of equipment may be agreed to orally, in writing or by the actions and practices of the parties; provided that the Customer shall not be entitled to alter the service requirements hereunder during any Term for reason of or while contracting with another collection, disposal or recycling service provider at Customer's Service Address. Changes in charges other than those described in Paragraph 4 may also be agreed to orally, in writing, or by the actions and practices of the parties. In the event Customer relocates during the Term and Customer's new address is within the area serviced by Company or one of its affiliates, this Agreement shall be applicable to and remain in full force and effect at such new service address location.

6. **EQUIPMENT, ACCESS.** The equipment furnished hereunder by Company shall remain the property of Company; however, Customer shall have care, custody and control of the equipment while at the Service Address. Customer shall bear responsibility and liability for all loss or damage to the equipment and for its contents. Company shall not be responsible for spillage of paint, oil or other prohibited substances resulting from compacting or emptying the contents of containers, or stains or damage related thereto. Customer shall not overload (by weight or volume), move or alter the equipment and shall use the equipment only for its intended purpose as stated herein. Customer shall be responsible for any fines incurred by Company due to Customer's overloading or overfilling of the equipment. At the termination of this Agreement, Customer shall return the equipment to Company in the condition in which it was provided, normal wear and tear excepted. Customer shall provide unobstructed access to the equipment on the scheduled collection day(s). Company reserves the right to charge an additional fee for any modification in collection service caused by or resulting from Customer's failure to provide access to the equipment.

7. **DRIVEWAYS, PARKING AREAS, PAVEMENT.** Company shall not be responsible for any damage to Customer's property, including driveways, parking areas, pavement or curbing, resulting from Company's vehicles or equipment or the weight thereof. Customer represents and warrants that all streets, access roads, curbing, parking lots, enclosures, loading docks and all areas in which Company's vehicles and equipment will or may operate will be adequate to support Company's vehicles at full load and provide sufficient access, without damages, to such areas or facilities. The Customer further agrees that while this Agreement is in force only Company's equipment shall be used for the transportation and disposal of the Customer's Waste Materials.

8. **DEFAULT, TERMINATION.** If during the term of this Agreement, Customer or Company shall be in breach or default of this Agreement ("Default"), other than a default with respect to Customer's failure to make payment, the party alleging the default shall notify the other party in writing of such default and shall allow the Defaulting Party thirty (30) days from receipt of such notice to cure the default. If the Defaulting Party does not cure the default within thirty (30) days, the party alleging the default may terminate this Agreement. If during the term of this Agreement, Customer fails to make payment when payment is due, Company shall have the right to suspend service until such default is cured and Company has been fully compensated for services rendered by Company to Customer. If Customer fails to fully compensate Company within thirty (30) days after service has been suspended, Company shall have the right to declare a default and terminate this Agreement. Notice of Termination shall be in writing and, except where such termination is the result of a failure to make payment, shall be sent by certified mail, postage prepaid, return receipt requested at the address set forth in this Agreement.

9. **DAMAGES.** In the event Customer terminates this Agreement prior to the expiration of any term for any reason other than an uncured default by Company, or in the event that Company terminates this Agreement as a result of Customer's default, it shall be deemed a breach of this Agreement, and Customer shall pay the following liquidated damages, in addition to the Company's attorney's fees and costs for removal of the equipment: (a) if the remaining term is six or more months, Customer shall pay Customer's most recent monthly charges multiplied by six (6) or (b) if the remaining Term is less than six months, Customer shall pay Customer's most recent monthly charges multiplied by the number of months remaining in the term.

10. **INDEMNITY.** Customer agrees to indemnify, defend and hold Company harmless against all claims, damages, suits, penalties, fines, liabilities, costs, expenses and other damages (including attorney's fees) arising directly or indirectly out of or in connection with any actual or alleged (i) breach by Customer of any representations, warranties, terms or conditions of this Agreement, (ii) generation, placement in equipment, deposit, collection or disposal of any Excluded Materials, or (iii)injury or death of a person or loss or damage to property that may arise out of or in connection with Customer's negligence, willful misconduct or use, operation or possession of any equipment.

11. **EXCUSED PERFORMANCE.** Neither party hereto shall be liable for its failure to perform or its delay in performance hereunder due to contingencies beyond its reasonable control, including but not limited to strikes, riots, compliance with laws or governmental orders, fires, acts of God, inability to obtain equipment and other similar causes, and such failure shall not constitute a Default under this Agreement.

12. **ASSIGNMENT, BINDING EFFECT.** Company may assign this Agreement without Customer's consent. Customer may not assign this Agreement without Company's prior written consent, which consent may be withheld in Company's sole discretion. This Agreement shall be binding on and shall inure to the benefit of Company, Customer and their respective successors and assigns.

13. **ENTIRE AGREEMENT.** This Agreement represents the entire agreement between the parties and supersedes any and all other agreements whether written or oral that may exist between the parties except as otherwise provided herein.

14. **GOVERNING LAW, SEVERABILITY.** This Agreement shall be construed in accordance with the laws of the state in which the services are provided. If any provision of this Agreement is declared invalid or unenforceable, then such provision shall be deemed severable from and shall not affect the remainder of this Agreement.

15. **RIGHT OF FIRST REFUSAL.** Customer grants to Company a right of first refusal to match any offer relating to services similar to those provided hereunder which Customer receives (or intends to make) upon termination of this Agreement for any reason and Customer shall give Company prompt written notice of any such offer and a reasonable opportunity to respond to it.

16. **ATTORNEY'S FEES.** In the event Customer fails to pay Company all amounts which become due under this Agreement, or fails to perform its obligations hereunder and Company refers such matter to an attorney, Customer agrees to pay, in addition to the amount due, any and all costs incurred by Company as a result of such action, including reasonable attorney's fees.

17. **ELECTRONIC SIGNATURES.** The electronic delivery of a signed copy of this Agreement, whether by facsimile transmission or by electronic mail, shall represent the legal and binding signature of such party and evidence such party's agreement to be bound by the terms and conditions hereof.

18. **MISCELLANEOUS.** If any conflicts exist between terms which are oral and those which are typed or written, those that are typed or written shall govern. If any conflicts exist between this Agreement and Customer's purchase orders and/or acknowledgments, the terms and conditions of this Agreement shall govern.

☐ CUSTOMER HEREBY ACKNOWLEDGES THAT HE OR SHE HAS READ AND UNDERSTANDS THE TERMS AND CONDITION WHICH ARE A PART OF THIS AGREEMENT AND THAT HE OR SHE HAS THE AUTHORITY TO SIGN THIS AGREEMENT ON BEHALF OF CUSTOMER.

CUSTOMER
_(signature)_
(Authorized Signature)

[Title]                (Date)

COMPANY
_(signature)_
(Authorized Signature)
Sales Support Specialist   6/8/12
(Title)                    (Date)

2

*2014-03659-CT*

*Exhibit B*

*2014-03659-CT*





March 28, 2012

To Our Valued Customer,

On behalf of Interstate Waste Services, I would like to thank you for your business.

Interstate Waste Services works diligently to minimize our expenses. From administrative overhead to trucking and disposal costs, we are continually implementing expense reduction strategies.

Up to this point we have tried our best to absorb these costs and prevent our customers from having to pay a fuel surcharge. As much as we would like to keep rates unchanged, we must initiate this fuel charge in order to provide the quality services our customers have come to expect. As a result, you will see a 4.25% fuel charge effective April 1, 2012.

This surcharge is based on the current U.S. Department of Energy average on-highway diesel price of $4.142 per gallon. The surcharge percentage will be adjusted up or down monthly based on this index price. For every $0.01 change in the average diesel price the surcharge will change .05%. For example if the price lowers to $4.00 per gallon the surcharge will decrease to 3.55%. The index price can be found on the U.S. Department of Energy website http://tonto.eia.doe.gov/oog/info/wohdp/diesel.asp.

Interstate Waste Services embraces an unwavering commitment to becoming the nation's leading independent and fully integrated solid waste management company: employing the best people, providing superior customer service, innovative solutions and the highest standard of excellence with uncompromising respect for the environment.

If you have any questions please feel free to contact your IWS representative or call 866-DIAL-IWS (866-342-5497). We are looking forward to continuing our business relationship and providing you the highest quality services.

Thank you for your continued patronage.

Respectfully,


Interstate Waste Services

2040 Lucon Road  |  Schwenksville, PA 19473

2014-03659-CT3

iws-115924

**CERTIFICATE OF SERVICE**

I hereby certify that on December 8, 2017, the foregoing document was served on the following via U.S. Mail:

>Joel L. Frank, Esquire
>John J. Cunningham, IV, Esquire
>Lamb McErlane PC
>24 East Market Street
>P.O. Box 565
>West Chester, PA 19381-0565
>
>Bryan O. Balogh
>Burr & Forman LLP
>420 N. 20th Street
>Suite 3400
>Birmingham, AL 32503
>
>*Attorneys for Defendants Advanced Disposal Services, Inc.*
>*and Advanced Disposal Services Eastern PA, Inc.*

**KAUFMAN, COREN & RESS, P.C.**

BY: _____
Andrew J. Belli, Esquire (I.D. 208100)
Two Commerce Square
2001 Market Street, Suite 3900
Philadelphia, PA 19103
Phone: (215) 735-8700
Fax: (215) 735-5170

*Attorneys for Plaintiff*