# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANNE FLACCUS | : |
|     Plaintiff, | : |
| | : |
| v. | :     CIVIL ACTION |
| | :     NO. 17-4808 |
| ADVANCED DISPOSAL | : |
| SERVICES, INC., et al., | : |
|     Defendants. | : |

Jones, II    J.                                                                              August 6, 2018

## MEMORANDUM

Plaintiff claims to represent a class of Pennsylvania property owners who were charged excessive and improper fees by the companies contracted to provide waste removal services. According to Plaintiff, Defendants Advanced Disposal Services, Inc. ("ADSI"), Advanced Disposal Services Eastern PA ("ADSEPA"), and Advanced Disposal Services South, LLC ("ADSS") colluded to charge Plaintiff and the putative class these "Cost Recovery" fees in contravention of both the parties' outstanding contracts and Pennsylvania's consumer protection laws.

Out-of-state Defendant, ADSS, moves for dismissal of the Third Amended Complaint on the grounds that this Court cannot properly exercise personal jurisdiction over a foreign party with no meaningful ties to the Commonwealth. Plaintiff advances numerous arguments in favor of a finding of jurisdiction, each of which the Court considers herein. For the reasons that follow, Defendant ADSS's Motion to Dismiss the Third Amended Complaint for Lack of Personal Jurisdiction is denied without prejudice, and Plaintiff's request for jurisdictional discovery is granted in part and denied in part as outlined herein.

## RELEVANT BACKGROUND

I. **Corporate Structure**

The background of this case is complex, as Defendants appear to have undergone numerous changes to their corporate structures and identities. Having thoroughly reviewed the factual representations of all parties, the following represents the Court's understanding of the parties' relevant corporate history. The "Advanced Disposal" corporate family is the "leading integrated provider of non-hazardous solid waste collection, transfer, recycling[,] and disposal services." (ECF No. 11, ¶ 7.) Defendant ADSS previously operated under the corporate name "Advanced Disposal Services, Inc." until November 2012. (ECF No. 11, ¶ 8.) And present day Defendant ADSI operated under the name "ADS Waste Holdings, Inc." until January 2016. (ECF No. 11, ¶ 7.) Defendant ADSI is the corporate parent of both Defendant ADSS, (ECF No. 20-3, Ex. P), and Defendant ADSEPA. (ECF No. 15-2, ¶ 22.)

Several months following Defendant ADSS's name change, and three years before Defendant ADSI's name change, the current Advanced Disposal Vice President of Corporate Human Resources registered a corporate entity by the name of "Advance Disposal Services, Inc." to do business in Pennsylvania. (ECF No 20-2, Ex.'s G-I.) Said corporation has since remained registered to do business in the Commonwealth. (ECF No. 20-2, Ex.'s G-H.) Despite the common name, both Defendant ADSI and Defendant ADSS deny any connection to the corporation currently registered to do business in Pennsylvania. (ECF No. 15, p. 7 ; ECF No. 17, p. 7.) Jurisdictional discovery on the true identity of the registered entity is pending, but Plaintiff does not – as of the drafting of this Memorandum –allege that Defendant ADSS and the unidentified registered corporation are one in the same.

## II. **Factual Background**

At all times material to this action, Plaintiff owned property in Phoenixville, Pennsylvania. (ECF No. 11, ¶ 6.) As the property owner, Plaintiff entered into a contract with Interstate Waste Services ("IWS"), whereby Plaintiff's garbage was regularly collected in exchange for a monthly service fee. (ECF No. 11, ¶¶ 1, 6.) In June 2012, Plaintiff renewed her contract with IWS for an additional five years. (ECF No. 11, ¶ 6.) Defendants acquired IWS soon thereafter, and the local Advanced Disposal office – Defendant ADSEPA – assumed control of Plaintiff's contract as IWS's successor in interest. (ECF No. 11, ¶¶ 1, 9, 15.) Plaintiff's contract permitted increases in waste disposal charges to account for "any increase in disposal, fuel[,] or transportation costs or other increased operating costs arising from uncontrollable circumstances...." (ECF No. 11-1, Ex. A, p. 2, ¶ 4.) Plaintiff alleges that Defendant ADSEPA, at the direction of Defendants ADSI and ADSS, unlawfully charged Pennsylvania clients excessive and improper "Cost Recovery Fees" that were unrelated to any of the recoupable expenses outlined in the contracts. (ECF No. 11, ¶¶ 51-52.)

In the Third Amended Complaint, Plaintiff brings suit against in-forum Defendant ADSEPA, and foreign Defendants ADSI and ADSS. (ECF No. 11.) Defendant ADSS timely filed a Motion to Dismiss the Third Amended Complaint for Lack of Personal Jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2). (ECF No. 17.) In support of its Motion, Defendant ADSS submitted a sworn declaration that establishes the following: Defendant ADSS has no business operations in Pennsylvania (ECF No. 17-2, Ex. 1, ¶ 8); Defendant ADSS does not own stock or membership interest in Defendant ADSEPA or any other Pennsylvania company (ECF No. 17-2, Ex. 1, ¶ 15); and Defendant ADSS does not make strategic or controlling business decisions that govern the operations of Defendant ADSEPA. (ECF No. 17-2, Ex. 1, ¶ 17.)

3

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 12(b)(2), a defendant may move to dismiss a claim for lack of personal jurisdiction. Once a defendant has raised this jurisdictional defense, the burden shifts to the plaintiff to present a prima facie case establishing jurisdiction over the non-resident defendant in the forum. Pinker v. Roche Holdings Ltd., 292 F.3d 361, 368 (3d Cir. 2002); see also Miller Yacht Sales, Inc., v. Smith, 384 F.3d 93, 97 (3d Cir. 2004) ("[W]hen the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a prima facie case of personal jurisdiction."). A plaintiff has the burden to show, "with reasonable particularity," enough contact between the defendant and the forum to support the exercise of personal jurisdiction by the forum state. Mellon Bank v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992) (internal citations omitted); see also Action Mfg. Co. v. Simon Wrecking Co., 375 F. Supp. 2d 411, 418 (E.D. Pa. 2005) ("In order to establish a prima facie case, the plaintiff must present specific facts that would allow the court to exercise jurisdiction over the defendant.") (emphasis in original).

In determining the existence of personal jurisdiction, courts "must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." Pinker, 292 F.3d at 368. Once the plaintiff's "allegations are contradicted by an opposing affidavit . . . [he or she] must present similar evidence in support of personal jurisdiction." In re Chocolate Confectionary Antitrust Litig., 602 F. Supp. 2d 538, 556 (M.D. Pa. 2009). To counter opposing affidavits, "[p]laintiffs may not repose upon their pleadings in this manner. Rather, they must counter defendant['s] affidavits with contrary evidence in support of purposeful availment jurisdiction." Id. at 559. To that end, "[t]he plaintiff must respond to the defendant's motion with 'actual proofs'; 'affidavits which parrot and do no more than restate [the] plaintiff's allegations .

. . do not end the inquiry.'" Lionti v. Dipna, Inc., Civ. No. 17-1678, 2017 U.S. Dist. LEXIS 98956, at *3-4 (E.D. Pa. June 27, 2017) (quoting Time Share Vacation Club v. Atl. Resorts, Ltd., 735 F.2d 61, 66, n.9 (3d Cir. 1984)); see also Lehigh Gas Wholesale, LLC v. LAP Petro., LLC, Civ. No. 14-5536, 2015 U.S. Dist. LEXIS 36569, at *5 (E.D. Pa. Mar. 23, 2015) ("Plaintiff carries the burden to prove personal jurisdiction using 'affidavits or other competent evidence.'") (quoting Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324, 330 (3d Cir. 2009)); In re Chocolate Confectionary, 602 F. Supp. 2d at 556-57 (a plaintiff must present contrary evidence in the form of "actual proofs[.]").

## DISCUSSION

A federal district court may exercise personal jurisdiction over a nonresident defendant to the extent permitted by the forum state's laws. See Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n, 819 F.2d 434, 436 (3d Cir. 1987) (citing Fed. R. Civ. P. 4(e)). The long-arm statute of Pennsylvania permits the exercise of personal jurisdiction "to the fullest extent allowed under the Constitution of the United States." 42 Pa.C.S. § 5322(b). Jurisdiction can thus be asserted over a nonresident defendant when they are shown to have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" See International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (citing Milliken v. Meyer, 311 U.S. 457, 463 (1940)). Courts regard personal jurisdiction as either general or specific. In-forum contacts sufficient to confer general jurisdiction over the defendant are that which are "continuous and systematic," and where general jurisdiction exists, the defendant is subject to suit in the forum state for any claim. Reassure Am. Life Ins. Co. v. Midwest Res., Ltd., 721 F. Supp. 2d 346, 353 (E.D. Pa. 2010) (internal citations omitted).

Specific jurisdiction, on the other hand, exists where a plaintiff's suit is related to or arises from the defendant's specified, limited contacts with the forum state. Id.

The Court thoroughly reviewed the record and relevant briefing. While unpersuaded by Plaintiff's arguments in favor of jurisdiction, for the reasons that follow, this Court will permit limited jurisdictional discovery on the issue of specific jurisdiction. The Court therefore denies Defendant ADSS's Motion without prejudice and with leave to refile following the completion of jurisdictional discovery.

I.  **General Jurisdiction**

It is largely undisputed that Defendant ADSS does not, on its own, have any meaningful ties to Pennsylvania. Instead, Plaintiff employs the alter ego theory of jurisdiction to argue that this Court should impute the in-forum contacts of Defendant ADSEPA to Defendant ADSS and exercise general jurisdiction over Defendant ADSS based thereupon. (ECF No. 20, pp. 11-15.) The contacts of an in-forum corporation can be imputed to a foreign corporation in cases where the two "perform[] as though they were one entity. . . suggesting a lack of separation and independence...." CALA Diamonds, LLC v. HRA Group Holdings, No. 17-CV-1136, 2017 U.S. Dist. LEXIS 154987, at *24 (E.D. Pa. Sept. 22, 2017). A finding of alter ego jurisdiction is proper where, as alleged here, corporate entities "hold themselves out to the public as a single entity that is conveniently departmentalized either nationally or world-wide." Zenith Radio Corp. v. Matsushita Elec. Indus. Co., Ltd., 402 F. Supp. 262, 328 (E.D. Pa. 1975) (citations omitted). Though conflated throughout Plaintiff's Motion filings, Plaintiff's arguments in support of alter ego jurisdiction appear to be two-fold. In the first instance, Plaintiff argues that at the time of the IWS acquisition, Defendant ADSS was the corporate parent of Defendant ADSEPA and exercised sufficient control over Defendant ADSEPA so as to have been considered the alter ego thereof. (ECF No.20, p. 13.) And in the second instance, Plaintiff argues that there is, presently,

such enmeshment between the different Advanced Disposal corporations so as to justify (1) regarding the entire corporate family as one, amalgamated unit, and (2) imputing the contacts of one Advanced Disposal entity to another. (ECF No. 20, p. 13.) The Court finds neither argument persuasive.

> A.  The Past Relationship between Defendants ADSS and ADSEPA does not Support a Finding of Alter Ego Jurisdiction.

In her Response in opposition to Defendant ADSS's Motion to Dismiss, Plaintiff expressly acknowledges that Defendant ADSI presently heads the Advanced Disposal corporate family. (ECF No. 20, p. 13.) Plaintiff argues, however, that Defendant ADSS stood "at the helm" of Advanced Disposal's operations at the time Defendants acquired IWS and its consumer contracts. (ECF No. 20, p. 13.) Plaintiff maintains that, at the time of the acquisition, Defendant ADSS operated as corporate parent to Defendant ADSEPA and "presented the Pennsylvania offices of Advanced Disposal merely as local branches of the company, not as separate entities." (ECF No. 20, p. 14.) In support of her argument, Plaintiff submits numerous press releases published on the shared "Advanced Disposal" website following the IWS acquisition in September 2012.

The Court summarily rejects the first of Plaintiff's arguments in support of alter ego jurisdiction. The Court finds no basis in law to support hinging present-day exercise of alter ego jurisdiction on the *past* relationship between two corporate entities. Plaintiff fails to identify a single case wherein the exercise of alter ego jurisdiction was premised on anything other than an existing relationship between an in-forum defendant and a foreign defendant, and, indeed, fails to point to a single case that even conceives of this application of the alter ego theory. By Plaintiff's own admission, Defendant ADSS is no longer the controlling parent of the "Advanced Disposal" network of businesses, and Plaintiff's proofs reference only "Advanced Disposal Services, Inc."

by name[1] – an identity Defendant ADSS abandoned over five years ago. Even if the submitted press releases were sufficient to show corporate enmeshment between Defendant ADSS and Defendant ADSEPA in the past – and the Court does not so find – the alleged controlling, parent-subsidiary relationship between the two would have ceased nearly four years before Plaintiff brought this action. Absent precedent that would so allow, this Court is unwilling to exercise jurisdiction over a foreign defendant based solely on said defendant's historical interactions with an entity over which it holds no present power.

B. Plaintiff Fails to Establish the Propriety of Imputing Contacts of Corporate Siblings Based Solely on Relationship with Common Parent.

Plaintiff next argues that Defendant ADSEPA's Pennsylvania contacts should be imputed to Defendant ADSS because, presently, "the Advanced Disposal group of companies operate[s] as 'one functioning entity.'" (ECF No. 20, p. 13.) In support of this conclusion, Plaintiff cites Defendants' shared legal counsel, the fluidity with which Defendants share corporate names and responsibilities, and the interconnectedness of Defendants' business operations. (ECF No. 20, p. 15.) In Plaintiff's assessment, because Defendant ADSI has disregarded the corporate boundaries between itself and its numerous subsidiaries, all Advanced Disposal entities should be regarded as mere alter egos of Defendant ADSI and of one another. (ECF No. 20, p. 15.)

But, again, the law does not support the logical maneuvering Plaintiff advocates. The Court recognizes that the application of the alter ego theory is not necessarily limited to parent-subsidiary relationships alone. See, Copia Commc'ns, LLC v. AMResorts, L.P., No. 16-5575, 2017 U.S. Dist. LEXIS 146294, at *15 (E.D. Pa. Sept. 8, 2017) (noting that while the alter ego

---

[1] According to Plaintiff's submissions, at some point in early 2013, the Advanced Disposal press releases stop identifying "Advanced Disposal Services, Inc." as the corporate entity at the head of the Advanced Disposal corporate family, and instead only references "Advanced Disposal" generally. *Compare* ECF No. 20, Ex. J, *and* ECF No. 20, Ex. R. It is unclear whether any specific corporation was the intended referent when "Advanced Disposal" was generally employed.

theory "most readily applied in the context of parent/subsidiary relationships between entities," "the [c]ourt's research reveals that in some instances, the alter ego theory may apply in the context of other sorts of corporate arrangements, so long as their operations and management are sufficiently interconnected."). But Plaintiff fails to cite any authority – binding or persuasive – which supports the lateral imputation of contacts from one corporate subsidiary to another, solely on the basis of the siblings' relationships with their shared parent. Plaintiff asks this Court to exercise jurisdiction over Defendant ADSS not because Defendant ADSS presently controls Defendant ADSEPA, and not because Defendant ADSEPA controls Defendant ADSS, but instead because a third party allegedly controls them both. By Plaintiff's logic, each of the numerous regional entities existing under the integrated Advanced Disposal umbrella would be subject to jurisdiction here – and everywhere else Advanced Disposal operates – based solely on the alleged managerial practices of Defendant ADSI. Said conclusion is one the Court cannot support without express precedent so permitting. The Court therefore finds Plaintiff fails to present a convincing argument in support of general jurisdiction.

II. **Specific Jurisdiction**

As the record stands, Plaintiff presents insufficient facts to support the exercise of specific jurisdiction over Defendant ADSS. Specific jurisdiction exists only where the plaintiff's claims arise from the defendant's in-state contacts, and "the relationship among the defendant, cause of action, and the forum falls within the minimum contacts' framework." Grainer v. Smallboard, Inc., No. 16-4866, 2017 U.S. Dist. LEXIS 25934, at *3 (E.D. Pa. Feb. 23, 2017) (quoting Mellon Bank PSFS, Nat'l Ass'n v. Farino, 960 F.2d 1217, 1221 (3d Cir. 1992)). "There can be no specific jurisdiction absent 'some act by which [the defendant] purposely avail[ed] [itself] of the privilege of conducting business within [Pennsylvania],' Mellon Bank, 960 F.2d at 1221, and a clear nexus between said purposeful availment and the plaintiff's claims. D'Jamoos

v. Pilatus Aircraft Ltd., 566 F.3d 94, 102 (3d Cir. 2009)." Katz v. DNC Servs. Corp., Civ. No. 16-5800, 2017 U.S. Dist. LEXIS 195736, at *22 (E.D. Pa., Nov. 29, 2017).

Plaintiff fails to establish any act by Defendant ADSS that would constitute purposeful availment sufficient to confer specific jurisdiction. Plaintiff alleges that, for an indefinite period of time, Defendant ADSS directed the imposition of the allegedly unlawful "Cost Recovery Fees" at issue in this case. (ECF No. 20, p. 8.) The lone evidence presented to support this contention is a 2011 email sent from the Chairman and CEO of "Advanced Disposal Services, Inc." -- now Defendant ADSS. The email was directed to another Advanced Disposal executive and reads, in pertinent part: "After reading the front page article in the March edition of Trash Talk, should we seriously consider changing the name of our 'Environmental Fee' to something like 'Regulatory or Governmental Compliance Fee' (not kidding either)." (ECF No. 20-2, Ex. C.) The proffered email is insufficient to demonstrate Defendant ADSS directed tortious conduct at Pennsylvania residents. The communication was sent nearly eighteen months before the IWS acquisition and before there existed any Advanced Disposal operations in Pennsylvania, and relates only to the characterization of an existing fee, not the imposition thereof.

Without a showing of purposeful availment, the Court's inquiry ends here. See D'Jamoos, 566 F.3d at 102 ("In determining whether there is specific jurisdiction, we undertake a three-part inquiry. First, the defendant must have 'purposely directed its activities at the forum.'...Second, the litigation must 'arise out of or relate to' at least one of those activities.") (internal citations omitted). The record currently before the Court is simply insufficient to establish a basis for specific jurisdiction.

III. **Jurisdictional Discovery**

Plaintiff asks this Court for leave to conduct limited jurisdictional discovery if the Court finds the present record insufficient to support the exercise of jurisdiction. (ECF No. 20, p. 16.)

"A plaintiff's right to conduct jurisdictional discovery should be sustained 'if a plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts between the party and the forum state.'" Bell v. Fairmont Raffles Hotel Int'l, No. 12-757, 2013 U.S. Dist. LEXIS 166937, at *20 (W.D. Pa. November 25, 2013) (citing Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 456 (3d Cir. 2003)). "However, a trial court 'has discretion to refuse to grant jurisdiction[al] discovery' and 'may deny jurisdictional discovery where a plaintiff has failed to meet its burden of making out a threshold prima facie case of personal jurisdiction.'" Id. (internal citations omitted).

The Court finds that no amount of jurisdictional discovery will render Plaintiff's arguments in support of general jurisdiction legally tenable, but finds that jurisdictional discovery may be fruitful on the issue of specific jurisdiction. Advanced Disposal is a large corporate conglomerate that has a complex history of corporate mergers and structural changes. Without the benefit of some discovery, the Court cannot reasonably expect Plaintiff to demonstrate which Advanced Disposal entity – if any – controlled the billing decisions of the Pennsylvania affiliates during the time material to this action. The parties are therefore directed to engage in jurisdictional discovery for the limited purpose of establishing Defendant ADSS's role in the imposition of the alleged Cost Recovery Fees on Advanced Disposal's Pennsylvania clientele.

## **CONCLUSION**

Based on the reasons set forth above, this Court denies Defendant ADSS's Motion to Dismiss without prejudice, and permits limited jurisdictional discovery on the issue of specific jurisdiction.

A corresponding Order follows.

BY THE COURT:

_____
C. Darnell Jones, II J.