# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANNE FLACCUS, : | |
|     *Plaintiff*, : | |
| : | |
| v. : | CIVIL ACTION |
| : | NO.: 17-4808 |
| ADVANCED DISPOSAL SERVICES, : | |
| INC., et al., : | |
|     *Defendants*. : | |

JONES, II  J.  December 23, 2019
**<u>MEMORANDUM</u>**

    Plaintiff Anne Flaccus ("Plaintiff") commenced this action on behalf of herself and a putative class of Pennsylvania residents receiving waste disposal services from Defendants Advanced Disposal Services, Inc. ("ADSI"), Advanced Disposal Services South, LLC ("ADS South"), and Advanced Disposal Services Eastern PA ("ADSEPA").  She claims Defendants charged her and the putative class excessive fees in violation of their service agreements and Pennsylvania consumer protection laws.

    Pending before the Court are Defendant ADSI's and Defendant ADS South's independent Motions for Summary Judgment for lack of personal jurisdiction (collectively, the "Moving Defendants") (ECF Nos. 33, 34) and Plaintiff's responses thereto (ECF Nos. 36-38).  The Moving Defendants each previously moved to dismiss this action on the same grounds (*see* ECF Nos. 15, 17).  Plaintiff opposed those motions as well (*see* ECF Nos. 20, 21), and this Court granted them without prejudice while granting Plaintiff's request for jurisdictional discovery.  (ECF Nos. 27, 30-31).  The Court permitted Plaintiff to conduct limited jurisdictional discovery as to Defendant ADSI on two issues: (1) what, if any, relationship Defendant ADSI has or had with an entity registered under the same name with the Commonwealth of Pennsylvania's Department of State,

and (2) what, if any, relationship Defendant ADSI has or had with employees of the entity referred to as "Advanced Disposal." The Court also permitted Plaintiff to conduct limited jurisdictional discovery as to ADS South on the issue of specific jurisdiction. Now, discovery having been completed and the matter fully briefed, the issue of whether this Court may exercise personal jurisdiction over Defendants ADSI and ADS South is ripe for adjudication. For the reasons that follow, the Court will grant Defendant ADSI's Motion for Summary Judgment with prejudice and deny Defendant ADS South's Motion for Summary Judgment.

## I.  UNDISPUTED MATERIAL FACTS

Given the posture of the case, the facts presented below include the undisputed material facts agreed upon by the Parties, as well as the uncontested facts of record taken in a light most favorable to Plaintiff as the non-moving party.

### A. Defendant ADS South's Organizational Structure

Defendant ADS South is a Delaware limited liability company with a principal place of business in Florida. ADS South Mot. Summ. J. ("ADS South MSJ"), Statement of Uncontested Material Facts ¶ 6 (ECF No. 34-2) [hereinafter ADS South MSJ SUF]; Pl. Resp. Opp. ADS South MSJ ("Pl. Opp. ADS South MSJ"), Statement of Undisputed and/or Disputed Material Facts ¶ 6 (ECF No. 36-2) [hereinafter Pl. Opp. ADS South MSJ SUF]. It originally formed under Delaware law as Advanced Disposal Services, LLC on January 16, 2001. ADS South MSJ SUF ¶ 1; Pl. Opp. ADS South MSJ SUF ¶ 1; ADSI Mot. Summ. J. ("ADSI MSJ"), Decl. Joel Frank, Ex. C at ADS000401 (ECF No. 33-4) [hereinafter Decl. Frank]. Effective April 15, 2002, Advanced Disposal Services, LLC changed its name and incorporated under Delaware law as Advanced Disposal Services, Inc. ("Old ADSI"). Decl. Frank, Ex. C at ADS000404-06. There is no certificate of conversion from Advanced Disposal Services, LLC to Advanced Disposal Services, Inc. in the record. Effective November 30, 2012, Advanced Disposal Services, Inc. changed its

name again and reincorporated under Delaware law as Advanced Disposal Services Southeast, Inc. Pl. Resp. Opp. ADS South Mot. Dismiss ("Pl. Opp. ADS South MTD"), Ex. A (ECF No. 20-2). On December 6, 2012, Advanced Disposal Services Southeast, Inc. changed its name to Advanced Disposal Services South, Inc. Pl. Opp. ADS South MTD, Ex. B. Defendant ADS South effectively took on its present name and corporate status as a Delaware limited liability company on January 9, 2015, after filing a Certificate of Conversion. Decl. Frank, Ex. E.

**B. Defendant ADSI's Organizational Structure**

Defendant ADSI is a Delaware corporation with a principal place of business in Florida. ADSI Mot. Summ. J. ("ADSI MSJ"), Statement of Uncontested Material Facts ¶ 8 (ECF No. 33-2) [hereinafter ADSI MSJ SUF]; Pl. Resp. Opp. ADSI MSJ ("Pl. Opp. ADSI MSJ"), Statement of Undisputed and/or Disputed Material Facts ¶ 8 (ECF No. 37-1) [hereinafter Pl. Opp. ADSI MSJ SUF]. Defendant ADSI originally incorporated under Delaware law on January 20, 2012, under the name ADS Waste Holdings, Inc. ADSI MSJ SUF ¶ 1; Pl. Opp. ADSI MSJ SUF ¶ 1; Decl. Frank, Ex. A at ADS000875. Years later, on January 27, 2016, ADS Waste Holdings, Inc. changed its name and incorporated under the name Advanced Disposal Services, Inc. ADSI MSJ SUF ¶ 2; Pl. Opp. ADSI MSJ SUF ¶ 2. On October 12, 2016, Advanced Disposal Service, Inc. effectively merged with "Advanced Disposal Waste Holdings Corp., a Delaware Corporation ('Parent')." ADSI MSJ SUF ¶ 3; Pl. Opp. ADSI MSJ SUF ¶ 3; Decl. Frank, Ex. B (emphasis in original). "The name of the surviving corporation of the Merger . . . [was] Advanced Disposal Services, Inc." Decl. Frank, Ex. B.

The Court finds the following chart provided by Plaintiff accurately sets forth the historical corporate structure of Defendant ADSI and Defendant ADS South:

| Defendant's Current Entity Name | Timeline of Mergers and Names Used by Entity | |
|---|---|---|
| Advanced Disposal Services South, LLC ("ADS South") | 1/16/2001 to 4/14/2002 | Advanced Disposal Services, LLC |
| | 4/15/2002 to 11/29/2012 | Advanced Disposal Services, Inc. ("old Advanced Disposal Services, Inc.") |
| | 11/30/2012 to 12/5/2012 | Advanced Disposal Services Southeast, Inc. |
| | 12/6/2012 to 1/8/2015 | Advanced Disposal Services South, Inc. |
| | 1/9/2015 to Present | Advanced Disposal Services South, LLC |
| Advanced Disposal Services, Inc. ("ADSI"; "new Advanced Disposal Services, Inc.") | 7/20/2012 to 1/26/2016 | ADS Waste Holdings, Inc. |
| | 1/27/2016 to Present | Advanced Disposal Services, Inc. |
| | 10/12/2016 | Advanced Disposal Waste Holdings Corp. Merges into Advanced Disposal Services, Inc. |

Pl. Opp. ADS South MSJ 4 (ECF No. 36).

### C. Defendant ADS South and Defendant ADSI's Roles as Parent Company of the Advanced Disposal Enterprise

Defendant ADSI is the current consolidated parent company of the Advanced Disposal enterprise, which is comprised of 152 wholly-owned subsidiaries. Pl. Opp. ADSI MSJ SUF, Ex. F at 63, 100 (ECF No. 37-9) [hereinafter ADSI Form 10-K]; Pl. Opp. ADSI MSJ, Ex. D at 25:23-26:7 (ECF No. 37-7) (Deposition of Steve Del Corso) [hereinafter Del Corso Dep.]. It formally took on this role from Old ADSI in November 2012. Del Corso Dep. 64:6-23. Steve Del Corso,

the corporate designee for Defendants ADS South and ADSI, testified that there were no significant changes made to the parent company role when Defendant ADSI assumed the position. Del Corso Dep. 34:13-35:23.

As parent, Defendant ADSI fulfills several functions. It purchases certain items at a discounted, bulk rate and distributes them to its subsidiaries. Del Corso Dep. 30:2-31:3. It also enters into master agreements with various vendors from which all Advanced Disposal entities benefit, though each subsidiary procures its own supplies. Del Corso Dep. 31:13-20. Defendant ADSI maintains a website that provides the collection operations for each state in which an entity within the Advanced Disposal enterprise is located as well as contact information for each local office within the state. Pl. Opp. ADSI MSJ SUF 10 ¶ 9 (Plaintiff's Statement of Additional Facts). Pennsylvania is one of those states. Pl. Opp. ADSI MSJ SUF 10 ¶ 9. The email addresses for local points of contact within Pennsylvania, and presumably its other locations, end with the "advanceddisposal.com" domain name. Pl. Opp. ADSI MSJ SUF 10 ¶ 10.

Defendant ADSI gives its subsidiaries guidance and issues policies regarding marketing, sales, and general operations. Del Corso Dep. 24:18-25:8. Relatedly, it also sets the standard rates for fuel charges, environmental fees, and administrative fees assessed to customers of an entity within the Advanced Disposal enterprise. Del Corso Dep. 37:2-38:6. Defendant ADSI has issued employee handbooks that are generally followed by its subsidiary's employees, subject to collective bargaining agreements and any exceptions set forth by a particular subsidiary. Pl. Opp. ADSI MSJ, Ex. Q at 13:4-14:2 (ECF No. 37-20) (Deposition of Glenn Guest) [hereinafter Guest Dep.]. Defendant ADSI also implemented a corporate training scheme to improve customer service throughout the enterprise that each subsidiary location implemented in its own manner.

Del Corso Dep. 86:11-87:21. There are no mechanisms in place to force a subsidiary to follow the corporate guidance or policy set by Defendant ADSI. *See generally* Del Corso Dep.

Defendant ADSI also manages certain financial and legal aspects of the entire Advanced Disposal enterprise. As an example, since 2015 Defendant ADSI has fulfilled the role of "common paymaster" by paying all of the individuals employed by any entity within the Advanced Disposal enterprise. Additionally, Defendant ADSI has a legal department that ensures that it and all of its 152 subsidiaries remain compliant with all corporate governance and filings. Del Corso Dep. 25:16-26:22.

### D. Defendant ADSEPA's Jurisdictional Contacts with Pennsylvania

A subsidiary of Defendant ADSI, Defendant ADSEPA directly services the Advanced Disposal enterprise's Pennsylvania customers. ADSI MSJ SUF ¶ 21; Pl. Opp. ADSI MSJ SUF ¶¶ 19-21. Defendant ADSEPA has consented to this Court's jurisdiction.[1] It is a wholly-owned subsidiary of Advanced Disposal Services, Inc. f/k/a ADS Waste Holdings, which is wholly owned by Advanced Disposal Services South, LLC. ADSI Form 10-K 96-103.[2] For purposes of the instant Motion only, it is undisputed that Defendant ADSI has not registered to do business in Pennsylvania. ADSI MSJ SUF ¶ 12; Pl. Opp. ADSI MSJ SUF ¶ 12.

Defendant ADSEPA is the successor-in-interest to Interstate Waste Services of Pennsylvania, LLC ("IWS-PA"). ADS South MSJ SUF ¶ 8; Pl. Opp. ADS South MSJ SUF ¶ 8. On September 1, 2012, Old ADSI announced its assumption of managerial and financial control over IWS-PA. ADS South MSJ SUF ¶ 8; Pl. Opp. ADS South MSJ SUF ¶ 8. Shortly after the acquisition, Glenn Guest, Director of Employee Benefits for Defendant ADSI, received a

---

[1] Whether that consent is based on general and/or specific jurisdiction is not in the record.
[2] Defendant ADSEPA also wholly owns Advanced Disposal Western, PA Inc., in addition to certain landfills and transfer stations in the Advanced Disposal enterprise located within Pennsylvania. *See* ADSI Form 10-K 96-103; *see also* Pl. Opp. ADSI MSJ SUF, Ex. M.

notification from the Commonwealth of Pennsylvania stating that Advanced Disposal Services, Inc. needed to set up tax identification numbers for former IWS employees who were given severance packages. ADSI MSJ, Decl. Glenn Guest ¶ 4 (ECF No. 33-5) [hereinafter Guest Decl.]. Based on that notification, Mr. Guest registered Old ADSI, and the entity began making tax payments. Guest Decl. ¶ 4; Guest Dep. 8:25-9:23. Thereafter, a series of name changes and mergers took place, culminating with Defendant ADSEPA taking on its present name and corporate status. ADSI Mot. Dismiss ("ADSI MTD") No. 2, Ex. 1 ¶ 12 (ECF No. 25-2) (Declaration of Jennifer Taylor) [hereinafter Taylor Decl.].

### E. Plaintiff's Contacts with the Advanced Disposal Enterprise

Until October 2012, Plaintiff received her trash collection services from IWS-PA. Pl. Opp. ADSI MSJ., Ex. I at FLACCUS00003-4 (ECF No. 37-12) [hereinafter Flaccus Invoice]. Her invoices came from an Interstate Waste Services entity with an address in Detroit, Michigan and a phone number of (610) 584-5450. Flaccus Invoice FLACCUS00003. In September 2012, she received a notice that "Interstate Waste is now Advanced Disposal." Flaccus Invoice FLACCUS00004. Her subsequent invoices came from an Advanced Disposal entity located in PA with the same phone number. These invoices asked that she "follow [them] on facebook: www.facebook.com/advanceddisposal/" and included a logo that read: "Advanced Disposal." *See, e.g.*, Flaccus Invoice.

Beginning in November 2012, Plaintiff's invoices started to include an "environmental fee." Flaccus Invoice FLACCUSS00005. The amount of the fee remained constant from November 2012 through February 2013. Flaccus Invoice FLACCUSS00005-6, 13-14. In March 2013, the fee increased, and the invoice stated, "[e]ffective April 1, 2013 we are standardizing environmental and fuel fees that may impact your future charges. For more information on your fees, visit our website at www.advanceddisposal.com." Flaccus Invoice FLACCUS00015. Also

beginning in March 2013, Plaintiff's invoices started to come from an address in Detroit Michigan, though the logo of "Advanced Disposal" and customer contact number remained the same. In July 2013, the environmental fee increased again. Flaccus Invoice FLACCUS00019. In August 2013, Plaintiff's invoices started to come from a location in Pennsylvania again and the phone number changed to (610) 440-3700. Flaccus Invoice FLACCUS00020.

## II. DISPUTED MATERIAL FACTS

The Parties dispute whether either Defendant ADS South or Defendant ADSI's conduct while the parent company of the Advanced Disposal enterprise created contacts with Pennsylvania that permit this Court to exercise personal jurisdiction over either entity. Part of this dispute concerns the nature of the employment relationship between employees of the Advanced Disposal enterprise and Defendant ADS South and Defendant ADSI—when they each operated as parent company. Both Mr. Del Corso and Mr. Guest identified Defendant ADSI as the employer of all individuals working for the Advanced Disposal enterprise outside of Kentucky. Del Corso Dep. 7:19-12; Guest Dep. 10:4-11. However, Mr. Del Corso also testified that he referred to Defendant ADSI in this manner because since 2015 it has been the common paymaster for all individuals working within the enterprise. Del Corso Dep. 18:14-19:13.

## III. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), a court shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine [dispute] as to any material fact and that the moving party is entitled to summary judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a). Therefore, in order to defeat a motion for summary judgment, factual disputes must be both (1) material, meaning they concern facts that will affect the outcome

of the issue under substantive law, and (2) genuine, meaning the evidence must be such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "If the moving party meets its burden, the burden shifts to the nonmoving party to go beyond the pleadings and come forward with specific facts showing that there is a genuine issue for trial." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (internal citations and quotation marks omitted).

Jurisdictional issues are generally resolved through a motion to dismiss pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. *Marten v. Godwin,* 499 F.3d 290, 295 n.2 (3d Cir. 2007); Fed. R. Civ. P. 12(b)(2). Nonetheless, a court may properly consider them at the summary judgment stage provided it does not address the merits of the action. *Marten*, 499 F.3d at 295 n.2. Regardless of the posture, after a jurisdictional challenge has been raised, the plaintiff bears the burden of proving it exists. *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 146 (3d Cir. 1992). However, where no evidentiary hearing was held, as here, a plaintiff must only establish a *prima facie* case of personal jurisdiction. *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007).

**IV. DISCUSSION**

Whether this Court may exercise personal jurisdiction is a question of law which, depending on the context of the case, may rest on factual findings. *Pennzoil Prods. Co. v. Colelli & Assocs., Inc.*, 149 F.3d 197, 200 (3d Cir. 1998). Such is the case here.

Federal Rule of Civil Procedure 4(e)(1) permits a court with subject matter jurisdiction to exercise personal jurisdiction over a non-resident corporate defendant in accordance with the law of the state where the district court sits. *Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 155 (3d Cir. 2010). Pennsylvania's long-arm statute is coextensive with the Due

Process Clause of the Fourteenth Amendment and permits the exercise of personal jurisdiction over a non-resident to the extent allowed by the United States Constitution. 42 Pa. Cons. Stat. § 5322(b); *O'Connor*, 496 F.3d at 316. Where personal jurisdiction has been challenged, the inquiry is whether "the relationship among the defendant, the forum, and the litigation" fairly permits a court to subject a defendant to its binding judgment in accordance with the requirements of the Due Process Clause. *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)).

The paradigmatic means by which courts determine if they may constitutionally exercise personal jurisdiction over a defendant is through general or specific jurisdiction. Courts conducting this analysis first consider whether the defendant's contacts with the forum state support general personal jurisdiction. *Pennzoil Prods. Co.*, 149 F.3d at 200. General jurisdiction over a non-resident corporate defendant exists where its "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum state. *Daimler*, 571 U.S. at 139 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)).

In the absence of general jurisdiction, a court may exercise specific jurisdiction where a three-part test is met: (1) "the defendant must have 'purposefully directed [its] activities' at the forum"; (2) "the litigation must 'arise out of or relate to' at least one of those activities"; and (3) "if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise 'comport[s] with fair play and substantial justice.'" *O'Connor*, 496 F.3d at 317 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 476 (1985)) (internal citations omitted).

**A. This Court May Not Exercise Personal Jurisdiction Over Defendant ADSI**

As to Defendant ADSI, the Court permitted Plaintiff jurisdictional discovery to ascertain what, if any, relationship it had or has with the entity registered under the same name with the Commonwealth of Pennsylvania's Department of State. Defendant ADSI claimed in its prior motion to dismiss that it is not the same entity (*see* ECF No. 25, pp. 5-6), and the record supports that claim. Defendant ADSI did not begin operating under that name until January 27, 2016─three years after the certificate of registration was filed. Additionally, Defendant ADSI and Plaintiff do not dispute now that Defendant ADSI is not the entity that registered to do business in Pennsylvania.

In granting Defendant ADSI's motions to dismiss, this Court held that Plaintiff failed to make that showing. Defendant ADSI is not incorporated in Pennsylvania and it does not have its principal place of business in Pennsylvania. Those avenues foreclosed, Plaintiff put forth a theory of corporate enmeshment as between Defendant ADSI and Defendant ADSEPA based on the "common use of a central website, shared advertisement, common use of corporate trademark and logo, centralized client-billing, centralized recruitment, and shared legal counsel." Court's 6/28/2018 Order n.2 (ECF No. 27) [hereinafter 6/28/2018 Order]. However, the Court declined imputing Defendant ADSEPA's jurisdictional contacts to Defendant ADSI based on Plaintiff's allegations. 6/28/2018 Order n.2. The Court explained that to establish alter ego jurisdiction, Plaintiff would need to provide it with additional facts regarding Defendant ADSI's role in Defendant ADSEPA's ***day-to-day operations*** based on the factors set forth in *Simeone ex rel. Estate of Albert Francis Simeone, Jr. v. Bombardier–Rotax GmbH,* 360 F. Supp. 2d 665, 672 (E.D. Pa. 2005); *accord In re Latex Gloves Prods. Liab. Litig.*, No. MDL 1148, 2001 WL 964105, at *3 (E.D. Pa. Aug. 22, 2001). Now, Plaintiff has again attempted to establish this Court's general

jurisdiction over Defendant ADSI by claiming alter ego jurisdiction. However, she has failed to do so again.

The record now includes additional evidence about Defendant ADSI's management of the Advanced Disposal enterprise. Such evidence includes, in part, the "master agreements" entered into by Defendant ADSI for the benefit of its subsidiaries, promulgation of employee handbooks, creation of corporate training initiatives, and issuance of corporate-wide policy on the assessment of service fees. Additionally, due to its role as common paymaster, Defendant ADSI is referred to as the employer of all individuals in the Advanced Disposal enterprise. And to this point, the record now evidences the truly convoluted and complex ownership structure of the Advanced Disposal enterprise. Defendant ADSEPA is wholly-owned by Defendant ADSI—the parent company of the Advanced Disposal enterprise. But Defendant ADSI is then wholly-owned by Defendant ADS South, the former parent company. Moreover, Defendant ADSEPA wholly owns non-party Advanced Disposal Western PA, Inc. and other corporate entities located within Pennsylvania. The degree of corporate unity and the interconnectedness of the entities within the enterprise is highly suspect. However, the semblance of enmeshment is not the test.

To establish alter ego jurisdiction at this posture, Plaintiff had to make a *prima facie* case that Defendant ADSI had actual control over the daily activities of Defendant ADSEPA. *See, e.g.*, *In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538 (W.D. Pa. 2009) (holding under the more lenient 12(b)(2) standard that plaintiff failed to establish alter ego jurisdiction where the corporate parents owned all the stock of its subsidiaries, there was a unified corporate image, and the corporate parents implemented multinational policy strategies). Such daily, actual control for the purpose of establishing alter ego jurisdiction could have been established in a variety of ways, including with evidence of Defendant ADSI's: (1) control of ADSEPA's

management, (2) ability to fire ADSEPA's management; (3) control of ADSEPA's budget; and (4) regular evaluation of ADSEPA's operations against performance benchmarks. *In re Chocolate*, 602 F. Supp. 2d at 571 (citing *Simeone*, 360 F. Supp. 2d at 676-77). The evidence of record does not address any of these factors. Thus, viewing the evidence in a light most favorable to Plaintiff, the record reflects a general degree of control by Defendant ADSI and interrelatedness among entities in the Advanced Disposal enterprise. But the evidence does not, and indeed could not, state a *prima facie* case of alter ego jurisdiction where Plaintiff has not provided evidence that Defendant ADSEPA had to comply with the policy, guidance, and training set by Defendant ADSI, or that both entities used common management and personnel, or that Defendant ADSI set and monitored Defendant ADSEPA's budget and performance benchmarks.

Finally, to the extent Plaintiff is trying to establish alter ego jurisdiction through a joint employer/single employer theory, she has also failed to make a *prima facie* case of such a relationship. Whether an employment relationship exists is a question of law. Thus, testimony by Mr. Guest and Mr. Del Corso about who is the "employer" of all individuals within the Advanced Disposal enterprise outside of Kentucky is of no moment. To state a *prima facie* case of such a relationship for jurisdictional purposes, Plaintiff needed to establish the same day-to-day control by Defendant ADSI over Defendant ADSEPA─as is needed to establish an alter ego relationship. *In re Enter. Rent-A-Car Wage & Hour Emp't Practices Litig.*, 735 F. Supp. 2d 277, 317-18 (W.D. Pa. 2010) (citing *In re Chocolate*, 602 F. Supp. 2d at 569-70). For the reasons previously mentioned, Plaintiff has not. Thus, though there is a dispute on this point, it is not genuine because Plaintiff has failed to make a *prima facie* case.

Consequently, as Plaintiff has failed to provide evidence of day-to-day control, the only other means by which Plaintiff could establish personal jurisdiction over Defendant ADSI is

through specific jurisdiction. However, she has failed to do this as well. The crux of Plaintiff's claim is that Defendant ADSI purposefully availed itself of this forum by setting and charging her and the putative class certain fees that violated their service agreements. Although the record reflects that Defendant ADSI set corporate policy regarding the rate of fees assessed to Plaintiff and the putative class, this point, in and of itself, will not establish jurisdiction. As previously mentioned, Plaintiff has not presented any evidence that Defendant ADSEPA had to implement the fees at issue or that Defendant ADSI benefited from the proceeds of these fees in any more than a general sense. Moreover, Defendant ADSI is a Florida based corporation and none of the invoices sent to Plaintiff originated in Florida or required the remittance of payment to a Florida address. Thus, without more, the establishment of a fee structure by a national, interrelated corporation cannot be deemed "purposeful availment" of this specific forum.

Accordingly, the Court may not exercise personal jurisdiction over Defendant ADSI and its Motion for Summary Judgment will be granted with prejudice. In making this holding, the Court does not address the merits of Plaintiff's claim as to Defendant ADSI, but merely her ability to seek relief against it in this Court.

**B. Defendant ADS South**

The Court granted Plaintiff jurisdictional discovery as to Defendant ADS South to ascertain any basis there may be for the Court to exercise specific jurisdiction over Defendant ADS South. However, the Court will not address that issue because the merits of Defendant ADS South's Motion for Summary Judgment may be addressed on general jurisdiction grounds, which is a court's first inquiry under a personal jurisdiction analysis.

Defendant ADS South's predecessor-in-interest, Old ADSI, registered to do business in this state. That is a crucial point within this Circuit, where doing so equals acquiescence to the

general jurisdiction of this state's courts. *See Bane v. Netlink, Inc.*, 924 F.2d 637, 641 (3d Cir. 1991) (concluding that an out-of-state corporation that registered to do business in Pennsylvania consented to personal jurisdiction there). The key question then is whether Old ADSI's jurisdictional contacts passed to its ultimate successor-in-interest, ADS South.[3] On this point, there is a dearth of case law, but the Court finds the analysis in *Simmers v. American Cyanamid Corp.* persuasive. 576 A.2d 376 (Pa. Super. Ct. 1990). In attributing the jurisdictional contacts of a predecessor corporation to its successor-in-interest, the Pennsylvania Superior Court in *Simmers* reasoned that plaintiffs must be able to establish personal jurisdiction over a:

> successor corporation based upon its predecessor's contacts with the forum. Otherwise, a corporation which voluntarily or by the operation of law assumes its predecessor's liabilities may be able to avoid the jurisdiction of the very forum where the liability accrued simply because it never did business in that forum.

*Id.* at 390. The Second Circuit Court of Appeals recently applied this approach in *U.S. Bank Nat'l Assoc. v. Bank of America, N.A.* to exercise specific jurisdiction over a successor-by-merger. 916 F.3d 143, 155-56 (2d Cir. 2019). In doing so, it noted in *dicta* that "the theory of general jurisdiction would allow the suit against the successor by merger only in those jurisdictions where the defendant corporation at the time of filing is 'essentially at home.'" *Id.* at 156 (quoting *Daimler*, 571 U.S. at 122).

---

[3] Assuming, *arguendo*, that jurisdictional contacts pass to a successor-in-interest, the Court agrees with the reasoning in *Williams v. Takeda Pharms. Am. Inc.*, No. 18-CV-4774, 2019 WL 2615947, at *3 (E.D. Pa. June 26, 2019) ("Although Defendants argue that *Daimler* and *Bristol-Myers Squibb* narrowed the scope of general jurisdiction by establishing the "at home" requirement, neither case addressed consent. . . . Without any further analysis from the Supreme Court or the Third Circuit, a foreign corporation's registration to do business in Pennsylvania establishes consent to personal jurisdiction."). *See, e.g.*, *Williams*, 2019 WL 2615947, at *3 n.4 (citing *Youse & Youse v. Johnson & Johnson*, No. 18-CV-3578, 2019 WL 233884 (E.D. Pa. Jan. 16, 2019); *Aetna Inc. v. Mednax, Inc.*, No. 18-CV-2217, 2018 WL 5264310 (E.D. Pa. Oct. 23, 2018); *Allstate Ins. Co. v. Electrolux Home Prods.*, No. 5:18-CV-00699, 2018 WL 3707377 (E.D. Pa. Aug. 3, 2018); *Hegna v. Smitty's Supply Inc.*, No. 16-CV-3613, 2017 WL 2563231 (E.D. Pa. June 13, 2017) (all finding that after *Daimler*, consent remains a valid form of establishing general personal jurisdiction under 42 Pa. Cons. Stat. Ann. § 5301).

This Court agrees with the reasoning of both courts. As Old ADSI consented to this Court's general jurisdiction, and current precedent in this Circuit deems such acquiescence as being "essentially at home" in this state, the Court holds Defendant ADS South is subject to this Court's general jurisdiction. Accordingly, Defendant ADS South's Motion for Summary Judgment is denied.

## V. CONCLUSION

For the foregoing reasons, the Court holds it may not exercise personal jurisdiction over Defendant ADSI and that it may exercise personal jurisdiction over Defendant ADS South, all in accord with the accompanying Order.

BY THE COURT:

*/s/ C. Darnell Jones, II*
C. DARNELL JONES, II   J.