## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANNE FLACCUS,<br><br>    **Plaintiff,**<br><br>**v.**<br><br>**ADVANCED DISPOSAL SERVICES<br>SOUTH, LLC,**<br><br>    **Defendant.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  **CIVIL ACTION<br>NO. 2:17-cv-04808-MAK** |

### DEFENDANT ADVANCED DISPOSAL SERVICES SOUTH, LLC'S MEMORANDUM OF LAW IN SUPPORT OF CERTAIN AFFIRMATIVE DEFENSES

Defendant Advanced Disposal Services South, LLC ("ADS"), by and through its undersigned counsel, and pursuant to the Court's November 22, 2022 Order (ECF Doc. No. 62), hereby submits its Memorandum of Law in Support of Certain Affirmative Defenses, respectfully stating as follows:

### I.  INTRODUCTION

In the Court's November 22, 2022 Order, the Court instructed ADS's counsel to either "file a Notice withdrawing one or more Affirmative Defense Nos. 3, 5, 6, 7, 8, 9, 10, 21, 22, 23, and 25," or instead "file memoranda not exceeding fifteen pages specifically demonstrating signing counsel's fact and legal Rule 11(b) basis" for the defenses. (*See* ECF Doc. No. 62, ¶ 4 & n.1). The Court in particular highlighted the Honorable Joshua D. Wolson's decision in *Greenspan v. Platinum Healthcare Group, LLC*, No. 2:20-cv-5874, 2021 WL 978899 (E.D. Pa. Mar. 2021), wherein he cautioned against the practice of asserting "prophylactic affirmative defenses." *Id.* at *1-3.

This is a much different situation than that before Judge Wolson in *Greenspan*. In *Greenspan*, the defendant filed a memorandum that "confirm[ed] that it did not have a good faith basis to assert that the evidence supports its affirmative defenses." *Id.* at *2-3. Respectfully, as

demonstrated by documents already produced in this case, many of which are cited below,[1] that is not the case here.

As shown below, Affirmative Defense Nos. 3 (Ratification), 5 (Estoppel), 6 (Laches), 7 (Waiver), 9 (Statute of Limitations), 23 (Class Action Waiver), and 25 (Jury Trial Waiver) all constitute valid affirmative defenses under Pennsylvania law and the Federal Rules of Civil Procedure.  Further, each of these defenses were asserted after a reasonable inquiry into the facts and law and upon confirmation of adequate factual support.  Out of an abundance of caution, ADS is withdrawing without prejudice Affirmative Defense Nos. 8 (Justification), 10 (Statute of Frauds), 21 (Class Certification Criteria Cannot Be Met), and 22 (Class Action Prerequisites Do Not Exist).  In so doing, ADS is in no way conceding that these defenses were asserted "prophylactically" or without first conducting a reasonable inquiry.  To the contrary, each of the defenses are supported by the law and the facts of this case, and ultimately each will help demonstrate the fatal flaws underlying Plaintiff's individual and putative class claims.

Upon further review, however, and pursuant to the Court's Order, some of these defenses are not technically "affirmative" defenses (as opposed to justifications refuting Plaintiff's actual and potential claims).  Thus, while ADS is withdrawing these "affirmative" defenses, it respectfully seeks to do so without prejudice or waiver of its right to pursue these arguments in opposition to class certification, in favor of summary judgment, or at trial, as appropriate.

Although ADS addresses in detail below the facts and law supporting each of its affirmative defenses at issue, some initial background information regarding this case and Plaintiff's claims may be helpful.  Plaintiff's business contracted with Interstate Waste Services

---

[1] ADS is mindful of the Court's 15-page limit for this Memorandum and did not want to appear to be evading it by submitting copies of the documents referenced herein as exhibits.  In the event that the Court would like to review any such documents, ADS respectfully requests that the Court so order and ADS will provide them forthwith.

49499297 v1

("IWS") for waste services beginning on or about April 2004. (*See* ADS 000013). When Plaintiff initially entered into an agreement with IWS to provide such services, Plaintiff established the account in the name of a commercial entity -- "Kari's Cafe." (*See id.*). The container size contracted for with IWS was a "4 yard front load." (ADS 000001). Four yard containers are large and not normally employed for residential use. Ultimately, Ms. Flaccus contacted IWS and asked that the name of her account be changed to Anne Flaccus. (*See* ADS 000013). IWS continued to service this account until September 2012, when ADS acquired IWS.

There are basically three types of waste removal accounts at issue in this case. First, there are municipal accounts, where the contract terms (including all pricing) are negotiated with the municipality and equally applicable to all municipal residents. Second, there are residential subscription accounts, which are "month-to-month" oral contracts. Third, there are commercial accounts, which are highly competitive, individually negotiated, and have a very low barrier to entry. For commercial accounts, the contract terms are individually negotiated and change considerably, both over time and from customer-to-customer. ADS, for example, used pre-printed contract forms that changed substantially over the class period and from customer to customer. As discussed below, this includes new service agreements put in place in 2013 and 2015, which unlike earlier agreements, contain mandatory arbitration provisions, as well as jury trial and class action waivers. Other terms in ADS's service agreements are highly negotiated, especially fee provisions, so much so (as ADS will show through myriad examples that have and will be produced) that these negotiations often lead to term-by-term mark-ups of the agreements, where printed terms were crossed out and new ones hand-written in their place. These and other non-common, highly individualized issues are central to this case.

## II.   ARGUMENT AND CITATIONS OF AUTHORITY

In this case, ADS's Affirmative Defense Nos. 3, 5, 6, 7, 9, 23, and 25 are all properly asserted, in accordance with Rule 11,[2] after reasonable inquiry into their legitimacy.[3]

### A.   Affirmative Defense Nos. 3 (Ratification), 5 (Estoppel), and 7 (Waiver).

ADS's third, fifth, and seventh affirmative defenses plead the doctrines of ratification, estoppel, and waiver, respectively.  As both a legal and a factual Rule 11(b) foundation exists for these defenses, all three are properly asserted in this case.

#### 1.   Factual Basis

At the outset, a proper factual basis for the affirmative defenses of ratification (Affirmative Defense 3), estoppel (Affirmative Defense 5), and waiver (Affirmative Defense 7) exists in this case.  This is apparent not only from documents produced in the case, but also Plaintiff's allegations in the Third Amended Complaint (ECF Doc. No. 11) (the "Complaint").

With respect to the documents produced in this case, a very clear pattern is readily apparent.  That is, Plaintiff received an invoice for trash removal services that specifically

---

[2] The Third Circuit has made clear that "[s]anctions are to be applied only 'in the '*exceptional circumstance*' where a claim or motion is patently unmeritorious or frivolous.'"  *Ario v. Underwriting Members of Syndicate 53 at Lloyds for 1998 Year of Acct.*, 618 F.3d 277, 297 (3d Cir. 2010) (quoting *Doering v. Union County Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir. 1988)) (emphasis added).  "In determining whether Rule 11 sanctions are appropriate, a court 'must look objectively as to whether the imposition of sanctions would be reasonable under the circumstances.'"  *Medina v. Haas*, No. 4:21-cv-1000, 2022 WL 2307098, at *3 (M.D. Pa. June 27, 2022) (quoting *Barley v. Fox Chase Cancer Ctr.*, 54 F. Supp. 3d 396, 401 (E.D. Pa. 2014)).  At the same time, "[i]n deciding a Rule 11 motion, '*[a]ny doubt* . . . should be resolved in favor of the party charged with the violation.'"  *D'Ambly v. Exoo*, No. 2:20-cv-12880, 2022 WL 3040929, at *4 (D.N.J. Aug. 1, 2022) (quoting *Sanders v. Hale Fire Pump Co.*, No. 87-cv-2468, 1988 WL 58966, at *1 (E.D. Pa. June 1, 1988)) (emphasis added).

[3] As it pertains to affirmative defenses, it is also important to note that the heightened pleading standards set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "do not apply."  *Medina*, 2022 WL 2307098, at *4 (citing *Tyco Fire Prods. LP v. Victaulic Co.*, 777 F. Supp. 2d 893, 895 (E.D. Pa. 2011)).  This makes sense, because while Rule 8(a)(2) requires "a short and plain statement of the claim *showing* that the pleader is entitled to relief," under Rule 8(c)(1), a party need only "*state*" affirmative defenses.

49499297 v1

disclosed one of the "Cost Recovery Fees" on which Plaintiff purports to base her claims against ADS, and Plaintiff paid it in full.  For example, on October 31, 2012, ADS sent Plaintiff an invoice that showed a current amount due of $151.99 and plainly identified as part of that total a $5.99 fee for "F/L Monthly Adv Fuel at 4.100%," which corresponded to the fuel charge for the prior month.  (*See* ADS 000021).  Plaintiff's June 2012 Service Agreement with IWS (the operative contract at the time) not only expressly permitted this fee, but also specifically informed Plaintiff that the fee "may increase" over time.  (*See* ECF Doc. No. 11 at Ex. A, p. 2, § 4).  The following month, Plaintiff paid the entire amount owed on the invoice, including the full amount due for the clearly disclosed fees.  (*See* ADS 000023 (reflecting the prior balance of $151.99 and Plaintiff's payment that covered it)).  The pattern continued month after month, not only with the fuel charges and the other fees Plaintiff puts at issue, but also Plaintiff's subsequent payment to cover them.  Indeed, ADS's November 30, 2012 invoice in the amount of $159.72 disclosed a fuel charge ("F/L Monthly Adv Fuel at 3.400%") in the amount of $4.96, as well as an "ENVIRONMENTAL FEE" in the amount of $8.76.  (ADS 000023).  The following month, Plaintiff again paid the invoice in full.  (ADS 000027 (showing payment in full)).

In the Complaint, Plaintiff at times argues that the environmental fee allegedly "jumped" unexpectedly (such as in March 2013), and when fuel charges allegedly "drastically increased" (such as allegedly in June 2013).  (*See, e.g.*, ECF No. 11 ¶¶ 23, 25).  Once again, however, the documents confirm that Plaintiff paid these fees, month after month in full.  (*Compare* ADS 000031 (the March 2013 invoice), *with* ADS 000033 (the April 2013 invoice, showing payment in full of the March 2013 balance)); *compare* ADS 000037 (the June 2013 invoice), *with* ADS 000039 (the July 2013 invoice, showing payment in full of the June 2013 balance)).

The same is true for the "Administrative Fee."  (*See* ECF Doc. No. 11 ¶ 25)).  Contrary to

Plaintiff's allegations, the documents produced by ADS confirm that ADS disclosed the fee on Plaintiff's June 2013 invoice and directed Plaintiff to call with any questions, (ADS 000037). Yet, rather than dispute the $7.00 fee before or at the time ADS included the charge on Plaintiff's July 2013 invoice, Plaintiff paid the Administrative Fee, in full, the very next month. (*See* ADS 000037-41 (the June, July, and August 2013 invoices)).

Simply put, Plaintiff time and again accepted the benefits of IWS's and later ADS's trash removal services, remained silent about (and instead paid, month after month) the exact "Cost Recovery Fees" that are at issue in this case, and in the end filed a putative class action against ADS, claiming ignorance on something that the documents in this case show she knew about well over six years beforehand.  As discussed below, *infra* Part II.A.2, these facts, as supported by documents already produced, let alone other evidence ADS is pursuing in discovery, provide more than ample support for ADS's ratification, estoppel, and waiver defenses.

### 2.  Legal Basis

In addition to having a proper factual predicate for these three defenses, a valid legal basis for the defenses also exists, as all three defenses constitute well-recognized affirmative defenses under Pennsylvania law and the Federal Rules of Civil Procedure.

- ### *Ratification*

"Pennsylvania courts recognize the defense of . . . ratification." *Johnston v. Katz*, No. 2:94-cv-6693, 1996 WL 107402, at *4 (E.D. Pa. Mar. 7, 1996).  Specifically, "[a] party may ratify a contract if it 'accepts the benefits flowing from it, or remains silent, or acquiesces in the contract for any considerable length of time after the party has the opportunity to annul or avoid the contract.'"  *Mente Chevrolet Oldsmobile Inc. v. GMAC*, 728 F. Supp. 2d 662, 675 (E.D. Pa. 2010), *aff'd*, 451 F. App'x 214 (3d Cir. 2011) (citation omitted).  In other words, "[t]he theory of ratification allows a promise to 'be enforced even though the underlying contract is voidable' on

6

a basis such as duress or fraud." *Id.* (citing *Jakimas v. Hoffmann-La Roche*, 485 F.3d 770, 782 (3d Cir. 2007)); *see Johnston*, 1996 WL 107402, at *4 ("Once a party discovers that a contract was obtained by fraud, he may rescind or affirm it.  If the party elects to rescind the agreement, once he learns of the fraud he must act with 'diligence and without delay.' . . . Pennsylvania . . . law require[s] a defendant to prove that the ratifying party knew of the fraud and, in spite of that knowledge, manifested to the other party through conduct or words an intention to be bound by the contract.  A party does so if he 'acts with respect to anything that he has received in a manner inconsistent with disaffirmance.'") (citations omitted).  Notably, because "[r]atification is an affirmative defense," it "must be raised in a responsive pleading or it will be deemed waived." *See Mente Chevrolet Oldsmobile Inc.*, 728 F. Supp. 2d at 675 (citing *Jakimas*, 485 F.3d at 773).

- ***Estoppel***

As with the doctrine of ratification, "[e]stoppel is an affirmative defense which must be pleaded" as well.  *Travelers Indem. Co. v. Arbogast*, 45 F.R.D. 87, 88 (W.D. Pa. 1968); *see also* Fed. R. Civ. P. 8(c)(1) (listing "estoppel").  "[T]o succeed on a traditional estoppel defense the litigant must prove (1) a misrepresentation by another party; (2) which he reasonably relied upon; (3) to his detriment." *Monongahela Valley Hosp., Inc. v. Sullivan*, 945 F.2d 576, 589 (3d Cir. 1991) (citation omitted).  More generally, "[e]quitable estoppel is '[a] doctrine sounding in equity, [which] recognizes that an informal promise implied by one's words, deeds or representations which leads another to rely justifiably thereon to his own injury or detriment, may be enforced in equity.'" *Greenwald Caterers Inc. v. Lancaster Host, LLC*, No. 5:22-cv-811, 2022 WL 1204154, at *21 (E.D. Pa. Apr. 22, 2022) (citation omitted); *Peltz v. State Farm Mut. Auto. Ins. Co.*, 538 F. Supp. 3d 498, 507 (W.D. Pa. 2021) (stating "[e]stoppel 'prevents one from doing an act differently than the manner in which another was induced by word or deed to expect'" and requires "'(1) inducement to act; and (2) justifiable reliance on that inducement'").

7

- *Waiver*

Pennsylvania state and federal courts also recognize that "[w]aiver is an affirmative defense." *E. Roofing Sys., Inc. v. Simon Prop. Grp., Inc.*, No. 3:14-cv-717, 2016 WL 4077266, at *5 (M.D. Pa. Aug. 1, 2016) (citing *Dougherty v. Thomas*, 169 A. 219, 223 (Pa. 1933)). Thus, under Fed. R. Civ. P. 8(c)(1), it also must be affirmatively stated in a responsive pleading. "Under Pennsylvania law, a waiver is 'the act of intentionally relinquishing or abandoning some known right, claim, or privilege.'" *Becker v. Bank of New York Mellon Tr. Co., N.A.*, No. 2:12-6412, 2016 WL 5816075, at *38 (E.D. Pa. Oct. 5, 2016) (quoting *Commonwealth ex rel. Pa. Att'y Gen. Corbett v. Griffin*, 946 A.2d 668, 679 (Pa. 2008)). "'To constitute a waiver of legal right, there must be a clear, unequivocal and decisive act of the party with knowledge of such right and an evident purpose to surrender it.'" *Galbraith v. A.G. Edwards & Sons, Inc.*, No. 2:04-cv-870, 2005 WL 3533051, at *4 (W.D. Pa. Dec. 22, 2005).

For all of these reasons, a valid factual and legal predicate for ADS's affirmative defenses of ratification, estoppel, and waiver clearly exists in this case.

**B.    Affirmative Defense Nos. 6 (Laches) and 9 (Statute of Limitations).**

Next, ADS's defenses regarding the doctrine of laches (Affirmative Defense 6) and the statute of limitations (Affirmative Defense 9) are also proper.

**1.    Factual Basis**

Prior to asserting ADS's statute of limitations and laches defenses, ADS again conducted a reasonable inquiry to ensure an adequate factual foundation.  This is particularly important here because, at first glance, Plaintiff's Complaint appears to suggest that the earliest fees that may be at issue in this case were charged after March 2012, when IWS issued a notice regarding a forthcoming "fuel surcharge."  (*See* ECF Doc. 11 ¶ 17).  Further, Plaintiff does not specifically mention any fuel surcharges or other fees prior to April 2012, and limits her putative classes to

8

customers who were charged fees "from October 1, 2012 through the present," "from April 23, 2010 through the present," and "from April 23, 2008 through the present." (*Id.* ¶¶ 17-27, 38). Seemingly, if no other fees could ever be at issue, there might not be a basis to assert a statute of limitations or laches defense to Plaintiff's claims, as Plaintiff originally filed this case on April 23, 2014, which is less than four or six years (i.e. the applicable statutes of limitations for Plaintiff's claims, *see infra* Part II.B.2) after the first of these fees.

However, despite these allegations, there remains a patently valid factual basis for ADS's statute of limitations and laches defenses, as Plaintiff was both billed for and paid at least one of the exact fees at issue in this case long before the applicable statute of limitations for each one of her claims. This is demonstrated by documents that ADS produced in this case, specifically, the IWS service notes for Plaintiff's account from before ADS acquired IWS. One of the entries in these notes is from a December 20, 2007 conversation between Plaintiff and IWS, at which time Plaintiff explicitly inquired about a fuel charge increase to 6%:

| CustID/Site ID | Date | Time | Type | Note | Caller | Category | User |
|---|---|---|---|---|---|---|---|
| 107090 - 0001 | 6/1/2011 | 12:00 am | Conversion | 12/20/2007 8:23:59 AM: change the rate of fuel to 6% Instead of no fuel......customer doesnt understand why fuel jumped so high....talk to joe.....call customer with info.....sjg | 014 | Service Related | CONVERSION |

(*See* ADS 000013).[4]  This note demonstrates, at the very least, that Plaintiff knew about fuel charge increases for more than four years prior to March 2012, and because of her confusion as to "why fuel jumped so high," she even made an effort to call and ask for an explanation. Nevertheless, she still waited well over six years to file this lawsuit, outside the applicable statute of limitations for every one of her claims. This not only provides a more than sufficient factual basis for ADS's statute-of-limitations defense, as explained below, it also creates a presumption

---

[4] While a "Date" column in the notes shows "6/1/2011," this corresponds to a "Conversion" date for when the notes were being converted into a new system in the year before ADS's acquisition.

in favor of the ADS's laches defense.[5]  The fact that Plaintiff paid the fee outside of the statute of limitations is one of the reasons ADS's counsel sought and received permission to file summary judgment motions contemporaneously with any motion for class certification.  ADS has a good faith belief that the statute of limitations will severely limit, if not lead to the full dismissal of, Plaintiff's claims.  Thus, both defenses are again appropriately asserted.

>    **2.**    **Legal Basis**

The statute of limitations and laches are also valid affirmative defenses.

>    •    *Statute of Limitations*

It is well established that "[t]he statute of limitations is an affirmative defense, which must be pleaded and proved by the defendant." *Baptiste v. Morris*, No. 3:18-cv-1484, 2020 WL 2745739, at *5 (M.D. Pa. May 27, 2020) (citing *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014)); *see Cain v. Dep't of Pub. Welfare, Off. of Sec'y Recon. Unit*, 442 F. App'x 638 (3d Cir. 2011) ("The running of the statute of limitations is an affirmative defense.").  Initially, "the burden of establishing its applicability to a particular claim rests with the defendant." *Van Buskirk v. Carey Canadian Mines, Ltd.*, 760 F.2d 481, 487 (3d Cir. 1985).  "Where a plaintiff seeks to establish that the statute should be tolled by fraud or equitable estoppel, however, the burden shifts to the plaintiff." *Id.*  As with other affirmative defenses, "the statute of limitations ordinarily must be raised as an affirmative defense, and it is subject to principles of waiver if not timely asserted." *Carter v. Keystone*, 360 F. App'x 271, 273 (3d Cir. 2010).

In this case, Plaintiff asserts three claims:  (1) Breach of Express Contract; (2) Unjust Enrichment; and (3) Violation of Unfair Trade Practices and Consumer Protection Law (the

---

[5] It also provides support for the affirmative defenses discussed above, as Plaintiff had been contracting with IWS long before the June 2012 "Renewal" Service Agreement (which it seems was not even the first renewal), and yet continued to renew her contract with IWS over and over again, despite knowledge of precisely what she is now basing her claims upon here.

"UTPCPL").  (ECF Doc. No. 11 ¶¶ 46-65).  Under Pennsylvania law, for both breach of contract and unjust enrichment, the statute of limitations is four years, which for each claim "begins to run . . . from the time the cause of action accrues."  *Colonial Assur. Co. v. Mercantile & Gen. Reinsurance Co.*, 297 F. Supp. 2d 764, 770-71 (E.D. Pa. 2003), *aff'd sub nom. by* 130 F. App'x 607 (3d Cir. 2005); *see Cottman Ave. PRP Grp. v. AMEC Foster Wheeler Env't Infrastructure Inc.*, 439 F. Supp. 3d 407, 432 (E.D. Pa. 2020) ("'In a contract case, the cause of action accrues when there is an existing right to sue based on the breach of contract.'  'Generally, a [contract] action . . . accrues when the contract is breached.'") (citations omitted).  By contrast, "[a] UTPCPL claim is subject to a 6-year statute of limitations under 42 Pa.C.S.A. § 5527," though it too begins to run when the conduct underlying the violation occurred.  *See Rodgers v. Lincoln Benefit Life Co.*, No. 2:19-cv-350, 2019 WL 4750193, at *2 (W.D. Pa. Sept. 30, 2019), *aff'd*, 845 F. App'x 145 (3d Cir. 2021); *see Brock v. Thomas*, 782 F. Supp. 2d 133, 140 (E.D. Pa. 2011).  Thus, as shown above, *see supra* Part II.B.1, Plaintiff was billed for and paid at least one of the fees at issue in this case long before the applicable statute of limitations for her claims.

- *Laches*

In addition, while similar to a statute of limitations defense, "[l]aches is an equitable doctrine that prevents recovery when a defendant can show (1) inexcusable delay in instituting suit and (2) prejudice to the defendant resulting from such delay."  *See First Keystone Fed. Sav. Bank v. First Keystone Mortg., Inc.*, 896 F. Supp. 456, 459 (E.D. Pa. 1995) (citing *Univ. of Pittsburgh v. Champion Prods., Inc.*, 686 F.2d 1040, 1044 (3d Cir. 1982)); *see also Lomax v. Sullivan*, 2022 PA Super 145, 282 A.3d 790, 795 (2022) (reiterating that the doctrine of laches "is the practical application of the maxim that those who sleep on their rights must awaken to the consequence that they have disappeared.").  As with the statute of limitations, under Pennsylvania law and the Federal Rules of Civil Procedure, laches is "most commonly raised as

an affirmative defense to a lawsuit," and therefore "[o]rdinarily . . . is deemed waived if not asserted in a responsive pleading or motion." *See Killmeyer v. Oglebay Norton Co.*, 817 F. Supp. 2d 681, 688 n.5 (W.D. Pa. 2011) (quoting *In re Diet Drugs Prod. Liab. Litig.*, 375 F. App'x 269, 272 (3d Cir. 2010)); *see Padgett v. Stein*, 406 F. Supp. 287, 291 (M.D. Pa. 1975).

"The Third Circuit has generally followed the traditional practice of 'borrowing the most analogous statute of limitations from state law' to determine whether the defense of laches may be properly invoked (i.e., whether a plaintiff has exhibited inexcusable delay)." *Am. Diabetes Ass'n v. Friskney Fam. Tr., LLC*, 177 F. Supp. 3d 855, 878 (E.D. Pa. 2016) (quoting *Island Insteel Sys., Inc. v. Waters*, 296 F.3d 200, 206 (3d Cir. 2002)).   As such, if "the appropriate statute of limitations has not run . . . the defendant bears the burden of establishing its entitlement to laches," whereas "if the delay is for a period of time greater than that of an analogous statute of limitations, laches is presumed, and the burden of proof shifts to the plaintiff to rebut that presumption." *See id.*; *see also Baczor v. Atl. Richfield Co.*, 424 F. Supp. 1370, 1379 (E.D. Pa. 1976) (citing *Gruca v. United States Steel Corp.*, 495 F.2d 1252, 1259 (3d Cir. 1974)).

In short, given the sufficient factual basis for ADS's statute-of-limitations defense, there exists a clear presumption in favor of ADS's laches defense as well.

C.     **Affirmative Defense Nos. 23 (Class Certification Criteria Cannot Be Met) and 25 (Prerequisites to a Class Action Do Not Exist).**

Finally, ADS's twenty-third and twenty-fifth defenses assert that both "Plaintiff and any potential Class Members" have "waived any right to bring this action . . . as a class action," and "have waived any right to a jury trial." (*See* ECF Doc. No. 42 at Affirmative Defense Nos. 23 & 25).   These defenses were once again asserted only after conducting a reasonable inquiry into their legitimacy, and therefore they are validly asserted affirmative defenses in this case.

49499297 v1

1. **Factual Basis**

An adequate factual basis supporting ADS's class action waiver defense (Affirmative Defense No. 23) and jury trial waiver defense (Affirmative Defense No. 25) also exists in this case. While only the June 2012 Service Contract between Plaintiff and IWS is attached to the Complaint, and Plaintiff only specifically mentions "Cost Recovery Fees" allegedly charged from 2012 to 2013, (*see* ECF Doc. No. 11 ¶¶ 15, 17-27), subsequent iterations of ADS's service agreements (with varying contractual language governing ADS's services) are also at issue. Plaintiff concedes this, alleging throughout the Complaint, "ongoing harm," "repeated breaches of contract," and an allegedly wrongful practice that "is still ongoing today." (*Id.* ¶¶ 12, 50). Separate from her individual claims, Plaintiff also seeks to represent putative class members who were charged Cost Recovery Fees "from October 1, 2012 through the present," "from April 23, 2010 through the present," and "from April 23, 2008 through the present." (*Id.* ¶ 38).

Notably, Plaintiff likewise acknowledges that ADS "continue[s] to enter into written service agreements with customers state-wide," but while she admits that these agreements differ from the June 2012 Service Contract with IWS, she contends that the pertinent language is all "identical" or at least "substantively identical," and therefore poses no problem, either to her own claims or those of the putative class. (*See id.* ¶¶ 2, 13, 42, 48). However, in contrast to Plaintiff's allegations, the facts supporting ADS's twenty-third and twenty-fifth affirmative defenses demonstrate otherwise. Among other things, in 2013 and again in 2015, ADS rolled out revised versions of Advanced Disposal's Service Agreement, which included materially different terms. For example, unlike the 2012 IWS Service Contract, these contracts contain mandatory arbitration provisions, and conspicuous jury trial and class action waiver clauses.[6] Importantly,

---

[6] (*See* ADS 2015 Service Agreement at p. 2 ("THE PARTIES EACH HEREBY WAIVE TRIAL BY JURY IN ANY ACTION . . . BROUGHT BY ANY OF THEM AGAINST THE OTHER . .

the jury trial and class action waiver provisions in both the 2013 and the 2015 Service Agreements expressly apply on a retroactive basis, meaning that the acceptance of one of these agreements operates as a waiver of the right to a jury trial or to participate in a class action, even if the controversy at issue relates to fees charged pursuant to a prior service agreement (such as the 2012 IWS Service Contract).

> ### 2.   Legal Basis

Affirmative defenses asserting a waiver of the right to pursue a class action or a trial by jury based on contractual provisions agreed to by named plaintiffs and putative class members are commonplace in federal and state courts, both in Pennsylvania and elsewhere. *See Kubischta v. Schlumberger Tech Corp*, No. 2:15-cv-1338, 2016 WL 3752917, at *3, 5, 8 (W.D. Pa. July 14, 2016) (granting summary judgment and ordering case could proceed only on the plaintiff's individual claims based on enforceable "class action waiver" provision that the defendant properly raised in an affirmative defense to the plaintiff's claims); *see also Kenison v. Schellman & Co., LLC*, No. 8:20-cv-1139, 2020 WL 10354995, at *5 (M.D. Fla. Nov. 20, 2020) (ruling that "action will be set for a non-jury trial" where the defendant "did not delay in seeking to enforce the jury-trial waiver" and "made clear its intention to enforce the waiver in its Answer and Affirmative Defenses"). Thus, as numerous courts have found, the failure to assert such affirmative defenses can constitute a waiver of the right to enforce the provision. *Compare Walton v. First Merch.'s Bank*, 820 F. App'x 450, 454 (7th Cir. 2020) (finding that the defendant "implicitly waived its contractual right to a bench trial" in part because it "did not raise the jury waiver in its answer to either of her complaints, . . . either as an affirmative defense in its answer or in a motion to strike"), *with Peltz ex rel. Est. of Peltz v. Sears, Roebuck & Co.*, 367 F. Supp.

---

. AND FURTHER WAIVE THE RIGHT TO PARTICIPATE AND/OR BE REPRESENTED IN ANY CLASS ACTION . . . .")); ADS 2013 Service Agreement at p. 2 (containing similar arbitration, class action waiver, and jury trial provisions).

2d 711, 721-22 (E.D. Pa. 2005) (concluding that the defendant "preserved its position" that right to jury trial had been waived "by pleading arbitration as an affirmative defense in its answer"), *and U.S. ex rel. Duncan Pipeline, Inc. v. Walbridge Aldinger Co.*, No. 4:11-cv-92, 2013 WL 1338392, at *17-18 (S.D. Ga. Mar. 29, 2013) (denying motion to strike "Defendants' affirmative defense of a waiver of jury trial" and ordering that the plaintiffs' claims "will proceed to a bench trial" where "Defendants answered the complaint and asserted as one of its affirmative defenses that Duncan Pipeline waived its right to a jury trial by signing the subcontract").  A valid legal predicate for ADS's twenty-third and twenty-fifth affirmative defenses therefore exists as well.

Simply put, ADS's jury trial and class action waiver affirmative defenses are not asserted prophylactically but in good faith after a reasonable investigation, and each has a valid "fact and legal Rule 11(b) basis" and are in no way "'patently unmeritorious or frivolous.'"  *See Ario v. Underwriting Members of Syndicate 53 at Lloyds for 1998 Year of Acct.*, 618 F.3d 277, 297 (3d Cir. 2010).  Accordingly, both defenses are properly asserted.

### III.   CONCLUSION

For all of the foregoing reasons, ADS respectfully submits that Affirmative Defense Nos. 3, 5, 6, 7, 9, 23, and 25 all constitute valid and properly asserted affirmative defenses.

Respectfully submitted this 30th day of November, 2022.

/s/ Joel L. Frank
Joel L. Frank (I.D. No. 46601)
John J. Cunningham (I.D. No. 70975)
LAMB McERLANE PC
24 East Market Street, P.O. Box 565
West Chester, PA 19381
Telephone:  (610) 430-8000
Facsimile:  (610) 692-0877
jfrank@lambmcerlane.com
jcunningham@lambmcerlane.com

/s/ Rik S. Tozzi
Rik S. Tozzi (*admitted pro hac vice*)
BURR & FORMAN LLP
420 North 20th Street, Suite 3400
Birmingham, AL 32503
Telephone:  (205) 458-5152
Facsimile:  (205) 458-5100
rtozzi@burr.com

Attorneys for Defendant
ADVANCED DISPOSAL SERVICES, LLC

49499297 v1

<u>**CERTIFICATE OF SERVICE**</u>

I, Joel L. Frank, Esquire, hereby certify that on November 30, 2022, I caused a true and correct copy of the foregoing Defendant Advanced Disposal Services South, LLC's Memorandum of Law in Support of Certain Affirmative Defenses to be served via the Court's CM/ECF system upon all counsel registered to received electronic notices in the above-captioned action.

/s/ Joel L. Frank
JOEL L. FRANK

49499297 v1