# Exhibit "2"

[*Declaration of Samantha Jean Daley*]

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANNE FLACCUS, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ADVANCED DISPOSAL SERVICES )<br>SOUTH, LLC, )<br>)<br>Defendant. )<br>) | CIVIL ACTION<br>NO. 2:17-cv-04808-MAK |

## DECLARATION OF SAMANTHA JEAN DALEY

I, Samantha Jean Daley, declare as follows:

1. My name is Samantha Jean Daley. I reside in Waukesha, Wisconsin. I am over the age of twenty-one (21) years and am competent to testify to the matters contained herein. I have personal knowledge of the facts contained in this Declaration.

2. I am currently employed by Waste Management National Services, Inc. ("WMNS") as a Business Analyst for the MAS application, which is a billing and revenue application. I have been employed by WMNS since Waste Management, Inc.'s ("WM") purchase of Advanced Disposal Services, Inc. ("ADS") on or about October 30, 2020.

3. Prior to my employment with WMNS, I was employed by ADS from December 2008 to October 2020. I have been employed by WMNS since its purchase of ADS. Among other things, I was employed by an ADS entity as a Business Analyst for the PeopleSoft application.

4. Beginning in April 2018, my responsibilities at ADS included projects with its TRUX system. TRUX contained ADS's customer billing, routing, and revenue data. Specifically, TRUX housed all of ADS's customer data and billing information (including addresses), as well as information regarding whether or not an ADS commercial customer was charged a fuel

surcharge, an environmental fee, or an administrative fee and the amount paid by each customer for each fee.

5. All information contained in TRUX was kept in the course of ADS's regularly conducted business activities. The making of the records/information, and documents that are contained in TRUX was also a regular practice of ADS done as a part of its regularly conducted business activities. That is, all information found in TRUX and relied on to determine settlement class membership and the amount of revenue received from ADS for the environmental fee, administrative fee, and fuel surcharge (the "fees") between October of 2012 and September of 2018 was made, kept, and maintained by ADS in the ordinary course of its business.

6. The information contained in TRUX was maintained and transferred in TRUX as part of WM's acquisition of ADS. Since October 2020, TRUX has been maintained, and all records, information, and documents contained therein in the ordinary course of its business and as a part of its regularly conducted business activity.

7. In addition, ADS's TRUX software also includes information indicating whether or not an ADS commercial customer had entered into a service agreement with ADS that included an arbitration clause and class action waiver.

8. Many service agreements between ADS and its commercial customers are accessible through the TRUX software. Many of these contracts reflect individual negotiations that took place between ADS and its customers regarding whether or not a customer was charged a fuel surcharge, an environmental fee, or an administrative fee (as well as the amount and time period any fee was charged). These individualized negotiations are memorialized, among other places, via handwritten notes made on the contracts themselves.

9. As a result of my significant experience with ADS's TRUX software and my expertise in garnering data from TRUX, Beth Ann Schweiner, director of digital M&A for WMNS, requested that I review and validate TRUX customer data and revenue information relating to ADS commercial customers in Pennsylvania who, from October 1, 2012 to September 12, 2018, paid to ADS one or more of a fuel surcharge, environmental fee, or administrative fee, and who did not sign a written contract with ADS that included an arbitration clause and class action waiver. My instructions were that the information was to be accurate and include all commercial customers and revenue who fit this description within this time period.

10. Information identifying these commercial customers, including addresses, as well as revenue ADS received from these payments was obtained by writing scripts that identified the relevant data and running those scripts in the TRUX database. The results were then double checked by randomly selecting numerous data points and re-running the scripts to ensure the accuracy of the information obtained and contained in this Declaration.

11. Based on the TRUX data that I reviewed and validated, there are in total Twelve Thousand Two Hundred and Twenty-Four (12,224) commercial customers of ADS in Pennsylvania who, from October 1, 2012 to September 12, 2018, paid one or more of a fuel surcharge, environmental fee, or administrative fee to ADS, and who did not sign a written contract with ADS that included an arbitration clause and class action waiver.

12. In addition, I have also confirmed that, in total, the revenue that ADS received from these Twelve Thousand Two Hundred and Twenty-Four (12,224) commercial customers as a result of the fuel surcharges, environmental fees, and administrative fees paid to ADS from October 1, 2012 to September 12, 2018 by these commercial customers equals Seven Million Two Hundred Eighty-Nine Thousand Two Hundred Seventy-Three and 66/100 ($7,289,273.66) Dollars.

13. ADS will be able to provide the Settlement Benefits Administrator identifying information for each of these Twelve Thousand Two Hundred Twenty-Four (12,224) commercial customers, including the customer's name and address ADS employed for billing and customer contact purposes. ADS will also be able to provide the Settlement Benefits Administrator revenue received for fee payments from each of these customers between October 1, 2012 through September 12, 2018.

I declare, pursuant to 28 U.S.C. § 1746 and under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed on February __8__, 2023, in Waukesha, Wisconsin.

_/s/ SJ Daley_
Samantha Jean Daley