**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ANNE FLACCUS, | |
| Plaintiff, | |
| v. | Civil Action No. 2:17-cv-04808-MAK |
| ADVANCED DISPOSAL SERVICES EASTERN PA, INC. f/k/a ADVANCED DISPOSAL SERVICES SHIPPENSBURG, LLC; and ADVANCED DISPOSAL SERVICES SOUTH, LLC f/k/a ADVANCED DISPOSAL SERVICES, INC. | |
| Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT

Benjamin M. Mather, Esq.
Andrew J. Belli, Esq.
**COREN & RESS, P.C.**
Two Commerce Square
2001 Market Street, Suite 3900
Philadelphia, PA 19103
Phone: (215) 735-8700
bmather@kcr-law.com
abelli@kcr-law.com

*Attorneys for Plaintiff*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES. ................................................................................................ ii

I. PROCEDURAL HISTORY ................................................................................. 2

II. THE SETTLEMENT AGREEMENT ................................................................. 5

  A. The Class Definition .................................................................................... 5

  B. Benefits to the Class..................................................................................... 6

  C. Release Provisions ....................................................................................... 6

III. THE NOTICE PLAN HAS BEEN EFFECTIVELY IMPLEMENTED ............. 6

IV. FINAL APPROVAL OF THE SETTLEMENT IS WARRANTED .................... 8

  A. The Settlement Class Should Be Certified................................................... 9

    1. The Class Members Are So Numerous That Joinder Is Impracticable ......... 10

    2. Common Questions of Law or Fact Exist .................................................... 10

    3. Plaintiffs' Claims Are Typical of Those of the Class .................................... 11

    4. Plaintiffs Are Adequate Representatives of the Class................................... 11

    5. Common Legal and Factual Questions Predominate .................................... 12

    6. A Class Action Is The Superior Means to Adjudicate Plaintiff's and Class Members' Claims.................................................................................................................... 12

  B. The Proposed Settlement Is Fair, Reasonable, And Adequate........................................ 13

    1. Plaintiff and Coren & Ress, P.C. Adequately Represented the Class And Negotiated An Arm's Length Settlement ................................................................................ 13

    2. The Benefits Under the Settlement Are More Than Adequate ..................... 15

    3. The Settlement Treats Class Members Equitably ........................................ 18

    4. No Objections Have Been Received to Date ............................................... 19

  C. The Plan of Allocation Is Fair, Reasonable, and Adequate .............................................. 19

V. CONCLUSION ....................................................................................................... 20

<u>TABLE OF AUTHORITIES</u>

**Cases**

*Alberici v. Recro Pharma, Inc.*,
  No. CV 18-2279, 2022 WL 17364637 (E.D. Pa. Dec. 1, 2022)................................................. 9

*Allen v. Ollie's Bargain Outlet*,
  37 F.4th 890 (3d Cir. 2022) ....................................................................................................... 10

*Alves v. Main*,
  No. 01-789 (DMC), 2012 WL 6043272 (D.N.J. Dec. 4, 2012)......................................... 14, 17

*Amchem Prod., Inc. v. Windsor*,
  521 U.S. 591 (1997) ................................................................................................................... 12

*Baby Neal v. Casey*,
  43 F.3d 48 (3d Cir. 1994) .......................................................................................................... 10

*Boyd v. Coventry Health Care Inc.*,
  No. DKC09-2661, 2014 WL 359567 (D. Md. Jan. 31, 2014)..................................................... 19

*Bredbenner v. Liberty Travel, Inc.*,
  No. 09-905 (MF), 2011 WL1344745 (D.N.J. Apr. 8, 2011) ..................................................... 15

*Cullen v. Whitman Med. Corp.*,
  197 F.R.D. 136 (E.D. Pa. 2000) ............................................................................................... 18

*Diaz v. BTG Int'l Inc.*,
  2021 WL 2414580 (E.D. Pa. June 14, 2021)........................................................................... 10

*Gen. Tel. Co. of Southwest v. Falcon*,
  457 U.S. 147 (1982) ................................................................................................................... 11

*Girsh v. Jepson*,
  521 F.2d 153 (3d Cir. 1975) ............................................................................................... passim

*In re Cendant Corp.*,
  109 F. Supp. 2d 235 (D.N.J. 2000)............................................................................................. 8

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*,
  55 F.3d 768 (3d Cir. 1995) .......................................................................................................... 8

*In re Ikon Off. Sols., Inc., Sec. Litig.*,
  194 F.R.D. 166 (E.D. Pa. 2000) ............................................................................................... 19

*In re Ins. Brokerage Antitrust Litig.*,
  282 F.R.D. 92 (D.N.J. 2012)...................................................................................................... 16

*In re Nat'l Football League Players' Concussion Inj. Litig.*,
  307 F.R.D. 351 (E.D. Pa. 2015) ............................................................................................... 14

*In re NFL Players Concussion Injury Litig.*,
  821 F.3d 410 (3d Cir. 2016) ...................................................................................................... 12

*In re Prudential Ins. Co. Am. Sales Prac. Litig.*,
  148 F.3d 283 (3d Cir. 1998) ...................................................................................................... 17

*In re Remicade Antitrust Litig.*,
  No. 17-CV-04326, 2023 WL 2530418 (E.D. Pa. Mar. 15, 2023) ............................................. 9

*In re Schering-Plough Corp. Sec. Litig.*,
  No. 01 Civ. 0829, 2009 WL 5218066 (D.N.J. Dec. 31, 2009)................................................. 17

*In re Viropharma Inc. Sec. Litig.*,
  No. CV 12-2714, 2016 WL 312108 (E.D. Pa. Jan. 25, 2016)............................................ 13, 14

*In re Warfarin Sodium Antitrust Litig.*,

391 F.3d 516 (3d Cir. 2004) ..................................................................... 8, 14, 15, 17

*Kao v. CardConnect Corp.*,
  No. 16-CV-5707, 2021 WL 698173 (E.D. Pa. Feb. 23, 2021) .......................... 18

*McDonough v. Horizon Blue Cross Blue Shield of N.J.*,
  641 Fed. Appx. 146 (3d Cir. 2015)...................................................................... 9

*Phillips Petro. Co. v. Shutts*,
  472 U.S. 797 (1985) .............................................................................................. 8

*Reyes v. Netdeposit, LLC*,
  802 F.3d 469 (3d Cir. 2015) ............................................................................... 10

*Stechert v. Travelers Ins. Co.*,
  No. CV 17-0784-KSM, 2022 WL 2304306 (E.D. Pa. June 27, 2022)................... 7

*Stevens v. SEI Investments Co.*,
  2020 WL 996418 (E.D. Pa. Feb. 28, 2020) ....................................................... 18

*Sullivan v. DB Investments, Inc.*,
  667 F.3d 273 (3d Cir. 2011) ............................................................................... 12

Taha v. Bucks Cnty.,
  No. CV 12-6867, 2020 WL 7024238 (E.D. Pa. Nov. 30, 2020) ........................... 9

*Vista Healthplan, Inc. v. Cephalon, Inc.*,
  2020 WL 1922902 (E.D. Pa. Apr. 21, 2020)...................................................... 18

*Wood v. Amerihealth Caritas Servs., LLC*,
  2020 WL 1694549 (E.D. Pa. Apr. 7, 2020)........................................................ 18

*Wood v. Saroj & Manju Invs. Philadelphia LLC*,
  No. CV 19-2820-KSM, 2021 WL 1945809 (E.D. Pa. May 14, 2021)................... 7

**Statutes**

Fed. R. Civ. P. 23 ............................................................................................... passim

**Other Authorities**

Guidelines and Best Practices Implementing 2018 Amendments to Rule 23 Class Action
  Settlement Provisions [*Bolch Guidelines*].......................................................... 8

*Manual for Compl. Litig.* § 21.312 ....................................................................... 8

On February 21, 2023, the Court preliminarily approved the Settlement in this Action (ECF No. 85, the "Preliminary Approval Order"), which provides for $2,200,000.00 in Settlement Funds.[1]  The Preliminary Approval Order, among other things, conditionally certified a Settlement Class and preliminarily appointed Plaintiff as class representative and Coren & Ress, P.C. ("C&R") as Class Counsel.  Plaintiff and Class Counsel believe that each of these findings in the Preliminary Approval Order should be made final because the Settlement is an exceptional result for the Class given the attendant risks of litigation.  The Settlement was reached following years of litigation, the exchange of voluminous discovery, and arms' length mediation and settlement discussions overseen by Judge Morton Denlow (Ret.) of JAMS ADR, a highly respected and experienced mediator.

The Settlement will provide two key benefits to the defined Class of Pennsylvania commercial customers of Defendants that were allegedly subject to improper fuel surcharges, environmental fees, and administrative fees.  First, Defendants have agreed to pay $2.2 million to the class members in cash benefits, legal fees and expenses, an incentive award, and settlement administration costs.  Second, Defendants have agreed to the forgiveness of a total of $565,345.60 in debt purportedly owed by certain class members, which will be fully and totally eliminated/written off.  In exchange, the Settlement Class Members will release Defendants and their affiliates from all claims that were asserted in this action or that could have been asserted based on the facts alleged by Plaintiff.  The Settlement is not "claims-made," and all proceeds of the Settlement, after the deduction of Court-approved fees and costs, will be distributed to

---

[1]  Unless otherwise defined, capitalized terms are defined in the Settlement Agreement, which is attached as Ex. A to the Declaration of Benjamin M. Mather ("BMM Dec.") filed herewith.

eligible claimants.  Given the facts, the law, and the risk and expense of continued litigation, the Settlement is reasonable and adequate and in the best interests of the Settlement Class.

The Settlement Class has received full and fair notice of the terms of the Settlement through individualized direct mail, a dedicated internet Settlement website, and toll-free number, in accordance with the Preliminary Approval Order.  After mailing the approved form of Notice of Class Action Settlement to Class Members, Class Counsel have received no objections or opt outs thus far.[2]  Accordingly, Plaintiffs respectfully request this Court to enter the proposed form of final approval order being filed contemporaneously herewith.

## I.    PROCEDURAL HISTORY

This long-litigated matter has an extensive procedural history, which helped provide the Settling Parties with an extensive understanding of the pertinent issues when negotiating and agreeing to the Settlement.  BMM Dec. at ¶ 2.  This action involves Plaintiff's allegation that Defendants violated Pennsylvania law by improperly charging and collecting fuel surcharges, environmental fees, and administrative fees for their waste collection services.  *Id.*

The action was originally filed on April 23, 2014 in Pennsylvania state court, where litigation proceeded primarily against Advanced Disposal Services Shippensburg, LLC, which eventually became current Defendant Advanced Disposal Services Eastern PA, Inc. ("ADSEPA").  *Id.* at ¶ 3.  The putative class as asserted in the original Complaint sought to certify a single class limited to customers in Chester County, Pennsylvania only.  *Id.* at ¶ 4.  Defendants filed multiple sets of preliminary objections raising, *inter alia*, issues which were deferred by the Chester County

---

[2] Any objections or opt outs received by the July 20, 2023 deadline will be addressed by Class Counsel by August 3, 2023 per the Preliminary Approval Order.

court to the class certification stage and which Defendants have continued to assert are significant impediments to the Plaintiff's case. *Id.* at ¶ 5. While in state court, the parties engaged in significant discovery which included ADSEPA's issuance of a request for production, interrogatories, and requests for admission to Plaintiff, Plaintiff's issuance of numerous requests for production to ADSEPA, and the parties' respective responses thereto. *Id.* at ¶ 6.

In or around the Summer of 2017, after considering the discovery produced by ADSEPA, Plaintiff's counsel expanded the scope of the case to include customers of any Advanced Disposal entity in the entirety of Pennsylvania. *Id.* at ¶ 7. Accordingly, on September 27, 2017, undersigned counsel filed a Second Amended Complaint which added Advanced Disposal Services, Inc. ("ADSI"), the then parent of the Advanced Disposal family of companies, as a defendant and asserted putative statewide classes substantially similar to those in the current complaint. *Id.*

On October 24, 2017, with the amended complaint bringing this matter within the ambit of the Class Action Fairness Act, Defendants filed a notice of removal to this Court (ECF No. 1). *Id.* at ¶ 8. ADSI subsequently moved to dismiss due to a purported lack of personal jurisdiction, ECF No. 7, and Plaintiff responded by filing the currently operative Third Amended Complaint, ECF No. 11, which added Advanced Disposal Services South, LLC ("ADSS") as a defendant.

ADSI and ADSS then each filed motions to dismiss due to a purported lack of personal jurisdiction, ECF Nos. 15 & 17, which were denied without prejudice, with the Court ordering the parties to conduct jurisdictional discovery, ECF Nos. 27 & 31. Extensive jurisdictional discovery was conducted from June 28, 2018 until November 4, 2018, which included Defendants' production of thousands of pages of documents and three depositions of Advanced Disposal personnel. BMM Dec. at ¶ 9. Much of the jurisdictional discovery necessarily overlapped with

3

class certification and merits issues, and provided Class Counsel with a firm basis for evaluating the strength of the Third Amended Complaint and the scope of potential damages. *Id.*

On December 4, 2018, ADSI and ADSS each filed motions for summary judgment on the issue of personal jurisdiction, ECF Nos. 33 & 34 and, on December 23, 2019, the Court issued an order and opinion denying ADSS's motion but granting ADSI's motion with prejudice, ECF Nos. 39 & 40.  Plaintiff believes the dismissal of ADSI was erroneous and moved for reconsideration on January 6, 2020, ECF No. 41, which was denied on October 8, 2020, ECF Nos. 46 & 47.  Plaintiff then began diligently pursuing additional discovery.  BMM Dec. at ¶ 10.

In April 2019, while the jurisdictional motions were pending, Waste Management, Inc. announced that it had reached a deal to acquire ADSI and its subsidiaries for approximately $4.9 billion.  *Id.* at ¶ 11.  The acquisition prompted a dialogue and exchange of information between Class Counsel and defense counsel which resulted in the request that the Court put the case into suspense to allow for defense counsel to coordinate its litigation strategy with Defendants' new owner, to be followed by mutually agreed mediation.  *Id.*  That request was granted on September 1, 2021.  ECF No. 49.  Between September 2021 and November 2022, amidst the Covid-19 Pandemic and Waste Management's post-acquisition transition activities, counsel continued their exchange of information and informal settlement discussions.  BMM Dec. at ¶ 11.

Both during and prior to this time period, Plaintiff's counsel derived significant benefit from review of documents filed in two cases previously litigated against Defendants and/or their affiliates that involved fees and issues substantially similar to those addressed in the instant matter: *JWG Incorporated, et al., v Advanced Disposal Services Jacksonville, L.L.C. et al.*, Duval County Florida No. 16-2011-CA-005641 ("*JWG*") and *Bach Enterprises, Inc., et al. v. Advanced Disposal*

4

*Services South, Inc., et al.*, Barbour County Alabama No. 69-cv-2013-900090.00 ("*Bach*").  *Id.* at ¶ 12.  The docket entries from these cases are publicly available and gave Plaintiff's counsel a preview of defense counsel's likely strategy in the instant Action.  *Id.*

These parties' discussions culminated in the retention of the Hon. Morton Denlow (Ret.) of JAMS ADR, a nationally respected mediator of class actions.  *Id.* at ¶ 13 and Exhibit B.  In advance of a full day mediation session, which took place on January 17, 2023, the parties were in constant communication about the information Plaintiff would need to make an informed decision as to settlement.  *Id.* at ¶ 14.  These communications resulted in Defendants producing significant factual information, including the production of 3.3 million pages of documents in an electronic searchable database along with the transcripts and exhibits from sixteen depositions taken in the *JWG* and *Bach* matters.  *Id.*  Given the overlap between the issues addressed in *JWG* and *Bach* and the claims advanced in the instant matter, the deposition transcripts were an invaluable resource to Plaintiffs, as they featured skilled plaintiffs' counsel examining Defendants' representatives as to issues identical to those presented in this Action.  *Id.*

Judge Denlow held preliminary discussions and guided them through his class action checklist, which is a tool he developed to ensure that class action parties appreciate all issues which bear on the mediation and settlement of a putative class action.  *Id.* at ¶ 15.  After a full day of hotly contested negotiations, the parties reached the Settlement described herein.  *Id.*

## II.     THE SETTLEMENT AGREEMENT

### A.     The Class Definition

The Settlement Class is defined as all Advanced Disposal commercial customers in Pennsylvania who paid one or more of a fuel surcharge, environmental fee, or administrative fee, to Advanced Disposal from October 1, 2012 to September 12, 2018.  Excluded from the class are: (1)  all customers who signed a written contract that included an arbitration clause and class action

5

waiver; (2) the district and magistrate judges presiding over this case; (3) the judges of the Third Circuit; (4) the immediate families of the preceding person(s); (5) any Released Party; (6) any Settlement Class Member who timely opts out of this Action; and (7) Class Counsel, their employees, and their immediate families.

      **B.**      **Benefits to the Class**

Defendants have agreed to pay $2,200,000.00 million into a common settlement fund, which will provide cash benefits to the class members after deduction of legal fees and expenses, a $15,000.00 incentive award to Plaintiff, and settlement administration costs as part of a distribution procedure that that allows the Settlement Class to be reimbursed a pro rata portion of the fuel surcharges, environmental charges, and administrative fees they paid during the class period. Moreover, Defendants have agreed to the forgiveness of a total of $565,345.60 in debt purportedly owed by certain class members, which will be fully and totally eliminated/written off.

      **C.**      **Release Provisions**

In return for the benefits described above, the Settlement Class Members will release all claims, rights, causes of action, liabilities, or other obligations (other than obligations imposed by the Settlement Agreement) of any kind, whether known or unknown, that were asserted in the Action, or that could have been asserted in the Action based on the facts alleged in all complaints filed in this action.

## III.      THE NOTICE PLAN HAS BEEN EFFECTIVELY IMPLEMENTED

Pursuant to the Preliminary Approval Order, the Parties have overseen the issuance of the Court-approved notice procedures. As set forth in the Declaration of Vanessa Santacruz (the "Santacruz Declaration"), attached to the BMM Dec. as Exhibit E, Court-approved Settlement Benefits Administrator KCC Class Action Services, LLC ("KCC") received from Defendants a list of 12,229 persons identified as the Class List. BMM Dec. at Ex. E, ¶ 2. KCC formatted the list for mailing purposes, reviewed for duplicate records, and processed the names and addresses through the National Change of Address Database to update any addresses on file with the United States Postal Service ("USPS"), ultimately updating 646 addresses. *Id.*

On March 31, 2023, KCC caused the short form Notice to be printed and mailed to the 12,229 names and mailing addresses on the updated Class List. *Id.* at ¶ 3. 31 of the Notices were

returned with forwarding addresses and were immediately re-mailed to those addresses.  *Id.* at ¶ 4.

KCC has received 1,338 Notices returned with undeliverable addresses.  *Id.* at ¶ 5.  Through credit

bureau and/or other public source databases, KCC performed address searches for these

undeliverable Notices, was able to find updated addresses for 205 of the undeliverable Notices,

and promptly re-mailed those Notices.  *Id.*  Additionally, Defendants have confirmed the service

of and non-response to CAFA Notices under 28 U.S.C. § 1715(b) via certified mail to the

Pennsylvania Office of Attorney General and the United States Attorney General, which were

timely served on March 2, 2023.  *See* BMM Dec. at Ex. F.

The mailing program was successful, as only 1133 Notices out of the 12,229 Notices

mailed were not able to be delivered, resulting in a success rate in excess of 90.7%.  Similar

deliverable rates have been held by the Courts of this District as consistent with the requirements

of Rule 23.  *See Stechert v. Travelers Ins. Co.*, No. CV 17-0784-KSM, 2022 WL 2304306, at *8

(E.D. Pa. June 27, 2022) (holding that an 89.84% deliverable rate was "relatively high" and

"satisfied the requirements of Rule 23(c)(2)(B) and comports with due process"); *Wood v. Saroj*

*& Manju Invs. Philadelphia LLC*, No. CV 19-2820-KSM, 2021 WL 1945809, at *5 (E.D. Pa. May

14, 2021) (holding that "notice via first-class mail [with a 92.8% deliverable rate] met the Rule 23

and due process requirements, because it was the best notice practicable under the circumstances

and was reasonably calculated to provide actual notice to all potential class members").

Also on March 31, 2023, KCC caused the settlement website (www.pafeesettlement.com)

to go live in accordance with the Preliminary Approval Order.  BMM Dec. at Ex. E, ¶ 6.  On the

settlement website, the general public (including those who received Notices) can view, among

other information, the Settlement Agreement, the Court-approved long form class notice, a

summary of important dates and deadlines, answers to frequently asked questions, and the toll free number to call for further information.  As of June 11, 2023, the settlement website has tracked 124 unique users who registered 304 page views.  *Id.*

"Rule 23(e)(1)(B) requires the court to direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise . . . ."  *Manual for Compl. Litig.* § 21.312.  "To satisfy this standard, the notice must inform class members of (1) the nature of the litigation; (2) the settlement's general terms; (3) where complete information can be located; and (4) the time and place of the fairness hearing and that objectors may be heard."  *In re Cendant Corp.*, 109 F. Supp. 2d 235, 254 (D.N.J. 2000).  The Court-approved Notice program meets all these requirements and is thus "reasonably calculated, under [the] circumstances, to apprise interested Parties of the pendency of the action and afford them an opportunity to present their objections."  *Phillips Petro. Co. v. Shutts*, 472 U.S. 797, 812 (1985).

## IV.   FINAL APPROVAL OF THE SETTLEMENT IS WARRANTED[3]

Rule 23(e) requires court approval for any compromise of claims brought on a class basis and encourages Courts to approve class action settlements if they are "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  As established by the Third Circuit, there is "an overriding public interest in settling class action litigation, and it should therefore be encouraged."  *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004); *see also In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995) ("The law favors settlement, particularly in class actions and other complex cases where substantial judicial

---

[3]  Plaintiff's argument takes into account the amendments to Rule 23, effective 12/1/18, as well as the Bolch Judicial Institute, "Guidelines and Best Practices Implementing 2018 Amendments to Rule 23 Class Action Settlement Provisions" [hereinafter *Bolch Guidelines*].

resources can be conserved by avoiding formal litigation.").  "Settlement of complex class action litigation conserves valuable judicial resources, avoids the expense of formal litigation, and resolves disputes that otherwise could linger for years." *Alberici v. Recro Pharma, Inc.*, No. CV 18-2279, 2022 WL 17364637, at *2 (E.D. Pa. Dec. 1, 2022).  As a result, courts "should be 'hesitant to undo an agreement that has resolved a hard-fought, multi-year litigation.'" *McDonough v. Horizon Blue Cross Blue Shield of N.J.*, 641 Fed. Appx. 146, 150 (3d Cir. 2015).

To grant approval of a  class actions settlement, the Court must first determine whether a class can be certified under Rule 23(a) and at least one prong of Rule 23(b).  *See, e.g., In re Remicade Antitrust Litig.*, No. 17-CV-04326, 2023 WL 2530418, at *9 (E.D. Pa. Mar. 15, 2023). Next, the Court must assess whether the settlement is "fair, reasonable, and adequate" under Rule 23(e)(2)  *Id.* at *14 (citing F. R. Civ. P. 23(e)(2)).  Rule 23(e)(2) instructs the court to consider whether: "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate . . . ; and (D) the proposal treats class members equitably relative to each other."[4]

### A.    The Settlement Class Should Be Certified

---

[4] "In the Third Circuit, courts must continue to analyze the factors propounded in *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975), which are (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risk of maintaining the class through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of the attendant risks of litigation [the '*Girsh* Factors']." Taha v. Bucks Cnty., No. CV 12-6867, 2020 WL 7024238, at *3 (E.D. Pa. Nov. 30, 2020) (citation omitted).

A certified class must meet the following requirements of Rule 23(a): (1) the class is so numerous that joinder of all class members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.   Additionally, Rule 23(b)(3) applies in this case and involves two additional requirements: (5) "that the questions of law or fact common to class members predominate over any questions affecting only individual members" and (6) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

### 1.      The Class Members Are So Numerous That Joinder Is Impracticable

The numerosity requirement is satisfied if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  The Third Circuit "presume[s] joinder is impracticable when the potential number of class members exceeds forty."  *See Allen v. Ollie's Bargain Outlet*, 37 F.4th 890, 896 (3d Cir. 2022).  Here there are 12,224 Class Members, which certainly exceeds any number considered practical for joinder.  Mather Dec. at ¶ 33.

### 2.      Common Questions of Law or Fact Exist

There are questions of law or fact common to the class.  "The commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994).  Because "even a single common question will do," "th[e] bar is not a high one" and "is easily met." *Reyes v. Netdeposit, LLC*, 802 F.3d 469, 486 (3d Cir. 2015) (citations omitted).  "Generally, this requirement is satisfied when the defendant has engaged in the same conduct towards [class] members." *Diaz v. BTG Int'l Inc.*, 2021 WL 2414580, at *3 (E.D. Pa. June 14, 2021).

10

Here the commonality requirement is satisfied because Plaintiff and the Settlement Class Members each received waste disposal services from Defendants, and Defendants assessed Plaintiff and the Settlement Class Members certain fuel surcharges, environmental fees, and administrative costs, and relied on uniform public disclosures of how those fees would be calculated.  Moreover, the Settlement affords pro-rata compensation to each Settlement Class Member without regard to the terms of their agreement or any understanding or reliance on any of Defendants' disclosures or representations of the disputed fees.  Therefore, the commonality question of Rule 23(a)(2) is satisfied as to the proposed Settlement Class.

### 3.      Plaintiffs' Claims Are Typical of Those of the Class

For the Settlement Class, Plaintiff's claims are typical of the claims of the Settlement Class Members.  The heart of the inquiry is whether the representative's claims and the class claims are interrelated so that class treatment is economical.  *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147 (1982).  Plaintiff alleges that Defendants engaged in a uniform course of conduct by virtue of its application of standard fees and charges and that Defendants assessed those fees and charges without regard to the particular fuel, environmental, or administrative costs attributable to servicing each customer.  Plaintiff further alleges that the fees bore no relation to Defendants' actual costs.  Thus, the alleged injury suffered by Plaintiff is identical to those alleged to be suffered by Settlement Class Members.

### 4.      Plaintiffs Are Adequate Representatives of the Class

Rule 23(a)(4)'s adequacy of representation requirement "tests the qualifications of class counsel and the class representatives.  It also aims to root out conflicts of interest within the class to ensure that all class members are fairly represented in the negotiations."  *In re NFL Players*

11

*Concussion Injury Litig.*, 821 F.3d 410, 428 (3d Cir. 2016).  Here, Plaintiff does not have any interests antagonistic to other class members and has retained lawyers who are qualified and experienced and have committed the necessary resources to investigating, pursuing, and independently evaluating the claims against the Defendants, thus satisfying Rule 23(a)(4).

### 5.  Common Legal and Factual Questions Predominate

This case is certifiable under Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members." The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).  Courts are "more inclined to find the predominance test met in the settlement context." *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 304 n.29 (3d Cir. 2011).  Here, the claims of Plaintiff and the Settlement Class Members arise from Defendants' alleged practice of charging fees without regard to the fuel or environmental costs attributable to each customer, which Plaintiff alleges constitutes a violation of their contractual agreements with Plaintiff and the Settlement Class Members.  Accordingly, the claims addressed in the Settlement arise from a common nucleus of operative facts and involve questions of law common to all Settlement Class Members.

### 6.  A Class Action Is The Superior Means to Adjudicate Plaintiff's and Class Members' Claims

Rule 23(b)(3)'s superiority is essentially satisfied by the proposed Settlement itself.  As explained in *Amchem*, "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems for the proposal is that there be no trial." 521 U.S. at 620 (citing FED. R. CIV. P. 23(b)(3)(D)). Thus, any manageability problems that may have existed here are eliminated by the Settlement.

12

*In re Viropharma Inc. Sec. Litig.*, No. CV 12-2714, 2016 WL 312108, at *8 (E.D. Pa. Jan. 25, 2016) (finding class action superior as all class members were "complaining of the same behavior by Defendants" and "[t]he alternative would produce individual suits throughout the country, redundantly wasting judicial resources to litigate the same claims over and over").  Moreover, given the costs and expense of pursuing individual actions and the relatively small amounts at stake in a typical Settlement Class Member's claim, any interest in individually controlling the prosecution of separate actions is minimal.

**B.    The Proposed Settlement Is Fair, Reasonable, And Adequate**

**1.    Plaintiff and Coren & Ress, P.C. Adequately Represented the Class And Negotiated An Arm's Length Settlement**

The first two factors for the Court's consideration under Rule 23(e)(2) are the adequacy of representation for the class and the arm's-length nature of the settlement negotiations.  Here, the Settlement is fair because it was the result of arm's length negotiations by experienced counsel, overseen by a highly respected mediator who specializes in the settlement of class actions, and the settling parties had a full understanding of the merits of the case.

First, Settlement Class Representative and Class Counsel have more than adequately represented the Settlement Class as required by Rule 23(e)(2)(A) by diligently and zealously prosecuting this action on behalf of the Settlement Class, including, among other things: defeating Defendants' efforts to dismiss the case while it was pending in state court, conducting significant discovery in state court, expanding the scope of their claims to a statewide class based on that discovery, conducting significant jurisdictional discovery after the case was removed to federal court (much of which necessarily overlaps with class action and merits issues), reviewing the *JWS* and *Bach* docket entries, reviewing sixteen depositions taken in the *JWS* and *Bach* matters, and

13

conducting tailored searches of a 3.3 million page electronic database made available by Defendants prior to mediation. BMM Dec. at ¶ 26.

Accordingly, "'counsel had an adequate appreciation of the merits of the case before negotiating'" the Settlement. *Warfarin*, 391 F.3d at 537; *see also Girsh* Factor #3. Given the foregoing, Class Counsel knew how witnesses would testify and what hurdles would need to be overcome at trial. This, combined with Class Counsel's experience, was more than sufficient to evaluate the relative strengths and weaknesses of this case. Bringing this experience and knowledge to bear, Class Counsel believes that the Settlement is fair, reasonable, and in the best interests of the Settlement Class. BMM Dec. at ¶ 31. Courts recognize that counsel's judgment is entitled to considerable weight in this context. *Viropharma*, 2016 WL 312108, at *11 ("[W]hen the settlement results from arm's-length negotiations, the Court 'affords considerable weight to the views of experienced counsel regarding the merits of the settlement.'"); *In re Nat'l Football League Players' Concussion Inj. Litig.*, 307 F.R.D. 351, 387 (E.D. Pa. 2015) ("'[A] presumption of correctness is said to attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery.'"); *Alves v. Main*, No. 01-789 (DMC), 2012 WL 6043272, at *22 (D.N.J. Dec. 4, 2012) ("[C]ourts in this Circuit traditionally 'attribute significant weight to the belief of experienced counsel that settlement is in the best interest of the class.'").

Second, Rule 23(e)(2)(B)'s evaluation of whether the Settlement was negotiated at arm's length is readily met here. Before attending a full day mediation session before Judge Denlow, the parties engaged in preliminary negotiations, exchanged mediation statements, and completed Judge Denlow's class action checklist. BMM Dec. at ¶ 27. The negotiations were vigorous and

adversarial, and the Defendants were represented by highly sophisticated counsel. *Id.* After these lengthy settlement talks, the parties ultimately agreed to the settlement, which provides for a substantial $2.2 million payment. *Id.* The mediator's direct participation further ensures that negotiations were non-collusive and conducted at arm's-length. *Bredbenner v. Liberty Travel, Inc.*, No. 09-905 (MF), 2011 WL1344745, at *10 (D.N.J. Apr. 8, 2011) ("Participation of an independent mediator in settlement negotiations 'virtually insures that the negotiations were conducted at arm's length and without collusion between the parties.'").

### 2.   The Benefits Under the Settlement Are More Than Adequate

Rule 23(e) identifies four factors for the court to consider when determining whether the relief provided under a proposed settlement is adequate: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3). The proposed Settlement meets these criteria and is therefore adequate.

### (a)   The costs, risks, and delay of trial and appeal

A settlement is favored where "continuing litigation through trial would have required additional discovery, extensive pretrial motions addressing complex factual and legal questions and ultimately a complicated, lengthy trial." *Warfarin*, 391 F.3d at 536. This case was filed over nine years ago, and the proposed class undoubtedly faces many risks before ultimate resolution, including those posed at the class certification, summary judgment, and trial stages. Moreover, inevitable appeals would significantly lengthen the time until any Settlement Class member

received recovery, all factors which weigh in favor of settlement approval. *See In re Ins. Brokerage Antitrust Litig.*, 282 F.R.D. 92, 103 (D.N.J. 2012).

The recovery is fair, reasonable, and adequate considering the substantial risks of continued litigation, which include numerous potentially dispositive arguments advanced by Defendants. BMM Dec. at ¶ 28.  Defendants deny all liability for the claims and, without the Settlement, would vigorously defend both class certification and the merits.  *Id.*  Discovery produced in this matter and adduced in the *Bach* and *JWG* matters revealed detailed information regarding Defendants' business practices which could pose significant challenges to Plaintiff's ability to succeed on her claims individually and on a class-wide basis, including: (1) Defendants' position that they were transparent as to the fees at issue; (2) Defendants' position that they negotiated individualized terms with their customers defeating both class and merits arguments; (3) Defendants' substantive affirmative defenses of ratification, estoppel, waiver, laches, and statute of limitations; and  (4) Defendants' affirmative defenses that class certification criteria cannot be met and prerequisites to a class action do not exist.  *Id.*; *see also* ECF No. 70.  In short, Plaintiff would have had to overcome numerous hurdles to achieve a litigated verdict against Defendants.  BMM Dec. at ¶ 29.  Whatever the outcome at trial, it was virtually certain that an appeal would be taken.  *Id.*  All of the foregoing would have posed considerable expense to the parties and would have delayed any potential recovery for several years, if one was even achieved.  *Id.*

The risk of obtaining and maintaining class certification through trial also supports approval of the Settlement.  Plaintiff had not yet moved for class certification at the time of the Settlement and, absent the Settlement there would have been a contested motion for class certification.  *Id.* at 30.  While Class Counsel believe that the requirements for Rule 23 are satisfied

16

in this case and would vigorously argue for class certification, Defendants would have opposed the motion.  *Id.*  The process would have added time and expense to the proceedings, and the outcome of such a contested motion is far from certain.  *Id.*  Moreover, even if the class was certified for other than settlement purposes, "[t]here will always be a 'risk' or possibility of decertification, and consequently the court can always claim this factor weighs in favor of settlement."  *In re Prudential Ins. Co. Am. Sales Prac. Litig.*, 148 F.3d 283, 321 (3d Cir. 1998).

Class Counsel believes that this is a favorable outcome for the class as it secures an immediate significant benefit in light of the expected difficulties in proving liability based on the discovery reviewed to date and the hurdles which remain to establishing liability, damages, and class certification in the future.  *See Girsh* Factors 1, 4-6; BMM Dec. at ¶ 31.  The "fact that [defendants] could afford to pay more does not mean that [they are] obligated to pay any more than what the [] class members are entitled to under the theories of liability that existed at the time the settlement was reached."  *Warfarin*, 391 F.3d at 538; *see also In re Schering-Plough Corp. Sec. Litig.*, No. 01 Civ. 0829, 2009 WL 5218066, at *5 (D.N.J. Dec. 31, 2009) ("pushing for more in the face of risks and delay would not be in the interests of the class"); *Girsh* Factor 7.  Here, while Defendants arguably could afford to pay more, Plaintiffs respectfully submit that this should not be viewed with much significance in light of the other factors supporting approval of the Settlement.  Thus, whereas here, there is a real and substantial risk that Plaintiffs would not prevail on the merits, the sizable recovery indicates that the Settlement is fair and reasonable to the class. *See Alves*, 2012 WL 6043272, at *21 (finding settlement approval was warranted as the recovery provides immediate benefits and "continued litigation involves considerable risk").

Given these risks, the negotiated Settlement payment of $2.2 million is more than reasonable.  This amount represents over 30% of the total of the $7,289,273.66 in cost recovery fees collected from Settlement Class Members by Defendants during the class period, BMM Dec. at ¶ 33, which compares favorably with class settlements approved in other cases.  *See, e.g., Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 144 (E.D. Pa. 2000) (approving settlement providing for 17% of the potential recovery); *Vista Healthplan, Inc. v. Cephalon, Inc.*, 2020 WL 1922902, *21 (E.D. Pa. Apr. 21, 2020) (approving settlement providing for 11.5% of potential recovery); *Kao v. CardConnect Corp.*, No. 16-CV-5707, 2021 WL 698173, at *7 (E.D. Pa. Feb. 23, 2021) (approving settlement providing for 29% of damages estimate); *see also Girsh* Factors 7, 8, and 9.

### (b)     The effectiveness of any proposed method of distribution

*See* Section IV, *supra*, and Section V.C, *infra*.

### (c) The proposed award of attorneys' fees, including timing of payment

The Preliminary Approval Order provides that Class Counsel shall apply to this Court for an award of attorneys' fees and expenses by June 26, 2023.  Class Counsel intends to  request attorneys' fees not to exceed one-third of the settlement amount plus expenses actually incurred, following court approval and after any settlement becomes final.  *See, e.g., Wood v. Amerihealth Caritas Servs., LLC*, 2020 WL 1694549, *9 (E.D. Pa. Apr. 7, 2020) (awarding one-third and collecting cases awarding at or near one-third); *Stevens v. SEI Investments Co.*, 2020 WL 996418, *12 (E.D. Pa. Feb. 28, 2020) (noting courts often award one-third of settlement amount).

### (d) Any agreement required to be identified under Rule 23(e)(3).

There are no agreements between the parties other than the Settlement Agreement.

### 3.     The Settlement Treats Class Members Equitably

18

All Settlement Class Members are treated equitably under the terms of the Settlement, which provides that each Settlement Class Member who does not opt out will receive a pro rata share of the monetary relief based on the terms of the Distribution Process.

### 4.    No Objections Have Been Received to Date

Because no objections or opt outs have been received to date, *Girsh* Factor #2 weighs in favor of final approval.  Any objections or opt outs received by the Preliminary Approval Order's July 20, 2023 deadline will be addressed by August 3, 2023 per the Preliminary Approval Order.

### C.    The Plan of Allocation Is Fair, Reasonable, and Adequate

Articles V, VI, and X of the Settlement Agreement set forth a plan for allocation and payment of the $2,200,000 in Settlement Funds (the "Plan of Allocation").  "Approval of a plan of allocation of a settlement fund in a class action is governed by the same standards of review applicable to approval of the settlement as a whole: the distribution plan must be fair, reasonable and adequate."  *In re Ikon Off. Sols., Inc., Sec. Litig.*, 194 F.R.D. 166, 184 (E.D. Pa. 2000) (quotation marks and citation omitted).  "In evaluating a plan of allocation, the opinion of qualified counsel is entitled to significant respect.  The proposed allocation need not meet standards of scientific precision, and given that qualified counsel endorses the proposed allocation, the allocation need only have a reasonable and rational basis."  *Boyd v. Coventry Health Care Inc.*, No. DKC09-2661, 2014 WL 359567 (D. Md. Jan. 31, 2014) (formatting and citation omitted).

Here, the Plan of Allocation is simple – after accounting for any Court-approved notice and administration costs, attorneys' fees and expenses, and an incentive award (which will be detailed further in a fee motion to be filed by June 26, 2023) – the Settlement Class Members will be allocated a payment amount based on the pro rata share of total fees each of them paid during

the class period.[5]  Checks based on this calculation will be mailed to each of the Settlement Class Members and, if not cashed or returned within 60 days, the Settlement Benefits Administrator will mail a second round of checks after skip tracing.  If there remain uncashed checks after the second round, the total uncashed funds will be pooled and distributed on a pro rata basis in a third round to those Settlement Class Members which cashed their checks.  In the unlikely event that there are any funds allocated to the Settlement Class Members remaining after this process, those funds will be donated to The Pennsylvania Small Business Development Centers (https://www.pasbdc.org/), a nationally accredited program that provides training, resources, and other services to entrepreneurs looking to start or grow their small businesses.  Attorneys' fees and litigation expenses will not be distributed until payment to the Settlement Class Members has concluded.

Class Counsel submits that the Plan of Allocation fairly and rationally allocates the proceeds of the Settlement Fund based on the alleged losses suffered as a result of the conduct alleged in the Complaint.  Moreover, to date, there have been no objections to the proposed Plan of Allocation.  Accordingly, the Plan of Allocation is fair and reasonable, and should be approved.

## V.    CONCLUSION

In light of the foregoing facts and authorities, Plaintiff respectfully submits that the Settlement meets the standard for final approval under Rule 23.  Accordingly, Plaintiff seeks an Order granting this motion and: (1) approving the class action Settlement and Plan of Allocation; (2) certifying the Settlement Class; (3) appointing Plaintiff as Class Representative and Coren & Ress, P.C. as Class Counsel; and (4) finding that the Notice program was fair and adequate.

---

[5] Settlement Class Members who have already been credited back the full amount of fees during the class period will receive a check for $25.00.

Dated: June 15, 2023                    /s/ Andrew J. Belli

Benjamin M. Mather, Esq.
Andrew J. Belli, Esq.
**COREN & RESS, P.C.**
Two Commerce Square
2001 Market Street, Suite 3900
Philadelphia, PA 19103
Phone: (215) 735-8700
Fax: (215) 735-5170
bmather@kcr-law.com
abelli@kcr-law.com
*Attorneys for Plaintiff*

21