**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ANNE FLACCUS,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ADVANCED DISPOSAL SERVICES EASTERN PA, INC. f/k/a ADVANCED DISPOSAL SERVICES SHIPPENSBURG, LLC; and ADVANCED DISPOSAL SERVICES SOUTH, LLC f/k/a ADVANCED DISPOSAL SERVICES, INC.<br><br>　　　　Defendants. | Civil Action No. 2:17-cv-04808-MAK |

## <u>DECLARATION OF BENJAMIN M. MATHER</u>

1.　　　I am a partner of the law firm Coren & Ress, P.C., counsel for Plaintiff Anne Flaccus in the above-captioned matter.  I am admitted to practice before this Court and have personal knowledge of the various matters set forth herein based on my day-to-day participation in the prosecution and settlement of this Action, my review of the various filings and discovery documents submitted in this action, and my discussions with Deborah R. Gross, Esquire, who originally represented Plaintiff this Action.  I submit this Declaration in support of Plaintiff's Motion for Final Approval of the Settlement.[1]

## <u>BACKGROUND</u>

2.　　　This long-litigated matter has an extensive procedural history, which helped provide the Settling Parties with an extensive understanding of the pertinent issues when negotiating and agreeing to the Settlement.  This action involves Plaintiff's allegation that

---

[1]　　　Unless otherwise defined, capitalized terms herein have the same meaning as set forth in the Settlement Agreement, attached hereto as Exhibit A.

Defendants violated Pennsylvania law by improperly charging and collecting fuel surcharges, environmental fees, and administrative fees for their waste collection services.

3.     The action was originally filed on April 23, 2014 in Pennsylvania state court, where litigation proceeded primarily against Advanced Disposal Services Shippensburg, LLC, which eventually became current Defendant Advanced Disposal Services Eastern PA, Inc. ("ADSEPA").

4.     The putative class as asserted in the original Complaint sought to certify a single class limited to customers in Chester County, Pennsylvania only.

5.     Defendants filed multiple sets of preliminary objections raising, inter alia, issues which were deferred by the Chester County court to the class certification stage and which Defendants have continued to assert are significant impediments to the Plaintiff's case.

6.     While in state court, the parties engaged in significant discovery which included ADSEPA's issuance of a request for production, interrogatories, and requests for admission to Plaintiff, Plaintiff's issuance of numerous requests for production to ADSEPA, and the parties' respective responses thereto.

7.     In or around the Summer of 2017, after considering the discovery produced by ADSEPA, Plaintiff's counsel expanded the scope of the case to include customers of any Advanced Disposal entity in the entirety of Pennsylvania.  Accordingly, on September 27, 2017, undersigned counsel filed a Second Amended Complaint which added Advanced Disposal Services, Inc. ("ADSI"), the then parent of the Advanced Disposal family of companies, as a defendant and asserted putative statewide classes substantially similar to those asserted in the currently operative complaint.

8.     On October 24, 2017, with the amended complaint bringing this matter within the ambit of the Class Action Fairness Act, Defendants filed a notice of removal to the Eastern District of Pennsylvania, ECF No. 1.  ADSI subsequently moved to dismiss due to a purported lack of personal jurisdiction, ECF No. 7, and Plaintiff responded by filing the currently operative Third Amended Complaint, ECF No. 11, which added Advanced Disposal Services South, LLC ("ADSS") as a defendant.

9.     ADSI and ADSS then each filed motions to dismiss due to a purported lack of personal jurisdiction, ECF Nos. 15 & 17, which were denied without prejudice, with the Court ordering the parties to conduct jurisdictional discovery, ECF Nos. 27 & 31.  Extensive jurisdictional discovery was conducted from June 28, 2018 until November 4, 2018, which included Defendants' production of thousands of pages of documents and three depositions of Advanced Disposal personnel.  Much of the jurisdictional discovery necessarily overlapped with class certification and merits issues, and provided Class Counsel with a firm basis for evaluating the strength of the allegations made in the Third Amended Complaint and the scope of potential damages.

10.    On December 4, 2018, ADSI and ADSS each filed motions for summary judgment on the issue of personal jurisdiction, ECF Nos. 33 & 34, and, on December 23, 2019, the Court issued an order and opinion denying ADSS's motion but granting ADSI's motion with prejudice, ECF Nos. 39 & 40.  Plaintiff believes that the dismissal of ADSI was erroneous and accordingly moved for reconsideration on January 6, 2020, ECF No. 41.  The reconsideration motion was denied on October 8, 2020, ECF Nos. 46 & 47, after which Plaintiff began diligently pursuing additional discovery.

11.     In April 2019, while Defendants' jurisdictional motions were pending, Waste Management, Inc. announced that it had reached a deal to acquire ADSI and its subsidiaries for approximately $4.9 billion.  The acquisition prompted a dialogue and exchange of information between undersigned counsel and defense counsel which resulted in the agreement to request that the Court put the case into suspense to allow for defense counsel to coordinate its litigation strategy with Defendants' new owner, to be followed by mutually agreed mediation.  That request was granted on September 1, 2021.  ECF No. 49.  Between September 2021 and November 2022, amidst the Covid-19 Pandemic and Waste Management's post-acquisition transition activities, counsel continued their exchange of information and informal settlement discussions.

12.     Both during and prior to this time period, Plaintiff's counsel derived significant benefit from review of documents filed in two cases previously litigated against Defendants and/or their affiliates that involved fees and issues substantially similar to those addressed in the instant matter: *JWG Incorporated, et al., v Advanced Disposal Services Jacksonville, L.L.C. et al.*, Duval County Florida No. 16-2011-CA-005641 ("*JWG*") and *Bach Enterprises, Inc., et al. v. Advanced Disposal Services South, Inc., et al.*, Barbour County Alabama No. 69-cv-2013-900090.00 ("*Bach*").  The docket entries from these cases are publicly available and gave Plaintiff's counsel a preview of defense counsel's likely strategy in the instant Action.

13.     These parties' discussions culminated in the retention of the Hon. Morton Denlow (Ret.) of JAMS ADR, a nationally respected mediator of class actions.  As set forth in his JAMS biography, *see* Exhibit B hereto, "Judge Denlow joined JAMS in October 2012 following 16 1/2 years of distinguished service as a Magistrate Judge for the United States District Court for the Northern District of Illinois. . . .  Judge Denlow is known as a creative problem solver who will

not rest until a case is settled. During his first ten years at JAMS, he achieved settlements totaling approximately $1.7 billion, including almost 300 settlements of $1 million or more. He has mediated more than 800 disputes since joining JAMS, including more than 250 class action lawsuits."

14.     In advance of a full day mediation session, which took place on January 17, 2023, the parties were in constant communication about the information Plaintiff would need to make an informed decision as to settlement.  These communications resulted in Defendants providing Plaintiff with significant factual information, including the production of 3.3 million pages of documents in an electronic searchable database along with the transcripts and exhibits from sixteen depositions taken in the *JWG* and *Bach* matters.  Given the overlap between the issues addressed in *JWG* and *Bach* and the claims advanced in the instant matter, the deposition transcripts were an invaluable resource to Plaintiffs, as they featured skilled plaintiffs' counsel examining Defendants' representatives as to issues identical to those presented in the instant action.

15.     Judge Denlow held preliminary discussions and guided the parties through his class action checklist, which is a tool he developed to ensure that class action parties appreciate all issues which bear on the mediation and settlement of a putative class action.  After a full day of hotly contested negotiations, the parties reached the Settlement described herein.

## THE SETTLEMENT

16.     The Settlement Agreement attached hereto as Exhibit A contains the full terms of the Settlement.  There are no agreements between the parties other than the settlement agreement.

17.     In the Settlement Agreement, the Settlement Class is defined as all Advanced

Disposal commercial customers in Pennsylvania who paid one or more of a fuel surcharge,

environmental fee, or administrative fee, to Advanced Disposal from October 1, 2012 to

September 12, 2018.  Excluded from the class are: (1)  all customers who signed a written

contract that included an arbitration clause and class action waiver; (2) the district and magistrate

judges presiding over this case; (3) the judges of the Third Circuit; (4) the immediate families of

the preceding person(s); (5) any Released Party; (6) any Settlement Class Member who timely

opts out of this Action; and (7) Class Counsel, their employees, and their immediate families.

18.     As part of the Settlement, subject to Court approval, Defendants have agreed to

pay $2,200,000.00 million to the class members in cash benefits, legal fees and expenses, a

$15,000.00 incentive award to Plaintiff, and settlement administration costs as part of a claims

procedure that that allows the Settlement Class to be reimbursed a pro rata portion of the fuel

surcharges, environmental charges, and administrative fees they paid during the class period.

Moreover, Defendants have agreed to the forgiveness of a total of $565,345.60 in debt

purportedly owed by certain class members.

19.     In return for the benefits described above, the Settlement Class Members will

release all claims, rights, causes of action, liabilities, or other obligations (other than obligations

imposed by the Settlement Agreement) of any kind, whether known or unknown, that were

asserted in the Action, or that could have been asserted in the Action based on the facts alleged

in all complaints filed in this action.

## CLASS COUNSEL QUALIFICATIONS

20.     The action was originally filed by Deborah R. Gross, Esquire of the Law Offices

of Bernard M. Gross, P.C.  In or around December 2015, Attorney Gross joined the law firm of

Kaufman, Coren, & Ress, P.C. (now known as Coren & Ress, P.C.), at which time myself and Andrew J. Belli, Esquire joined Attorney Gross as counsel for Plaintiff.  Attorney Gross remained actively involved in this matter until July 2020, when she left private practice to accept a position as President & CEO of Pennsylvanians for Modern Courts.

21.     Attorney Gross has over 35 years' experience in private legal practice in federal and state court concentrating on complex commercial litigation.  She was Chancellor of the Philadelphia Bar Association in 2017, and also served as President of the Philadelphia Bar Foundation in 2013 and 2014, and as a Trustee of the Foundation from 2004-2020.  Attorney Gross has served on the boards of many organizations such as Drexel's Kline School of Law, the Public Interest Law Center, Philly VIP, Temple Adath Israel of the Main Line, Women's Philanthropy of Jewish Federation and is active in many other organizations.  Attorney Gross received her J.D. from Boston University School of Law and her B.S. in Economics from the Wharton School of the University of Pennsylvania.

22.     I have extensive experience handling all types of complex commercial disputes in both federal and state court.  Before joining Coren & Ress, P.C., I was a Deputy City Solicitor  in the Philadelphia Law Department.  While in that role, I was Philadelphia's lead attorney on many of its most complex and high-profile cases.  Before working for the Philadelphia Law Department, I was an associate in the Commercial Litigation group of Pepper Hamilton, LLP.  I am admitted to the Bar of the Commonwealth of Pennsylvania and the United States District Court for the Eastern District of Pennsylvania.

23.     Following his graduation magna cum laude from Temple University School of Law, Attorney Belli served as a law clerk for the Honorable Franklin S. Van Antwerpen of the United States Court of Appeals for the Third Circuit.  Afterwards, Attorney Belli gained

significant litigation experience as an attorney at the City of Philadelphia Law Department,

where he represented the City in a number of matters, including contract and bid disputes,

construction litigation, real estate litigation, Section 1983 litigation, and attacks on the authority

of City officials.  Immediately before joining Coren & Ress, P.C., Attorney Belli was an

associate of Pepper Hamilton LLP, where he focused on antitrust matters, class actions, and

complex commercial litigation.  Attorney Belli is admitted to the Bars of the Commonwealth of

Pennsylvania and the State of New Jersey, the United States District Courts for the Eastern

District of Pennsylvania and the District of New Jersey, and the United States Court of Appeals

for the Third Circuit.

24.     Attorneys Mather and Belli, along with Attorney Gross and the other attorneys at

Coren & Ress, P.C. have extensive experience in complex litigation and have been actively

involved in vigorously prosecuting the claims on behalf of the Settlement Class.

25.     The firm resume of Coren & Ress, P.C. (f/k/a Kaufman, Coren & Ress, P.C.) is

attached hereto as Exhibit C.

### THE SETTLEMENT SHOULD BE APPROVED

26.     Settlement Class Representative and Class Counsel have more than adequately

represented the Settlement Class as required by Rule 23(e)(2)(A) by diligently and zealously

prosecuting this action on behalf of the Settlement Class, including, among other things:

defeating Defendants' efforts to dismiss the case while it was pending in state court, conducting

significant discovery in state court, expanding the scope of their claims to a statewide class based

on that discovery, conducting significant jurisdictional discovery after the case was removed to

federal court (much of which necessarily overlaps with class action and merits issues), reviewing

the *JWS* and *Bach* docket entries, reviewing sixteen depositions taken in the *JWS* and *Bach*

matters, and conducting tailored searches of a 3.3 million page electronic database made available by Defendants prior to mediation.

27.     Rule 23(e)(2)(B)'s evaluation of whether the Settlement was negotiated at arm's length is readily met here.  Before attending a full day mediation session before Judge Denlow, the parties engaged in preliminary negotiations, exchanged mediation statements, and completed Judge Denlow's class action checklist.  The negotiations were vigorous and adversarial, and the Defendants were represented by highly sophisticated counsel.  After these lengthy settlement talks, the parties ultimately agreed to the settlement, which provides for a substantial $2.2 million payment.

28.     The recovery is fair, reasonable, and adequate considering the substantial risks of continued litigation, which would require Plaintiff to defeat numerous potentially dispositive arguments advanced by Defendants.  Defendants deny all wrongdoing and liability for the claims alleged and, in the absence of the Settlement, would vigorously defend both the certification of a litigation class and the claims on the merits.  Filings and discovery produced in this matter and adduced in the *Bach* and *JWG* matters revealed detailed information regarding Defendants' business practices which, if successfully argued by Defendants, could pose significant challenges to Plaintiff's ability to succeed on her claims individually and on a class-wide basis, including: (1) Defendants' position that they transparently described the imposition of the fees at issue; (2) Defendants' position that they negotiated individualized terms with their customers defeating both class and merits arguments; (3) Defendants' substantive affirmative defenses of ratification, estoppel, waiver, laches, and statute of limitations; and  (4) Defendants' affirmative defenses that class certification criteria cannot be met and prerequisites to a class action do not exist.  *See* ECF No. 70.

29.     In short, Plaintiff would have had to overcome numerous hurdles to achieve a litigated verdict against Defendants.  Whatever the outcome at trial, it was virtually certain that an appeal would have been taken.  All of the foregoing would have posed considerable expense to the parties and would have delayed any potential recovery for several years, if one was even achieved.

30.     The risk of obtaining and maintaining class certification through trial also supports approval of the Settlement.  Plaintiff had not yet moved for class certification at the time of the Settlement and, absent the Settlement there would have been a contested motion for class certification.  While Class Counsel believe that the requirements for Rule 23 are satisfied in this case and would vigorously argue for class certification, Defendants would have opposed the motion.  The process would have added time and expense to the proceedings, and the outcome of such a contested motion is far from certain.

31.     Accordingly, Class Counsel are of the opinion that the proposed Settlement in this case is eminently fair, adequate, and reasonable so as to satisfy the requirements for final approval.  The Settlement is a favorable outcome for the class as it secures an immediate significant benefit in light of the expected difficulties in proving liability based on the discovery reviewed to date and the hurdles which remain to establishing liability, damages, and class certification in the future.  Given that there is a real and substantial risk that Plaintiff would not prevail on the merits, the sizable recovery indicates that the Settlement is fair and reasonable to the class.

32.     Based on our review of the discovery produced in this matter and as further set forth in the declarations of Samantha Jean Daley and Beth Ann Schweiner, attached to Defendants' Notice of Filing Evidentiary Materials In Support of Preliminary Approval of Class

Settlement (ECF No. 80), I believe Defendants' records contain the information needed to determine which of their customers meet the objective criteria for inclusion in the Settlement Class, such that the members of the Settlement Class are readily ascertainable.

33.     The Daley and Schweiner declarations establish that the Settlement Class Members are readily identifiable from Defendants' TRUX database, and that there are 12,224 Settlement Class Members who paid a total of $7,289,273.66 in fuel surcharges, environmental fees, and administrative fees from October 1, 2012 to September 12, 2018.

34.     Among other things, the Settlement requires Defendants to make a payment of $2.2 million, which will be used to provide a cash payment to the 12,224 Settlement Class Members, the costs of notice and administration, attorneys' fees and expenses, and an incentive award to Plaintiff.  Given the many litigation risks, the negotiated Settlement payment of $2.2 million is more than reasonable.  This amount represents over 30% of the total of $7,289,273.66 in cost recovery fees collected from Settlement Class Members by Defendants during the class period.

35.     As set forth in further detail in the Declaration of Rik S. Tozzi, attached hereto as Exhibit F, Defendants have confirmed the delivery of CAFA Notices under 28 U.S.C. § 1715(b) via certified mail to the Pennsylvania Office of Attorney General and the United States Attorney General, and neither recipient has responded thereto.

36.     The Court has preliminarily approved KCC Class Action Services LLC ("KCC") to serve as the settlement administrator.  As set forth in detail in the Declaration of Christie K. Reed, attached hereto as Exhibit D, KCC has extensive experience successfully administering class action settlements.  Settlement Class Members which do not opt out will automatically receive payments from the Settlement.

37.     Pursuant to the Preliminary Approval Order, the Parties have overseen KCC's issuance of the Court-approved notice procedures, as described further herein in the Declaration of Vanessa Santacruz, attached hereto as Exhibit E.

38.     Plaintiff will address the Settlement Agreement's provisions for attorneys' fees and expenses and an incentive award in a fee motion to be filed by June 26, 2023 in accordance with the Preliminary Approval Order (ECF No. 85).

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 15th day of June 2023.

/s/ Benjamin M. Mather
Benjamin M. Mather