**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ANNE FLACCUS,<br><br>   Plaintiff,<br><br>  v.<br><br>ADVANCED DISPOSAL SERVICES EASTERN PA, INC. f/k/a ADVANCED DISPOSAL SERVICES SHIPPENSBURG, LLC; and ADVANCED DISPOSAL SERVICES SOUTH, LLC f/k/a ADVANCED DISPOSAL SERVICES, INC.<br><br>   Defendants. | Civil Action No. 2:17-cv-04808-MAK |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION**
**FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSMENT**
**OF EXPENSES, AND A CLASS REPRESENTATIVE CASE CONTRIBUTION AWARD**

Benjamin M. Mather, Esq.
Andrew J. Belli, Esq.
**COREN & RESS, P.C.**
Two Commerce Square
2001 Market Street, Suite 3900
Philadelphia, PA 19103
Phone: (215) 735-8700
bmather@kcr-law.com
abelli@kcr-law.com

*Attorneys for Plaintiff*

### TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ iii

I.   PRELIMINARY STATEMENT .................................................................................1

II.  PROCEDURAL AND FACTUAL BACKGROUND ..................................................2

    A.  The Genesis of Gross Law and C&R's Engagement In This Matter................................2

    B.  Class Counsel Is Eminently Qualified And Their Efforts Benefitted the Class ...............3

    C.  The Settlement Agreement and Preliminary Approval Order ...........................................3

    D.  Gross Law and C&R Devoted Significant Time to This Matter ......................................4

    E.  Gross Law and C&R's Litigation Expenses ...................................................................5

III. CLASS COUNSEL'S ATTORNEYS' FEE REQUEST SHOULD BE APPROVED AS
    FAIR AND REASONABLE....................................................................................6

    A.  Standard of Review.......................................................................................................6

    B.  The Requested Attorneys' Fees Are Reasonable Under the Percentage-of-Recovery
       Method........................................................................................................................8

        1.  The Size of the Fund Created and Number of Beneficiaries .........................................9

        2.  The Class's Reaction to the Settlement and Fees ......................................................10

        3.  Counsel's Skill and Efficiency..................................................................................10

        4.  The Complexity and Duration of the Litigation .........................................................10

        5.  The Risk of Nonpayment Supports Approval of the Fee Request..............................11

        6.  Class Counsel Devoted A Significant Amount of Time and Effort to this Matter ......12

        7.  The Requested Fee Is Consistent With That Awarded In Actions of this Nature .......12

        8.  The Value of Benefits Attributable to the Efforts of Class Counsel...........................12

        9.  The Percentage Fee That Would Have Been Negotiated Under A Private
           Contingent Fee Agreement .....................................................................................13

        10.  Innovative Terms of Settlement...............................................................................13

    C.  A Lodestar Cross-Check Confirms That The Fee Requested Is Reasonable...................14

    D.  Class Counsel Should Be Permitted to Distribute Any Fee Award Consistent With C&R's Agreement With Attorney Gross and Attorney Gross's Agreement With Attorney Katz .................................................................................................16

IV.  CLASS COUNSEL'S EXPENSES ARE REASONABLE....................................................18

V.  AN INCENTIVE AWARD IS JUSTIFIED HERE ...............................................................19

VI.  CONCLUSION......................................................................................................................20

## TABLE OF AUTHORITIES

**Cases**

*Abrams v. Lightolier, Inc.*, 50 F.3d 1204 (3d Cir. 1995) ............................................................ 19

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980).......................................................................... 6

*Chakejian v. Equifax Info. Servs., LLC*, 275 F.R.D. 201 (E.D. Pa. 2011).................................... 20

*City of Scranton v. Davis*, No. CV 3:16-1727, 2018 WL 3126443 (M.D. Pa. June 26, 2018)..... 15

*Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136 (E.D. Pa. 2000) .................................................. 8

*Dakota Med., Inc. v. RehabCare Grp.*, Inc., 2017 WL 4180497 (E.D. Cal. Sept. 21, 2017) ....... 18

*Earley v. JMK Assocs.*, No. CV 18-760, 2020 WL 1875535 (E.D. Pa. Apr. 15, 2020) ............... 15

*Francis J. Bernhardt, III, P.C. v. Needleman*, 705 A.2d 875 (Pa. Super. 1997) ......................... 17

*Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190 (3d Cir. 2000)................................................. 7

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) .................................................................................. 9

*In re AT&T Corp.*, 455 F.3d 160 (3d Cir. 2006)................................................................... *passim*

*In re Diet Drugs*, 582 F.3d 524 (3d Cir. 2009).................................................................... *passim*

*In re Hemispherx Biopharma, Inc., Sec. Litig.*, No. CV 09-5262, 2011 WL 13380384
    (E.D. Pa. Feb. 14, 2011) ...................................................................................................... 19

*In re Ikon Office Sols., Inc., Sec. Litig.*, 194 F.R.D. 166 (E.D. Pa. 2000) ........................... *passim*

*In re Linerboard Antitrust Litig.*, MDL 1261, 2004 WL 1221350 (E.D. Pa. June 2, 2004)........... 9

*In re Ocean Power Techs., Inc.*, No. 3:14-CV-3799, 2016 WL 6778218
    (D.N.J. Nov. 15, 2016) ........................................................................................................ 13

*In re Processed Egg Prods. Antitrust Litig.*, No. 08-md-2002, 2012 WL 5467530
    (E.D. Pa. Nov. 9, 2012) ....................................................................................................... 13

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283
    (3d Cir. 1998) ...................................................................................................................... 9

*In re Remicade Antitrust Litig.*, No. 17-CV-04326, 2023 WL 2530418
    (E.D. Pa. Mar. 15, 2023)................................................................................................ 11, 14

*In re Rite Aid Corp. Secs. Litig.*, 396 F.3d 294 (3d Cir. 2005)............................................ *passim*

*In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72 (D.N.J. 2001) ........................ 8, 18

*In re Viropharma Inc. Sec. Litig.*, No. 12-2714, 2016 WL 312108 (E.D. Pa. Jan 25, 2016) ......... 9

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir.2004)........................................... 18

*In re Wilmington Tr. Sec. Litig.*, 2018 WL 3369674 (D. Del. July 10, 2018) ............................. 17

*In Re: Unisys Corp. Sec. Litig.*, No. 99-5333, 2001 WL 1563721 (E.D. Pa. Dec. 6, 2001).......... 8

*Jimenez v. Best Behavioral Healthcare, Inc.*, No. CV 18-1003, 2019 WL 6528766
    (E.D. Pa. Dec. 3, 2019)......................................................................................................... 15

*Kelly v. Bus. Info. Grp., Inc.*, No. CV 15-6668, 2019 WL 414915 (E.D. Pa. Feb. 1, 2019) .... 8, 20

*LeBlanc v. Texas Brine, Co., LLC*, 2022 WL 1197791 (E.D. La. Jan. 20, 2022),
   report and recommendation adopted, 2022 WL 1197789 (E.D. La. Feb. 7, 2022).................. 17

*Maldonado v. Houstoun*, 256 F.3d 181 (3d Cir. 2001).................................................................. 15

*Mayer v. Driver Solutions, Inc.*, 2012 WL 3578856 (E.D. Pa. Aug. 17, 2012)........................... 20

*McDonough v. Toys R Us, Inc.*, 80 F. Supp. 3d 626 (E.D. Pa. 2015)..................................... 17, 20

*McIntyre v. RealPage, Inc.*, No. 18-CV-03934, 2023 WL 2643201
   (E.D. Pa. Mar. 24, 2023)........................................................................................... 8, 12, 20

*O'Hern v. Vida Longevity Fund, LP*, No. CV 21-402-SRF, 2023 WL 3204044
   (D. Del. May 2, 2023)..................................................................................................... 14

*Ratner v. Bennett*, No. CIV.A. 92-4701, 1996 WL 243645 (E.D. Pa. May 8, 1996) .................... 8

*Sadowska v. Volkswagen Grp. of Am., Inc.*, 2013 WL 9576755 (C.D. Cal. Sept. 25, 2013) ....... 17

*Schuler v. Meds. Co.*, No. CV 14-1149, 2016 WL 3457218 (D.N.J. June 24, 2016) .................... 7

*Stagi v. Nat'l R.R. Passenger Corp.*, 880 F. Supp. 2d 564 (E.D. Pa. 2012)................................ 14

*Sullivan v. DB Investments, Inc.*, 667 F.3d 273 (3d Cir. 2011) ................................................ 7, 14

*Vista Healthplan, Inc. v. Cephalon, Inc.*, No. 2:06-CV-1833, 2020 WL 1922902
   (E.D. Pa. Apr. 21, 2020)................................................................................................. 20

**Other Authorities**

Pennsylvania Rule of Professional Conduct 1.5(e)....................................................................... 17

**Rules**

Federal Rule of Civil Procedure 23 ......................................................................................... 3, 6

## I.        PRELIMINARY STATEMENT

Plaintiff Anne Flaccus ("Plaintiff") brought this case to challenge purported fee overcharges concerning waste collection services rendered by Defendants.  Defendants have agreed to settle the case for the substantial sum of $2,200,000.00.  As set forth in detail in the Memorandum of Law In Support of Plaintiff's Motion for Final Approval of Class Settlement (the "FAM," ECF No. 87-1), this is an excellent result for the Settlement Class Members[1], achieved through the commitment of time and effort by the Plaintiff, as well as the hard work, skill, and persistence of Class Counsel Coren & Ress, P.C. ("Class Counsel" or "C&R"), along with Deborah Gross, Esquire, who represented Plaintiff in this matter prior to her departure from private practice (both as of counsel at C&R and while a partner at the Law Offices of Bernard M. Gross, P.C. ("Gross Law")).  In achieving this result, Class Counsel and Gross Law worked over 1680 hours through May 2023, all on a contingency basis with no guarantee of success or ever being paid.

Class Counsel accordingly requests an attorneys' fee of 33 1/3% of the Settlement Funds ($733,333.00), plus reimbursement of litigation expenses totaling $22,058.17.  This figure reflects the risk taken by Class Counsel, as well as the estimable result achieved.  When utilizing the Third Circuit's preferred method of contingency fee determination (i.e., percentage of the fund with a lodestar cross-check), it is abundantly clear that the requested fee is not only reasonable, but well within the range of fees awarded in similar contingency cases.  Further, Class Counsel respectfully requests that they be permitted, as is customary, to allocate any requested fee award as set forth

---

[1]        Unless otherwise defined, capitalized terms are defined in the Settlement Agreement, which is attached as Ex. A to the Declaration of Benjamin M. Mather ("BMM Dec."), which is being filed herewith along with the Declarations of Deborah Gross ("Gross Dec."), Barry Katz ("Katz Dec."), and Anne Flaccus ("Flaccus Dec.").

herein to Attorney Deborah Gross, who formerly represented Plaintiff, and Attorney Barry Katz, with whom Attorney Gross negotiated a referral fee.  Finally, Class Counsel requests a $15,000.00 service award for name Plaintiff Anne Flaccus.

## II.   PROCEDURAL AND FACTUAL BACKGROUND

A detailed procedural history outlining the substantive litigation history of this matter is set forth in the FAM, which is incorporated by reference herein.  The following background pertains specifically to the instant motion.

### A.   The Genesis of Gross Law and C&R's Engagement In This Matter

This matter was originally filed on April 23, 2014 in Pennsylvania state court, BMM Dec. at ¶ 3, at which time Plaintiff was represented by Attorney Gross of Gross Law, Gross Dec. at ¶ 2. While a partner at Gross Law, Attorney Gross entered into a retention letter with the Plaintiff which provides that Gross Law "will seek court approval of a requested fee of twenty-five percent (25%) of the total recovery plus reasonable disbursements."  *See* Mather Dec at ¶ 39 and Ex. G. The retention letter was not updated when Attorney Gross brought this Action from Gross Law to C&R upon her joining C&R in October 2015.  *Id.* at ¶ 39.  With the full understanding and consent of Plaintiff, *see* Flaccus Dec. at ¶ 5, and with full disclosure to the Court and the Settlement Class Members via the instant motion,[2] C&R is seeking a greater fee of 33 1/3% and submits that, as set forth further herein, that fee is reasonable and justified by Class Counsel's significant contributions to the case which have resulted in a tremendous benefit to the Settlement Class Members.  Mather Dec. at ¶ 40.  This matter was referred to Attorney Gross by Barry L. Katz, Esquire, Plaintiff's

---

[2]     The instant motion and memorandum will be posted on the settlement website (www.pafeesettlement.com).

son-in-law and personal attorney, with whom Attorney Gross verbally agreed to pay a referral fee of 20% of all attorneys' fees recovered in this action, consistent with Attorney Gross's practice throughout her career.  *See* Gross Dec. at ¶¶ 4-5.

**B.    Class Counsel Is Eminently Qualified And Their Efforts Benefitted the Class**

As set forth further herein and in the FAM, Class Counsel are compliant with Rules 23(c)(1)(B) and 23(g) in that they performed substantial work in identifying and investigating the claims in this Action, have experience in handling class actions and other complex litigation matters, utilized their thorough knowledge of applicable law to litigate this matter and negotiate a favorable Settlement, and devoted significant time and expenses on a contingency basis in furtherance of the interests of the Settlement Class Members.  *See* Mather Dec. at ¶¶ 2-25; FAM at pp. 13-18.  C&R's work materially advanced the interests of the Settlement Class Members. Indeed, while the putative class as asserted in the original Complaint filed by Gross Law sought to certify a class limited to Chester County, C&R after its independent analysis was able to expand the putative class to encompass the entirety of Pennsylvania, which significantly increased the number of class members able to benefit from the Settlement.  *See* Mather Dec. at ¶¶ 4, 7.

**C.    The Settlement Agreement and Preliminary Approval Order**

After substantial preliminary negotiations and a full day mediation session before the Hon. Morton Denlow of JAMS, the parties entered into the Settlement.   In addition to providing substantial benefits to the Settlement Class Members, the Settlement Agreement provides for the payments of attorneys' fees and litigation expenses as follows:

> Attorneys' Fees and Litigation Expenses approved by the Court shall be paid from the Settlement Funds, and from no other source. Class Counsel shall apply to the Court for an award of reasonable Attorneys' Fees and Litigation Expenses. . . . In the event the Court

3

> does not approve the award of Attorneys' Fees and Litigation Expenses requested by Class Counsel, or the Court awards Attorneys' Fees and Litigation Expenses in an amount less than that requested by Class Counsel, such decision shall not affect the validity and enforceability of the Settlement.

Mather Dec., Ex. A at ¶ V.3; *see also id.* at ¶ V.4 (providing that "Plaintiff may apply to the Court for a Settlement Class Representative Inventive payment [of $15,000.00].").

This Court preliminarily approved the Settlement in this Action on February 21, 2023 (ECF No. 85), and the Settlement Class Members were sent notice of the Settlement via US Mail. *See* Mather Dec. at Exhibit E, ¶¶ 3-6.  Both the short form notice mailed to class members and the long form notice available on the settlement website specifically disclose that Class Counsel were seeking to deduct from the Settlement Funds a maximum of $733,333 in attorneys' fees and $25,000 in expenses, and an incentive award of up to $15,000.  *Id.* at Exhibit E, ¶¶ 3, 6.

### D. Gross Law and C&R Devoted Significant Time to This Matter

An accounting of the time expended in this matter by Gross Law and C&R are attached to the Gross Dec. as Appendix 1 and the Mather Dec. as Exhibit H, reflecting tasks that are usual and customary in this type of litigation.  The accountings can be summarized as follows:

**Gross Law Professional Time From Inception Through May 31, 2023**

| Professional | Position and Years of Practice | Hours Expended | Hourly Rate | Time Value |
|---|---|---|---|---|
| Deborah R. Gross | Attorney Practicing Since 1985 | 106.00 | $750 | $79,500.00 |
| Susan R. Gross | Attorney Practicing Since 1990 | 118.00 | $525.00 | $61,950.00 |
| Tina Moukoulis | Attorney Practicing Since 1998 | 2.00 | $475 | $950.00 |
| **TOTAL** | | **226.00** | | **$142,400.00** |

4

**Coren & Ress, P.C. Professional Time From Inception Through May 31, 2023**

| Professional | Position and Years of Practice | Hours Expended | Hourly Rate | Time Value |
|---|---|---|---|---|
| Steven M. Coren | Partner Practicing Since 1980 | 0.60 | $850 | $510.00 |
| Benjamin M. Mather | Partner Practicing Since 2002 | 7.30 | $475 | $3,467.50 |
| | | 129.50 | $525 | $67,987.50 |
| | | 192.70 | $550 | $105,985.00 |
| | | 144.40 | $700 | $101,080.00 |
| Andrew J. Belli | Partner Practicing Since 2008 | 121.60 | $415 | $50,464.00 |
| | | 268.80 | $435 | $116,928.00 |
| | | 274.30 | $600 | $164,580.00 |
| David DeVito | Former Partner Practicing Since 2006 | 10.30 | $360 | $3,708.00 |
| | | 14.30 | $395 | $5,648.50 |
| | | 0.50 | $415 | $207.50 |
| Deborah R. Gross | Former Of Counsel Practicing Since 1985 | 48.80 | $750 | $36,600.00 |
| Janice Felix | Associate Practicing Since 2015 | 14.80 | $225 | $3,330.00 |
| | | 98.90 | $235 | $23,241.50 |
| | | 23.10 | $260 | $6,006.00 |
| | | 0.30 | $300 | $90.00 |
| Katherine L. Perkins | Former C&R Associate Practicing Since 2016 | 66.50 | $200 | $13,300.00 |
| Douglas Evan Ress | C&R Partner Practicing Since 1979 | 2.70 | $650 | $1,755.00 |
| Erin Mullen | C&R Paralegal | 37.70 | $85 | $3,204.50 |
| | | 1.20 | $100 | $120.00 |
| **TOTAL** | | **1458.30** | | **$708,213.00** |

Gross Law and C&R both worked on a contingency fee basis.

**E.    Gross Law and C&R's Litigation Expenses**

Gross Law and C&R incurred and paid expenses which were actual and necessary for the

prosecution of this Action, summarized as follows:

| Law Firm | Expense Category | Service Provider(s) | Total Expense |
|---|---|---|---|
| Gross Law | PACER fees | | $8.50 |
| | Copying Expenses | In House | $262.50 |

5

|  | Computer Assisted Legal Research | Lexis | $775.57 |
|  | Access to Alabama State Court Filings | Alabama Courts | $497.99 |
|  | Access to Pennsylvania State Court Filings | Pennsylvania Courts | $35.30 |
|  |  | **GROSS LAW TOTAL:** | **$1,579.86** |
| C&R | Airfare, Hotel, and Meal Expenses for AJB travel to Charlotte, NC for Depositions | American Airlines ($1075.62), Uber and Taxi Services ($117.51), Meals ($85.94) | $1,279.07 |
|  | Computer Assisted Legal Research | Westlaw | $5,661.07 |
|  | Mediator Fee | JAMS, Inc. | $10,678.83 |
|  | Postage, FedEx, and Courier Services | USPS, Federal Express | $104.46 |
|  | Access to Corporate Filings and State Court Docket Entries | Pennsylvania Bureau of Corporations, Alabama Courts, State of Delaware | $896.98 |
|  | Copying Expenses | In House | $0.40 |
|  | Court Reporting Fees | Reliable | $1,857.50 |
|  |  | **C&R Total:** | **$20,478.31** |

*See* Mather Dec. at Ex. H, pp. 47-48; Gross Dec. at App'x 2.

## III.   CLASS COUNSEL'S ATTORNEYS' FEE REQUEST SHOULD BE APPROVED AS FAIR AND REASONABLE

### A.   Standard of Review

Federal Rule of Civil Procedure 23(h) provides that, "the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Here, the parties' Settlement Agreement permits C&R to apply to the Court for reasonable fees and expenses. BMM Dec., Ex. A at ¶ V.3.

Rule 23(h)'s allowance of an attorneys' fee award recognizes the well-established principle that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also, e.g., In re Diet Drugs*, 582 F.3d 524, 540

6

(3d Cir. 2009).  Courts within the Third Circuit consistently adhere to this rule.  *See, e.g., Schuler v. Meds. Co.*, No. CV 14-1149, 2016 WL 3457218, at *8 (D.N.J. June 24, 2016) ("Under the common fund doctrine, 'a private plaintiff, or plaintiff's attorney, whose efforts create, discover, increase, or preserve a fund to which others also have a claim, is entitled to recover from the fund the costs of his litigation, including attorneys' fees.'") (quoting *Diet Drugs*, 582 F.3d at 540). Indeed, "there is no doubt that attorneys may properly be given a portion of the settlement fund in recognition of the benefit they have bestowed on class members." *In re Ikon Office Sols., Inc., Sec. Litig.*, 194 F.R.D. 166, 192 (E.D. Pa. 2000); *see also Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 198 (3d Cir. 2000) (goal of percentage fee awards is to "ensur[e] that competent counsel continue to be willing to undertake risky, complex, and novel litigation").

Attorneys' fees are calculated using one of two methods: the percentage-of-recovery method or the lodestar scheme.  *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 330 (3d Cir. 2011). The percentage-of-recovery method applies a "certain percentage to the settlement fund, while [the lodestar method] multiplies the number of hours class counsel worked on a case by a reasonable hourly billing rate for such services." *Id.*  (internal citations and quotation marks omitted).  The percentage-of-recovery method is favored where class counsel's efforts have achieved a common fund because it allows the court to award fees in a manner that rewards counsel for success and penalizes counsel for failure or waste.  *In re Rite Aid Corp. Secs. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005).  The lodestar method is utilized as a cross check on the reasonableness of the percentage-of-recovery method.  *Sullivan*, 667 F.3d at 330.

7

**B.      The Requested Attorneys' Fees Are Reasonable Under the Percentage-of-Recovery Method**

Here, Class Counsel requests a fee of 33 1/3% of the common fund, a percentage commonly awarded in the Third Circuit.  *See, e.g., McIntyre v. RealPage, Inc.*, No. 18-CV-03934, 2023 WL 2643201, at *3 n.5 (E.D. Pa. Mar. 24, 2023) (awarding 33.33% as "squarely within the range of awards found to be reasonable by the courts" (quotation marks and citation omitted))*; Kelly v. Bus. Info. Grp., Inc.*, No. CV 15-6668, 2019 WL 414915, at *19 (E.D. Pa. Feb. 1, 2019) (awarding 31% and noting that "[c]ontingency fees representing 30% to 40% of recovery are fairly typical"); *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 147 (E.D. Pa. 2000) (awarding 33 1/3%); *In re Safety Components, Inc. Sec. Litig.*, 166 F.Supp.2d 72 (D.N.J. 2001) (awarding 33 1/3%); *In Re: Unisys Corp. Sec. Litig.*, No. 99-5333, 2001 WL 1563721, at *3 (E.D. Pa. Dec. 6, 2001) (awarding 33%); *Ratner v. Bennett*, No. CIV.A. 92-4701, 1996 WL 243645, at *9 (E.D. Pa. May 8, 1996) (awarding 35%).

The Third Circuit has identified ten factors which a Court should consider in determining what constitutes a reasonable percentage fee award:

> (1) the size of the fund created and the number of beneficiaries, (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel, (3) the skill and efficiency of the attorneys involved, (4) the complexity and duration of the litigation, (5) the risk of nonpayment, (6) the amount of time devoted to the case by plaintiffs' counsel, (7) the awards in similar cases, (8) the value of benefits attributable to the efforts of class counsel relative to the efforts of other groups, such as government agencies conducting investigations, (9) the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained, and (10) any innovative terms of settlement.

*Diet Drugs*, 582 F.3d at 541 (internal citations omitted).  However, "[w]hat is important is that the district court evaluate what class counsel actually did and how it benefitted the class."  *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 342 (3d Cir. 1998). "[F]ee award reasonableness factors 'need not be applied in a formulaic way' because each case is different, and in certain cases, one factor may outweigh the rest."  *In re AT&T Corp.*, 455 F.3d 160, 166 (3d Cir. 2006) (quoting *Rite Aid*, 396 F.3d at 301)).

Here Class Counsel's requested fee is reasonable under all important factors.

### 1.    The Size of the Fund Created and Number of Beneficiaries

First, the amount of value created and the number of beneficiaries strongly weighs in favor of a finding of reasonableness.  *See Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("the most critical factor is the degree of success obtained); *In re Viropharma Inc. Sec. Litig.*, No. 12-2714, 2016 WL 312108, at *16 (E.D. Pa. Jan 25, 2016) (quoting *Hensley*).  Class Counsel generated significant value on behalf of a 12,224 member Class, in the form of a $2,200,000.00 million settlement fund plus debt forgiveness of $565,345.60.[3]  *See In re Linerboard Antitrust Litig.*, MDL 1261, 2004 WL 1221350, at *5 (E.D. Pa. June 2, 2004), order amended by 2004 WL 1240775 (E.D. Pa. June 4, 2004) (size of benefitted population "is best estimated by the number of entities that were sent the notice describing the [Settlement]").

As the Settlement is not claims-made, settlement funds will automatically be distributed to Class Members, providing a certain, present benefit for the Class.  Given the inherent risks of litigation, and the myriad potentially dispositive arguments advanced by Defendants (which, if

---

[3]     Although the debt forgiveness component of the Settlement Agreement provides significant benefits to the Settlement Class Members, Class Counsel is seeking a percentage fee based only on the $2.2 million cash settlement fund.

successful, would have resulted in no recovery for the Class), the benefit is highly significant to the Settlement Class Members, as the Settlement provides tangible benefits without the risks, delays, and costs of ongoing litigation.  *See* FAM at pp. 15-18.

> ### 2. The Class's Reaction to the Settlement and Fees

No objections or optouts have been received to date.

> ### 3. Counsel's Skill and Efficiency

The third factor, counsel's skill and efficiency, supports approval.  "[Q]uality of representation [can be] measured by the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of the counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel." *Ikon*, 194 F.R.D. at 194 (quotation marks and citation omitted).  Throughout the litigation, Class Counsel has used its expertise to investigate and litigate this matter, which ultimately resulted in a significant Settlement.  *See* Mather Dec. at ¶¶ 2-25.  It required considerable skill to achieve the proposed Settlement for the benefit of the Settlement Class in the face of staunch opposition from Defendants, who were represented by very skilled and highly respected class action defense specialists.

> ### 4. The Complexity and Duration of the Litigation

The Settlement in this Action came at an opportune time given the fact that, were the litigation to continue, there would be substantial expense to the Parties associated with necessary factual and expert discovery and the motion practice inherent in class certification and in the lead up to trial.  While significant document production and deposition practice has occurred, considerable additional discovery would be required to make the case trial ready, and there would

be voluminous briefing associated with class certification, summary judgment, and motions in limine.  Moreover, even if the jury returned a favorable verdict after trial, it is likely that any verdict would be the subject of numerous post-trial motions and a multi-year appellate process. Considering the magnitude, expense, and complexity of this case – especially when compared to the real risk that Plaintiff's claims would not have survived if the litigation continued and the fact that absent the settlement litigation would likely proceed for many years – Class Counsel's fee request is reasonable.  *See* FAM at pp. 15-18.

### 5.    The Risk of Nonpayment Supports Approval of the Fee Request

Class Counsel undertook this Action on an entirely contingent fee basis, assuming a substantial risk the litigation would continue for years and potentially yield no, or very little, recovery, and with the knowledge that they could be left uncompensated for their time and out-of-pocket expenses.  *See* Mather Dec. at ¶ 42.  The risk of nonpayment is a substantial factor in considering an award of attorneys' fees.  *See, e.g., In re Remicade Antitrust Litig.*, No. 17-CV-04326, 2023 WL 2530418, at *26 (E.D. Pa. Mar. 15, 2023) ("Courts routinely recognize the risk created by undertaking an action on a contingency fee basis militates in favor of approval." (quotation marks and citation omitted)).  In undertaking this responsibility, Class Counsel were obligated to ensure that sufficient resources were dedicated to the prosecution of the Action, and that funds were available to compensate staff and to cover the considerable litigation costs.  Indeed, Class Counsel received no compensation during the lengthy course of this litigation and advanced over $20,000.00 in expenses in prosecuting this Action for the benefit of the Settlement Class Members.  Because the fee in this matter was entirely contingent, the only certainty was that there

would be no fee without a successful result, and that such a result would be realized only after considerable and difficult effort.  This strongly favors approval of the requested fee.

6.      **Class Counsel Devoted A Significant Amount of Time and Effort to this Matter**

Class Counsel and Gross Law have devoted over 1680 hours to the prosecution and resolution of this Action.  During the course of litigation, Class Counsel crafted briefs and arguments, engaged in discovery, defeated a number of potentially dispositive motions, and, finally, settled this case.  The above hours do not include time spent after May 2023 (after which the instant motion and motion for final approval were prepared), or time to be spent on preparation for and attendance at the fairness hearing and monitoring of the Settlement Benefits Administrator. Class Counsel has been both diligent and efficient in obtaining a meaningful recovery for the Class, with the requested fee representing a negative lodestar multiplier.  *See* Section III.C, *infra*.

7.      **The Requested Fee Is Consistent With That Awarded In Actions of this Nature**

As set forth above in the introduction to Section III.B, the requested fee of one third of the Settlement Funds is within the range of fees awarded in comparable cases, whether considered as a percentage of the fund or on a lodestar basis.  *See, e.g., McIntyre*, 2023 WL 2643201, at *3 n.5 (awarding 33.33% as "squarely within the range of awards found to be reasonable by the courts" (quotation marks and citation omitted)).  Accordingly, this factor strongly supports approval of the requested fee.

8.      **The Value of Benefits Attributable to the Efforts of Class Counsel**

Class Counsel acknowledge that, during the course of this matter, they benefitted from review of documents filed and discovery taken in two cases previously litigated against Defendants

and/or their affiliates that involved fees and issues substantially similar to those addressed in this matter: *JWG Incorporated, et al., v Advanced Disposal Services Jacksonville, L.L.C. et al.*, Duval County Florida No. 16-2011-CA-005641 ("*JWG*") and *Bach Enterprises, Inc., et al. v. Advanced Disposal Services South, Inc., et al.*, Barbour County Alabama No. 69-cv-2013-900090.00 ("*Bach*"). While review of documents from the *JWG* and *Bach* matters was of substantial use to Class Counsel in evaluating the fairness and adequacy of the Settlement to the Class Members, Class Counsel were otherwise without assistance in the prosecution of this matter, as indicated by the over 1680 hours devoted to it. Accordingly, this factor does not weigh against approval of the requested fee.

### 9. The Percentage Fee That Would Have Been Negotiated Under A Private Contingent Fee Agreement

The Third Circuit has also suggested that the requested fee be compared to "the percentage fee that would have been negotiated had the case been subject to a private [non-class] contingent fee agreement." *AT&T*, 455 F.3d at 165. A one-third fee is consistent with typical attorneys' fees in non-class cases, in which the customary contingent fee would likely range between 30 and 40 percent of the recovery. *See, e.g., In re Ocean Power Techs., Inc.*, No. 3:14-CV-3799, 2016 WL 6778218, at *29 (D.N.J. Nov. 15, 2016); *Ikon*, 194 F.R.D. at 194 ("plaintiffs' counsel routinely negotiate agreements providing for between thirty and forty percent of any recovery.").

### 10. Innovative Terms of Settlement

While the lack of innovative terms "neither weighs in favor nor detracts from a decision to award attorneys' fees," *In re Processed Egg Prods. Antitrust Litig.*, No. 08-md-2002, 2012 WL 5467530, at *6 (E.D. Pa. Nov. 9, 2012), here the Settlement's inclusion of the forgiveness of

13

$565,345.60 in debt purportedly owed by the Settlement Class Members to the Defendants further weighs in favor of the approved fees.

C.    **A Lodestar Cross-Check Confirms That The Fee Requested Is Reasonable**

While not required, the Third Circuit has endorsed using counsel's lodestar as a "cross check" to determine whether the fee that would be awarded under the percentage method is reasonable and avoids a windfall to counsel. *See Sullivan*, 667 F.3d at 330.

Here, Class Counsel at C&R devoted 1458.3 hours to the prosecution and resolution of this action, with Gross Law devoting an additional 226 hours. *See* Mather Dec. at Ex. H, pp. 48-49; Gross Dec. at App'x 1. The combined and unmultiplied lodestar of C&R and Gross Law – which was calculated by multiplying attorney hours spent on the litigation by each firm's hourly rate for the respective professionals who performed the work at the time of the work – is $850,613.00, *see id.*, meaning that the requested 33 1/3% fee represents a discount of at least $117,280.00 to the lodestar, i.e., a negative 0.86 multiplier. Accordingly, the percentage fee request here is reasonable and, rather than providing counsel with a windfall, would compensate counsel for their time at below market rates. *See, e.g., O'Hern v. Vida Longevity Fund, LP*, No. CV 21-402-SRF, 2023 WL 3204044, at *10 (D. Del. May 2, 2023) ("A negative multiplier of 0.83 'is well under the generally accepted range and provides strong additional support for approving the attorneys' fee request.'" (quoting *Stagi v. Nat'l R.R. Passenger Corp.*, 880 F. Supp. 2d 564, 572 (E.D. Pa. 2012))); *Remicade*, 2023 WL 2530418, at *29 (noting that the "Third Circuit has recognized that multiples ranging from one to four are frequently awarded in common fund cases," and collecting cases which confirm that a negative multiplier, which "means that class counsel receive *less* under a

14

percentage fee award than their regular billing rates" confirms the reasonableness of a percentage fee request (quotation marks and citation omitted; emphasis in original)).

The rates used in the above calculation are the customary hourly rates of the billing attorneys in effect at the time the work was performed,[4] which are consistent with prevailing market rates. *City of Scranton v. Davis*, No. CV 3:16-1727, 2018 WL 3126443, at *3 (M.D. Pa. June 26, 2018) (the hourly fee used for the lodestar method is "based on the prevailing market rates in the relevant community"). In evaluating the reasonableness of a proposed lodestar rate, courts in the Eastern District of Pennsylvania regularly consult the fee schedule published by Community Legal Services (the "CLS Fee Schedule"), the leading full-service legal aid organization in the Philadelphia region. *See, e.g., Earley v. JMK Assocs.*, No. CV 18-760, 2020 WL 1875535, at *2 (E.D. Pa. Apr. 15, 2020). The Third Circuit has cited the CLS Fee Schedule as "well developed" and "a fair reflection of the prevailing market rates in Philadelphia." *See Maldonado v. Houstoun*, 256 F.3d 181, 187 (3d Cir. 2001). A true and correct copy of the most recent version of the CLS Fee Schedule is attached to the Mather Declaration as Exhibit I.

In all but one instance,[5] the rates billed by counsel are either below (and often far below) or within those recommended by the CLS Fee Schedule. Moreover, the lodestar amount does not

---

[4]     By calculating the lodestar using the rates in effect at the time the work was performed rather than the higher rates now in effect, Class Counsel is *understating* the maximum potential lodestar. *See, e.g., Ikon*, 194 F.R.D. at 195 (noting that the lodestar is "appropriately calculated by reference to current rather than historic rates"); *see also Rite Aid*, 396 F.3d at 307 (3d Cir. 2005) (noting that "[t]he 2002 Third Circuit Task Force On Selection of Class Counsel . . . states that the lodestar cross-check is 'not a full-blown lodestar inquiry' and a court 'should be satisfied with a summary of the hours expended by all counsel at various stages with less detailed breakdown than would be required in a lodestar jurisdiction'").

[5]     On January 1, 2022, Attorney Belli's rate was increased from $435 to $600, a modest $75 over the top recommended CLS rate. Class Counsel submits that, given Attorney Belli's

15

include time after May 2023 and thus excludes Class Counsel's preparation of the instant motion

and motion for final approval, preparation for and attendance at the fairness hearing, and

continuing supervision of the Settlement Benefits Administrator.

**D.      Class Counsel Should Be Permitted to Distribute Any Fee Award Consistent With C&R's Agreement With Attorney Gross and Attorney Gross's Agreement With Attorney Katz**

Class Counsel's law firm, C&R, is party to an agreement with Deborah R. Gross, Esquire,

concerning the distribution of fees in matters such as this Action which she brought to C&R from

Gross Law.  *See* Gross Dec. at ¶ 7.  Pursuant to that agreement, Attorney Gross is entitled to share

in the fees based on the relative time spent on the case by Gross Law and C&R, with the proceeds

allocable to time spent by Gross Law being 100% allocated to Attorney Gross and the time spent

by C&R being divided 25% to Attorney Gross and 75% to C&R, after payment of referral fees.

*Id.*  Attorney Gross is party to a referral agreement with Barry L. Katz, Esquire, Plaintiff's son-in-

law and personal attorney, with whom Attorney Gross verbally agreed to pay a referral fee of 20%

of all attorneys' fees recovered in this action, consistent with Attorney Gross's practice throughout

her career.  *See* Gross Dec. at ¶¶ 4-5.  Based on the time billed as of May 31, 2023, should the

Court approve the fees as set forth herein, Attorney Gross would be entitled to 30.58% of the total

attorney's fees after payment of the Katz Referral Fee (representing the 7.45% contribution by

Gross Law to the combined hours plus a 25% share of the remaining 92.55% contribution by C&R

to the combined hours).  *Id.* at ¶ 7.  These percentages may change slightly based on the amount

of time C&R bills after May 31, 2023.  *Id.*

---

experience and background, $600 is a reasonable rate for Mr. Belli.  Moreover, Mr. Belli billed
the majority of his time in this matter at rates of $415 and $435, thus mitigating any undue
impact of the $600 rate.

The Katz Referral Fee is entirely permissible under Pennsylvania law. *See, e.g., Francis J. Bernhardt, III, P.C. v. Needleman*, 705 A.2d 875, 878-79 (Pa. Super. 1997). Pennsylvania Rule of Professional Conduct 1.5(e) permits referral and other fee-splitting arrangements, as confirmed by Comment 4 to the Rule, which states: "A division of fee . . . most often is used when the fee is contingent and the division is between a referring lawyer and a trial specialist. Paragraph (e) permits the lawyers to divide a fee if the total fee is not illegal or excessive and the client is advised and does not object." The Katz Referral Fee meets these requirements. *See* Gross Dec. at ¶ 5; Katz Dec. at ¶ 5; Flaccus Dec. at ¶ 6.

Federal Courts in this Circuit and across the country have either honored similar referral fee arrangements or stated that the attorneys who do receive fee awards are not prohibited from distributing the awards as they see fit. *See In re Wilmington Tr. Sec. Litig.*, 2018 WL 6046452 (D. Del. Nov. 19, 2018) (granting final approval of a settlement approval and a fee request which, as disclosed in the context of preliminary approval as discussed in *In re Wilmington Tr. Sec. Litig.*, 2018 WL 3369674, at *3 n.6 (D. Del. July 10, 2018), included a referral fee); *McDonough v. Toys R Us, Inc.*, 80 F. Supp. 3d 626, 664 (E.D. Pa. 2015) (denying fee award for two objectors' counsel but stating that, "[w]hile the Court does not believe a fee award is appropriate for these attorneys, the remaining attorneys who do receive fee awards are not prohibited from distributing the awards as they see fit"); *LeBlanc v. Texas Brine, Co., LLC*, 2022 WL 1197791, at *1 (E.D. La. Jan. 20, 2022), report and recommendation adopted, 2022 WL 1197789 (E.D. La. Feb. 7, 2022) (approving referral fees in class action, where fees were reasonable and in accordance with ethical rules); *Sadowska v. Volkswagen Grp. of Am., Inc.*, 2013 WL 9576755, at *3 (C.D. Cal. Sept. 25, 2013) (approving referral fee to be paid out of class counsel's fees); *Dakota Med., Inc. v. RehabCare*

17

*Grp.*, Inc., 2017 WL 4180497, at *10–11 (E.D. Cal. Sept. 21, 2017) (approving referral fee and holding that the referring attorney "contributed to the ultimate creation of this common fund by helping [class counsel] originate this case"); *cf. also Diet Drugs*, 582 F.3d at 542 ("[N]o authority suggests that courts should abrogate valid fee division contracts. To the contrary, we have recognized the benefits of agreements regarding the distribution of attorney fees."); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 533 n. 15 (3d Cir.2004) (noting "the accepted practice of allowing counsel to apportion fees amongst themselves").

Here there is no concern that the Katz Referral Fee renders Plaintiff an inadequate class representative. In their declarations, both Attorney Katz and Plaintiff recognized Plaintiff's duty to the class and averred under penalty of perjury that the Katz Referral Fee had no impact on that duty. Katz Dec. at ¶ 6; Flaccus Dec. at ¶ 6. Indeed, given C&R's role as Class Counsel, the fact that C&R negotiated the best possible settlement under the purview of an experienced mediator, and Plaintiff's averment that her ultimate agreement to the Settlement was the result of C&R's recommendation to do so, Flaccus Dec. at ¶ 6, there is little to no risk that Attorney Katz had any significant influence on Plaintiff's decision to approve the Settlement.

## IV.    CLASS COUNSEL'S EXPENSES ARE REASONABLE

Class Counsel also requests reimbursement of a total of $22,058.17 in expenses incurred in connection with the prosecution of this Action, $20,478.31 of which were incurred by C&R and $1579.86 of which were incurred by Gross Law. The appropriate analysis in deciding which expenses are compensable in a common fund case is whether the particular costs are of the type typically billed by attorneys to paying clients in the marketplace. *See In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 108 (D.N.J. 2001) ("[c]ounsel for a class action is entitled to

18

reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the class action") (citing *Abrams v. Lightolier, Inc.*, 50 F.3d 1204, 1225 (3d Cir. 1995)).  The categories of expenses for which counsel seek payment here are the type of expenses routinely charged to hourly clients and, therefore, should be paid out of the common fund. These expenses include fees for mediators, travel expenses, and filing fees.  The aforementioned costs are typical of those regularly incurred in litigating matters of this type.  Costs comparable to those sought in the instant matter are regularly awarded by Courts in the Third Circuit.  *See, e.g., In re Hemispherx Biopharma, Inc., Sec. Litig.*, No. CV 09-5262, 2011 WL 13380384, at *9 (E.D. Pa. Feb. 14, 2011) (approving reimbursement of $25,858.90 in expenses, including expert fees, legal research, travel costs, and postage).

## V.    AN INCENTIVE AWARD IS JUSTIFIED HERE

Plaintiff Anne Flaccus respectfully requests that she be awarded a $15,000.00 incentive award in recognition of her hard work and sacrifices in support of the class, as well as her promotion of the public interest in bringing to light claims which otherwise may never have been asserted.  The requested award represents less than 0.7% of the total of $2,200,000.00 in Settlement Funds.

Here, the incentive award is well deserved given Plaintiff's significant efforts which ran to the benefit of all the Settlement Class Members, including, but not limited to: (a) conferring with counsel concerning the issues and strategy in this case; (b) reviewing court filings in the action and periodic reports from counsel concerning the work being done; (c) researching and collecting relevant documents in my possession in preparation for discovery and in response to document requests from Defendants; (d) working with counsel to provide information for and verify the

responses to interrogatories and requests for admission issued by the Defendants; and (e) conferring with counsel with respect to the settlement efforts that yielded $2,200,000 in Settlement Funds for the benefit of the Settlement Class Members.  *See* Flaccus Dec. at ¶¶ 2-3.

"Incentive awards are 'not uncommon in class action litigation and particularly where, as here, a common fund has been created for the benefit of the entire class.'"  *Vista Healthplan, Inc. v. Cephalon, Inc.*, No. 2:06-CV-1833, 2020 WL 1922902, at *33 (E.D. Pa. Apr. 21, 2020) (quoting *McDonough* 80 F. Supp. 3d at 665).  In *Kelly*, 2019 WL 414915, at *21, the Court approved a $15,000 service award "in light of [the awardee's] willingness to undertake the risks and shoulder some of the burden of" the litigation, and noting that "class action representatives such as [the awardee] often forego substantial individual monetary claims for damages in exchange for helping bring about a benefit to a larger class [and that] there would be no benefit to the . . . Class Members . . . if [the awardee] had not come forward at the time he did."  The *Kelly* Court further noted that "the $15,000 sum is within the range of awards approved by courts."  *Id.* (citing *Chakejian v. Equifax Info. Servs., LLC*, 275 F.R.D. 201, 220-21 (E.D. Pa. 2011) (approving $15,000 incentive awards to each of three representative plaintiffs and surveying other cases)); *see also McIntyre*, 2023 WL 2643201, at *4 ("courts frequently approve service awards of approximately $10,000 or more); *Mayer v. Driver Solutions, Inc.*, 2012 WL 3578856, at *5 (E.D. Pa. Aug. 17, 2012) (approved $15,000 award).

## VI.     CONCLUSION

In light of the foregoing facts and authorities, Class Counsel respectfully requests that the Court award and approve attorneys' fees of 33 1/3% of the Settlement Funds and the distribution of the same as outlined herein; $22,058.17 in litigation expenses; and a $15,000 incentive award.

Dated: June 26, 2023                              /s/ Andrew J. Belli
                                                  Benjamin M. Mather, Esq.
                                                  Andrew J. Belli, Esq.
                                                  **COREN & RESS, P.C.**
                                                  Two Commerce Square
                                                  2001 Market Street, Suite 3900
                                                  Philadelphia, PA 19103
                                                  Phone: (215) 735-8700
                                                  Fax: (215) 735-5170
                                                  bmather@kcr-law.com
                                                  abelli@kcr-law.com
                                                  *Attorneys for Plaintiff*